## Case Number 23-35606

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

William C. Schroeder,

Appellant,

vs.

United States of America,

Appellee.

Appeal from United States District Court
for the Eastern District of Washington

## APPELLANT'S BRIEF

William C. Schroeder
**KSB Litigation, P.S.**
510 W. Riverside Ave., Ste. 300
Spokane, Washington, 99201
(509) 624-8988
wcs@KSBLit.legal
Appellant
WSBA #41986
MSB #11963

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................4

STATEMENT OF JURISDICTION .................................................7

   A. DISTRICT COURT'S JURISDICTION.......................................7
   B. FINALITY OF DISTRICT COURT'S JUDGMENT. ......................7
   C. THIS COURT'S JURISDICTION.............................................8

STATEMENT OF ISSUES PRESENTED ........................................9

   1. APPELLANT, WHO IS ONE PERSON WITH 0.703 OF A VOTE, HAS STANDING TO CLAIM POPULATION INEQUALITY AMONG CONGRESSIONAL DISTRICTS IS UNCONSTITUTIONAL. ..........................................9
   2. "THE CLAIM OF POPULATION INEQUALITY AMONG [CONGRESSIONAL] DISTRICTS" IS A JUSTICIABLE CONTROVERSY. ......................10
   3. THIS COURT HOLDING 2 U.S.C. § 2A(A) AND (B) UNCONSTITUTIONAL WOULD REMEDY THE HARM SUFFERED BY APPELLANT, AND VOTERS IN EVERY STATE. ................................................................12
   4. ALL CONGRESSIONAL DISTRICTS MUST BE COMPRISED OF APPROXIMATELY SAME SIZED POPULATIONS TO BE CONSISTENT WITH ARTICLE 2, § 1. .....................................................................14

CONSTITUTIONAL PROVISIONS AND STATUTES........................16

   1. U.S. CONSTITUTION, ARTICLE 1, SECTION 2....................16
   2. U.S. CONSTITUTION, ARTICLE 2, SECTION 1....................16
   3. U.S. CONSTITUTION, FOURTEENTH AMENDMENT, § 2.........16
   4. PERMANENT APPORTIONMENT ACT, 2 U.S.C § 2A(A) AND (B). ...........17

STATEMENT OF THE CASE .........................................................18

   A. SUMMARY / INTRODUCTION. ...........................................18
   B. HISTORY – 105-MEMBER HOUSE OF REPRESENTATIVES ESTABLISHED AFTER FIRST CENSUS. ................................................................21
   C. HISTORY – 19TH CENTURY – HOUSE EXPANDS ALONG WITH NATIONAL POPULATION.................................................................22
      1. 141-Member House Following the Second Census....................22
      2. 182-Member House Following the Third Census.......................22
      3. 213-Member House Following the Fourth Census......................22

4. *240-Member House Following the Fifth Census.* ........................ 23

5. *223-Member House Following the Sixth Census.* ....................... 23

6. *233- and 234-Member House Following the Seventh Census.* ..... 23

7. *241-Member House Following the Eighth Census.* ..................... 24

8. *283- and 293-Member House Following Enactment of the Fourteenth Amendment and the Ninth Census.* ............................. 24

9. *325-Member House Following the Tenth Census.* ..................... 25

10. *357-Member House Following the Eleventh Census* ............... 25

11. *386-Member House Following the Twelfth Census.* ................. 25

D. 20TH CENTURY – CONGRESS LIMITS ITSELF TO 435 MEMBERS. .......... 26

1. *435-Member House Following the Thirteenth Census.* ............. 26

2. *Congress Took No Action Following The Fourteenth Census* .... 26

3. *In 1929, Congress Created the 435-Member Cap, Prior to the Fifteenth Census.* .................................................................. 27

4. *Following the Sixteenth Census, Congress Made The 435-Member Cap Permanent.* ..................................................... 28

E. LAST HALF OF 20TH CENTURY – REPRESENTATION IN THE HOUSE BECOMES 'ZERO-SUM' AS POPULATION NEARLY DOUBLES. ..................... 29

F. 21ST CENTURY – THE LARGEST DISTRICT IS TWICE THE SIZE OF THE SMALLEST. ................................................................................ 30

1. *2000 Census: Montana's Representative elected from a district of 905,316 residents: Wyoming's from a district of 495,304.* ............... 30

2. *2010 Census: Montana's Representative elected from a district of 994,416 residents: Rhode Island's from districts of 527,624.* .......... 32

3. *2020 Census: Delaware's Representative elected from a district of 990,837 residents: Montana's from districts of 542,704.* ............. 34

SUMMARY OF ARGUMENT ................................................. 37

ARGUMENT ..................................................................... 38

A. DISMISSAL PURSUANT TO RULE 12(B)(6) IS REVIEWED *DE NOVO*. ...... 38

B. DISMISSAL PURSUANT TO RULE 56 IS REVIEWED *DE NOVO*. ............. 39

C. U.S. CENSUS DATA QUOTED VERBATIM, CITED, AND HYPERLINKED IN THE COMPLAINT IS ADMISSIBLE. ........................................................ 39

D.  *WESBERRY* REMAINS GOOD LAW, AND "THE RIGHT TO VOTE IS TOO IMPORTANT IN OUR FREE SOCIETY TO BE STRIPPED OF JUDICIAL PROTECTION BY SUCH AN INTERPRETATION OF ARTICLE 1." ..................... 41

E.  UNDER *WESBERRY*, 2 U.S.C. § 2A(A) AND (B) ARE UNCONSTITUTIONAL BECAUSE THEY PRODUCE CONGRESSIONAL DISTRICTS WHICH ARE TWICE THE SIZE OF OTHERS, VIOLATING 'ONE PERSON, ONE VOTE.' ................. 44

F.  THE DISTRICT COURT ERRED IN FAILING TO DISTINGUISH *WESBERRY*, THE CONTROLLING CASE. ........................................................................ 46

CONCLUSION ....................................................................................... 48

CERTIFICATE OF COMPLIANCE ....................................................... 50

# TABLE OF AUTHORITIES

**Cases**

*Akhtar v. Mesa, et al.*, 698 F.3d 1202 (9th Cir. 2012) ..................................... 47

*Altamirano v. City of Tucson*, 2020 WL 7027555 at *3
   (D.Ariz., November 30, 2020) ................................................................. 40

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ....................... 39

*Arizona State Legislature v. Arizona Independent Redistricting
   Commission*, 576 U.S. 787, 799-800 (2015) ......................................... 13

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ........... 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................. 39

*Baker v. Carr*, 369 U.S. 186, 217 (1962) ..................................... 9, 10, 41

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ....................... 38

*Citizens v. Padilla*, 815 F.Appx. 120 (2020) ............................................ 46

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ......................... 13

*Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ....................... 38

*Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (2018) .............. 47

*Evenwel v. Abbott*, 578 U.S. 54, 68 (2016) ................................ 9, 11, 14, 47

*Ex parte Yarbrough*, 110 U.S. 651 (1884) ............................................... 43

*F.E.C. v. Akins*, 524 U.S. 11 (1998) ........................................................ 47

*Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018) ......................................... 46

*Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90 (1974) .............. 47

*Gray v. Sanders*, 372 U.S. 368 (1963) .................................................... 44

*Grimm v. Portland*, 971 F.3d 1060 (2020) .............................................. 47

*Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir. 2011) ......... 47

*Huffman v. Lindgren*, 2023 WL 5660151 (9th Cir. 2023) ......................... 47

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2020) ................................... 47

*Levi v. Atossa Genetics, Inc.* (*In re Atossa Genetics Inc. Sec. Litig.*), 868 F.3d 784,
   793 (9th Cir. 2017) ................................................................................ 38

*Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1205 (9th Cir. 2016) ............... 38

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ....................... 13

*Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063
   (C.D. Cal. 2017) .................................................................................... 40

*Rucho v. Common Cause*, 588 U.S. __, 139 S.Ct. 2484, 2496 (2019) ......... 9, 10, 41, 42

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .............. 47

*Shapiro v. McManus*, 577 U.S. 39, 46 (2015) .......................................... 46

*Shaw v. Hunt*, 517 U.S. 899, 904 (1996) ................................................. 46

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ......... 38

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) ........... 39

*United States v. Classic*, 313 U.S. 299 (1941) ......................................... 43

*United States v. Esquivel*, 88 F.3d 722, 726–27 (9th Cir. 1996) .............. 40

*United States v. Mosley*, 238 U.S. 383 (1915) ........................................................... 43
*United States v. Saylor*, 322 U.S. 385 (1944) ........................................................... 43
*Wesberry v. Sanders*, 376 U.S. 1, 8 (1964).......................................................... passim

## Statutes

2 U.S.C. § 2a(a) ......................................................................................... passim
2 U.S.C. § 2a(b) ......................................................................................... passim
2 U.S.C. § 2a(c) ............................................................................................. 13
28 U.S.C. § 1291 ............................................................................................... 8
28 U.S.C. § 1294(1) ........................................................................................... 8
28 U.S.C. § 1331 ............................................................................................... 7
28 U.S.C. § 1343(a)(4) ....................................................................................... 7
28 U.S.C. § 1346(a)(2) ....................................................................................... 7
28 U.S.C. § 41 ................................................................................................... 8
28 U.S.C. § 46 ................................................................................................... 8

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................... 38
Fed. R. Civ. P. 54(a) ......................................................................................... 7
Fed. R. Civ. P. 56(a) ....................................................................................... 39
Fed. R. Civ. P. 58(a) ......................................................................................... 7
Fed. R. Civ. P. 58(b)(1)(C) ............................................................................... 8
Fed. R. Civ. P. 8(a) ......................................................................................... 38
Fed. R. Evid. 201(b) ....................................................................................... 40
Fed. R. Evid. 803(8) ....................................................................................... 40
Fed. R. Evid. 901(b)(7) ................................................................................... 40
Fed. R. Evid. 902(5) ....................................................................................... 40

## Constitutional Provisions

U.S. CONST., art. 2, § 1 ...................................................................... 14, 16, 21, 46
U.S.CONST. amend. XIV, § 2.......................................................................... passim
U.S.CONST., art. 1, § 2 .................................................................................. passim

## Acts of Congress

Apportionment Act of April 14, 1792, 2nd Cong., Sess. I, Ch. 23 ............................. 21
Apportionment Act of August 8, 1911, 62nd Cong., Sess. I, Ch. 5............................ 26
Apportionment Act of December 21, 1811, 12th Cong., Sess. I, Ch. 9....................... 22
Apportionment Act of February 2, 1872, 42nd Cong., Sess. II, Ch. 11, Sec. 1 ......... 25
Apportionment Act of February 25, 1882, 47th Cong., Sess. I, Ch. 20.................... 25
Apportionment Act of February 7, 1891, 51st Cong., Sess. II, Ch. 116................... 25
Apportionment Act of January 14, 1802, 7th Cong., Sess. I, Ch. 1 .......................... 22
Apportionment Act of January 16, 1901, 56th Cong., Sess. II, Ch. 93.................... 26

Apportionment Act of July 30, 1852, 32nd Cong., Sess. I, Ch. 74 ............................ 24

Apportionment Act of June 25, 1842, 27th Cong., Sess. II, Ch. 47 .......................... 23

Apportionment Act of March 4, 1862, 37th Cong., Sess. II, Ch. 36 ......................... 24

Apportionment Act of March 7, 1822, 17th Cong., Sess. I, Ch. 10 ......................... 22

Apportionment Act of May 22, 1832, 22nd Cong., Sess. I, Ch. 91 ........................... 23

Census Act of 1850, 31st Cong., Sess. I, Ch. 11, Sec. 25 (May 23, 1850) .................. 23

Fifteenth Census and Apportionment Act of June 18, 1929, 71st Cong., Sess. I, Ch. 28, Sec. 2 ............................................................................................................ 27

Permanent Apportionment Act of November 15, 1941, 77th Cong., Sess. I, Ch. 470, Sec. 2(a) ............................................................................................................ 28

Public Law 481, 54 Stat. 152, Sec. 1 (April 25, 1940) ............................................... 28

Public Law 85-508 sec. 9, 72 Stat. 339 (July 7, 1958) .............................................. 29

Public Law 86-3 sec. 8, 73 Stat. 4 (Mar. 18, 1959) ................................................... 29

Supplemental Act of May 30, 1872, 42nd Cong., Sess. II, Ch. 239 ........................... 25

# STATEMENT OF JURISDICTION

## A. District Court's Jurisdiction.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. [ER-19]

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person … To … secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4). [ER-19]

"The district courts shall have original jurisdiction … of … Any other civil action or claim against the Unites States, not exceeding $10,000 in amount, founded either upon the Constitution, or an Act of Congress[.]" 28 U.S.C. § 1346(a)(2). [ER-19]

Appellant, resident of Spokane, Washington, commenced suit on July 18, 2022. [ER-18-77] The gravamen is that 2 U.S.C. § 2a(a) and (b) violate article 1, section 2; article 2, section 1; and section 2 of the 14th Amendment to the Constitution. [ER-50-52; ER-74-76]

## B. Finality of District Court's Judgment.

"'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).

"Every judgment and amended judgment must be set out in a separate document[.]" Fed. R. Civ. P. 58(a).

"… [U]nless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when … the court denies all relief." Fed. R. Civ. P. 58(b)(1)(C).

Appellee moved to dismiss the complaint on September 19, 2022. [ER-121] After a Response and a Reply [Id.], the district court issued the memorandum decision (dismissal without prejudice) on September 11, 2023. [ER-6-17] Pursuant to Rule 58(b)(1)(C), the court clerk entered the Judgment in a Civil Action the same day. [See ER-5; ER-121-122]

### C. This Court's Jurisdiction.

"The courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]" 28 U.S.C. § 1291.

"…[A]ppeals from reviewable decisions of the district and territorial courts shall be taken to the courts of appeals as follows: … From a district court of the United States to the court of appeals for the circuit embracing the district[.]" 28 U.S.C. § 1294(1).

The Ninth Circuit 'embraces' the United States District Court for the Eastern District of Washington. 28 U.S.C. § 41; 28 U.S.C. § 46.

This Court has jurisdiction over the appeal of the memorandum decision [ER-6-17] and judgment [ER-5] of the district court for the Eastern District of Washington, which dismissed Appellant's claim on motion.

## STATEMENT OF ISSUES PRESENTED

1. Appellant, Who Is One Person With 0.703 Of A Vote, Has Standing To Claim Population Inequality Among Congressional Districts Is Unconstitutional.

"In *Wesberry v. Sanders*, the Court extended its ruling [in *Baker v. Carr*, 369 U.S. 186, 217 (1962)] to malapportionment of congressional districts, holding that Article I, § 2, required that 'one man's vote in a congressional election is to be worth as much as another's.'" *Rucho v. Common Cause*, 588 U.S. __, 139 S.Ct. 2484, 2496 (2019) (quoting *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964)). [ER 50-52]

*Wesberry* remains good law. See *Rucho*, 139 S.Ct. at 2496; *Evenwel v. Abbott*, 578 U.S. 54, 68 (2016). Despite Appellant's reference to and extensive quotation of *Wesberry* in the Complaint, the case is unmentioned in the district court's Decision. [Compare ER-6-17 with ER-50-52]

2 U.S.C. § 2a(a) and 2 U.S.C. § 2a(b) result in every state having congressional districts of different sizes, and some vary by as many as 500,000 people, which is the opposite of 'apportioned according to their numbers' and 'one person, one vote'.

As set forth in greater detail herein, because Appellant is a Washington resident and voter, he is one person with 0.703 of a vote. Appellant therefore has standing to bring a "claim of population

inequality among districts[.]" *Rucho*, 139 S.Ct. at 2496 (citing *Baker v. Carr*, 369 U.S. at 217).

2. "The Claim Of Population Inequality Among [Congressional] Districts" Is A Justiciable Controversy.

The Constitution provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[,]" and that "each State shall have at Least one Representative[.]" U.S.CONST. amend. XIV, § 2; U.S.CONST., art. 1, § 2.

"[The *Baker v. Carr* court] identified various considerations relevant to determining whether a claim is a nonjusticiable political question, including whether there is 'a lack of judicially discoverable and manageable standards for resolving it.'" *Rucho*, 139 S.Ct. at 2496 (citing *Baker*, 369 U.S. at 217).

"The Court concluded that the claim of population inequality among districts did not fall into that category, because such a claim could be decided under basic equal protection principles." *Rucho* at 2496 (citing *Baker* at 226).

"The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article I." *Wesberry*, 376 U.S. at 7.

> *Baker's* justiciability ruling set the stage for what came to be known as the one-person, one-vote principle. Just two years after *Baker*, in *Wesberry v. Sanders*, ... the Court invalidated Georgia's malapportioned congressional map, under which

the population of one congressional district was "two to three times" larger than the population of the others. Relying on Article I, § 2, of the Constitution, the Court required that congressional districts be drawn with equal populations. *Id.*, at 7, 18[.]

*Evenwel v. Abbott*, 578 U.S. at 59.

"[The cases] instructed that jurisdictions must design both congressional and state-legislative districts with equal populations, and must regularly reapportion districts to prevent malapportionment." *Id.*

Presently, 2 U.S.C. § 2a(a) and 2 U.S.C. § 2a(b) result in every state having congressional districts of different sizes, the opposite of 'apportioned according to their numbers' and 'one person, one vote'. 2 U.S.C § 2a(a) and (b) operate to ensure that no House district among the states be the same size; that the largest district presently has 990,837 persons; and that the smallest district presently has 542,704 persons. [ER-69-71; ER-35 (and hyperlink therein)]

This is a problem which has been hiding in plain sight; official Census data show that no two states have congressional districts of the same size. [Id.]

The Table of Historical Apportionment Data (1910-2020), United States Census Bureau, summarized in pertinent part below, shows the five (5) largest, and five (5) smallest districts as of the 2020 Census:

| State | 2020 Population | No. of Reps. | District Size | Vote Fraction* |
|---|---|---|---|---|
| Delaware | 989,948 | 1 | 990,837 | 0.548 |
| Idaho | 1,839,106 | 2 | 920,689 | 0.589 |
| West Virginia | 1,793,716 | 2 | 897,523 | 0.605 |
| South Dakota | 886,667 | 1 | 887,770 | 0.611 |
| Utah | 3,271,616 | 4 | 818,813 | 0.663 |
| … | | | | |
| Nebraska | 1,961,504 | 3 | 654,444 | 0.829 |
| Vermont | 643,077 | 1 | 643,503 | 0.843 |
| Wyoming | 576,851 | 1 | 577,719 | 0.939 |
| Rhode Island | 1,097,379 | 2 | 549,082 | 0.988 |
| Montana | 1,084,225 | 2 | 542,704 | 1.000 |

*Smallest District [MT] Divided By Individual District

[ER-69-71; ER-35 (and hyperlink therein)]

*Evenwel* and *Rucho* have both recently confirmed that population inequality among congressional districts remains a justiciable controversy.

3. This Court Holding 2 U.S.C. § 2a(a) and (b) Unconstitutional Would Remedy The Harm Suffered By Appellant, And Voters In Every State.

"To qualify as a party with standing to litigate, [a party] must show, first and foremost, injury in the form of invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizona State Legislature v. Arizona Independent Redistricting*

*Commission*, 576 U.S. 787, 799-800 (2015)[1] (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The party's injury "also must be fairly traceable to the challenged action and redressable by a favorable ruling." *Id.* at 800 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

The published census data establish, *inter alia*, that no two states have congressional districts of the same size; and that as a Washington resident and voter, Appellant is one person with 0.703 of a vote. This constitutes an actual and particularized invasion of Appellant's legally protected interest in having his vote be counted the same regardless of his state of residence (*i.e.*, one person, one vote).

The Constitution provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[,]" and that "each State shall have at Least one Representative[.]" U.S.CONST. amend. XIV, § 2; U.S.CONST., art. 1, § 2.

> As the Framers of the Constitution and the Fourteenth Amendment comprehended, representatives serve all residents, not just those eligible or registered to vote. ... Nonvoters have an important stake in many policy debates—children, their parents, even their grandparents, for example, have a stake in a strong public-education system—and in receiving constituent services, such as help navigating public-benefits bureaucracies. By ensuring that each representative

---

[1] *Arizona State Legislature* also discusses 2 U.S.C. § 2a(c). See 576 U.S. at 809-13.

is subject to requests and suggestions from the same number of constituents, total-population apportionment promotes equitable and effective representation. See *McCormick v. United States*, … ("Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator.").

*Evenwel v. Abbott*, 578 U.S. at 74.

Absent [constitutional] direction from Congress providing a different standard size for congressional districts, the least populous state, having only one member, necessarily supplies the house district size by which all other state's populations should be divided. Presently, that state is Wyoming, with a 2020 census population of 576,851 people. The harm suffered by Appellant and every similarly situated voter is that their votes are worth less because the size of every congressional district is arbitrarily determined and limited. This harm can be remedied by making the least populous state the district size, and then dividing each state's population by that district size. As set forth *infra*, applying this constitutional method would result in a House with approximately 573 members.

4. All Congressional Districts Must Be Comprised Of Approximately Same Sized Populations To Be Consistent With Article 2, § 1.

The Constitution provides that "Each State shall appoint … a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress[.]" U.S. CONST., art. 2, § 1.

The Constitution also provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State," and that "each State shall have at Least one Representative[.]" U.S.CONST. amend. XIV, § 2; U.S.CONST., art. 1, § 2.

The electoral college depends upon all house districts being roughly equally sized. As of the 2020 Census, the largest district is nearly 500,000 persons larger than the smallest. This harm can be remedied by making the least populous state the district size, and then dividing each state's population by that district size, which would result in a House with approximately 573 members. *Infra*.

# CONSTITUTIONAL PROVISIONS AND STATUTES

1. U.S. Constitution, Article 1, Section 2.

   <u>The House of Representatives shall be composed of Members chosen every second Year by the People of the several States</u>, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.
   ...
   <u>Representatives ... shall be apportioned among the several States ... according to their respective ... whole Number of ... Persons</u>[.] ... The Number of Representatives shall not exceed one for every thirty Thousand, but <u>each State shall have at Least one Representative</u>[.]

U.S.CONST., art. 1, § 2 [<u>emphasis added</u>].

2. U.S. Constitution, Article 2, Section 1.

   Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress[.]

U.S.CONST., art. 2, § 1.

3. U.S. Constitution, Fourteenth Amendment, § 2.

   Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[.]

U.S.CONST. amend. XIV, § 2.

4. Permanent Apportionment Act, 2 U.S.C § 2a(a) and (b).

(a) On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress [January 3, 1951] and of each fifth Congress thereafter, <u>the President shall transmit to the Congress a statement showing the whole number of persons in each State</u>, excluding Indians not taxed, <u>as ascertained under **the seventeenth** and each subsequent decennial census of the population, and **the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives** [435] by the method known as the method of equal proportions, no State to receive less than one Member</u>.

(b) <u>Each State shall be entitled</u>, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, <u>to the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member</u>. It shall be the duty of the Clerk of the House of Representatives, within fifteen calendar days after the receipt of such statement, to send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section. In case of a vacancy in the office of Clerk, or of his absence or inability to discharge this duty, then such duty shall devolve upon the Sergeant at Arms of the House of Representatives.

2 U.S.C § 2a [**emphasis added**].

## STATEMENT OF THE CASE

### A. Summary / Introduction.

The Constitution provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[,]" and that "each State shall have at Least one Representative[.]" U.S.CONST. amend. XIV, § 2; U.S.CONST., art. 1 § 2.

Congress has done nearly the opposite. Instead of each congressional district being "apportioned among the several states according to their respective numbers," no two states have congressional districts of the same size. Indeed, automatic operation of 2 U.S.C. § 2a(a) and (b) following the 2020 United States Census has resulted in congressional districts for the House of Representatives in every state of such divergent size that a voter residing in Idaho or Delaware has a vote "worth about half that of a voter residing in Montana or Rhode Island. [ER-69-71; ER-35 (and hyperlink therein - Table of Historical Apportionment Data (1910-2020), United States Census Bureau.[2])]

In Washington, where Appellant resides, following the 2020 Census each congressional district is comprised of 771,595 persons. [ER-69-71; ER-35 (and hyperlink therein)] In Montana, where Appellant is licensed

---

[2] https://www.census.gov/data/tables/time-series/dec/apportionment-data-text.html, dated April 26, 2021; last revised August 5, 2022; accessed for this Brief on September 22, 2023. Table is also provided as an appendix hereto, for ease of reference.

to practice, each congressional district is comprised of 542,704 persons. [Id.] In Idaho, geographically between Washington and Montana, a congressional district is comprised of 920,689 persons. [Id.]

Montana's two congressional districts are the smallest in the Union until automatic operation of 2 U.S.C. § 2a(a) and (b) following the next decennial census. So, for purposes of the "one person, one vote" standard described in *Wesberry v. Sanders*, a Montana voter in each election to send a Representative to the House is 'one person' with 'one vote.'

Census data show that a voter in Delaware may be 'one person,' but she only has 0.548 of a vote, compared to the Montana voter.

| State | 2020 Population | No. of Reps. | District Size | Vote Fraction* |
|-------|-----------------|--------------|---------------|----------------|
| Delaware | 989,948 | 1 | 990,837 | 0.548 |
| Idaho | 1,839,106 | 2 | 920,689 | 0.589 |
| West Virginia | 1,793,716 | 2 | 897,523 | 0.605 |
| South Dakota | 886,667 | 1 | 887,770 | 0.611 |
| Utah | 3,271,616 | 4 | 818,813 | 0.663 |
| ... | | | | |
| Nebraska | 1,961,504 | 3 | 654,444 | 0.829 |
| Vermont | 643,077 | 1 | 643,503 | 0.843 |
| Wyoming | 576,851 | 1 | 577,719 | 0.939 |
| Rhode Island | 1,097,379 | 2 | 549,082 | 0.988 |
| Montana | 1,084,225 | 2 | 542,704 | 1.000 |

*Smallest District [MT] Divided By Individual District

[ER-69-71; ER-35 (and hyperlink therein)]

The number '435' itself has no basis in the text of the Constitution. Yet, 2 U.S.C § 2a(a) and (b), originally enacted in 1929 and little changed since, has capped the number of Representatives at 435, as it was in 1912.

More significantly, the application of 2 U.S.C § 2a(a) and (b), particularly in recent decades, has resulted in congressional districts vastly different in size, with Montana currently the smallest at 542,704; and Delaware currently the largest, with 990,837, only to preserve a 435-member House.

Unless Congress supplies a smaller district size which would give the state with the lowest population more than one Representative, in order to be consistent with the above-quoted text, the population of the smallest state, which has one Representative, necessarily supplies the minimum size of each other congressional district in the rest of the States.

Simply following the text, and treating the least populous state, which has "at Least one Representative", as the minimum standard congressional district size, results in a House comprised of approximately 573 members, elected from districts of 576,851 [more or less], which is the population of the least populous state, currently Wyoming. See the 2020 table, *infra*.

## B. History – 105-Member House of Representatives Established After First Census.

The 1787 Constitution provides, in pertinent part:

> The House of Representatives shall be composed of Members chosen every second Year by the People of the several States[.] … Representatives … shall be apportioned among the several States which may be included within this Union, according to their respective …whole Number of [] Persons[.] … The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative[.]

U.S.CONST., art. 1, § 2. [ER-20]

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress[.]" U.S.CONST., art. 2, § 1. [ER-20]

The first census counted 3,929,214 resident persons of the thirteen (13) United States, as of August 2, 1790. [ER-22; ER-35 (and hyperlink therein)]

"[T]he House of Representatives shall be composed of [105] members elected agreeably to a ratio of one member for every thirty-three thousand persons in each state[.]" Apportionment Act of April 14, 1792, 2nd Cong., Sess. I, Ch. 23. [ER-22]

## C. History — 19th Century — House Expands Along With National Population.

### 1. 141-Member House Following the Second Census.

The second census counted 5,308,483 resident persons in the sixteen (16) United States, as of August 4, 1800. [ER-22; ER-35]

"[T]he House of Representatives shall be composed of [141] members elected agreeably to a ratio of one member for every thirty-three thousand persons in each state[.]" Apportionment Act of January 14, 1802, 7th Cong., Sess. I, Ch. 1. [ER-22; ER-79]

### 2. 182-Member House Following the Third Census.

The third census counted 7,239,861 resident persons in the seventeen (17) United States, as of August 6, 1810. [ER-23]

"[T]he House of Representatives shall be composed of [182] members elected agreeably to a ratio of one representative for every thirty-five thousand persons in each state[.]" Apportionment Act of December 21, 1811, 12th Cong., Sess. I, Ch. 9. [ER-23; ER-80]

### 3. 213-Member House Following the Fourth Census.

The fourth census counted 9,638,453 resident persons in the twenty-three (23) United States, as of August 7, 1820. [ER-23]

"[T]he House of Representatives shall be composed of [213] members elected agreeably to a ratio of one representative for every forty-seven thousand persons in each state[.]" Apportionment Act of March 7, 1822, 17th Cong., Sess. I, Ch. 10. [ER-24; ER-81-82]

4. 240-Member House Following the Fifth Census.

The fifth census counted 12,860,702 resident persons in the twenty-four (24) United States, as of June 1, 1830. [ER-24]

"[T]he House of Representatives shall be composed of [240] members, elected agreeably to a ratio of one representative for every forty-seven thousand and seven hundred persons in each state[.]" Apportionment Act of May 22, 1832, 22nd Cong., Sess. I, Ch. 91. [ER-83]

5. 223-Member House Following the Sixth Census.

The sixth census counted 17,063,353 resident persons in the twenty-six (26) United States, as of June 1, 1840.

"[T]he House of Representatives shall be composed of [223] members elected agreeably to a ratio of one Representative for every seventy thousand six hundred and eighty persons in each State, and of one additional representative for each State having a fraction greater than one moiety of the said ratio[.]" Apportionment Act of June 25, 1842, 27th Cong., Sess. II, Ch. 47. [ER-84]

6. 233- and 234-Member House Following the Seventh Census.

The aggregate population of the United States "shall be divided by the number two hundred and thirty-three [233], and the product of such division … shall be the ratio, or rule of apportionment, of representatives among the several States[.]" Census Act of 1850, 31st Cong., Sess. I, Ch. 11, Sec. 25 (May 23, 1850). [ER-85-93]

The seventh census counted 23,191,876 resident persons in the thirty (30) United States, as of June 1, 1850. [ER-25]

"[T]he whole number of representatives is hereby increased to two hundred thirty-four [234][.]" Apportionment Act of July 30, 1852, 32nd Cong., Sess. I, Ch. 74. [ER-25; ER-94]

7. <u>241-Member House Following the Eighth Census</u>.

The eighth census counted 31,443,321 resident persons in the thirty-three (33) United States, as of June 1, 1860. [ER-25]

"[T]he number of members of the House of Representatives of the Congress of the United States shall be two hundred and forty-one [241], and the eight additional members shall be assigned one each to Pennsylvania, Ohio, Kentucky, Illinois, Iowa, Minnesota, Vermont, and Rhode Island." Apportionment Act of March 4, 1862, 37th Cong., Sess. II, Ch. 36. [ER-95]

8. <u>283- and 293-Member House Following Enactment of the Fourteenth Amendment and the Ninth Census</u>.

"Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[.]" U.S.CONST. amend. XIV, § 2. [ER-26]

The ninth census counted 38,558,371 resident persons in the thirty-seven (37) United States, as of June 1, 1870. [ER-27]

"[T]he House of Representatives shall be composed of two hundred and eighty-three [283] members, to be apportioned among the several States in accordance with the provisions of this act[.]" Apportionment Act of February 2, 1872, 42nd Cong., Sess. II, Ch. 11, Sec. 1. [ER-27; ER-96-97]

The House was increased to 293 members by Supplemental Act of May 30, 1872, 42nd Cong., Sess. II, Ch. 239. [ER-98]

9. <u>325-Member House Following the Tenth Census</u>.

The tenth census counted 50,189,209 resident persons in the thirty-eight (38) United States, as of June 1, 1880. [ER-28]

"[T]he House of Representatives shall be composed of three hundred and twenty-five [325] members, to be apportioned among the several States as follows: [list][.]" Apportionment Act of February 25, 1882, 47th Cong., Sess. I, Ch. 20. [ER-28; ER-99-100]

10. <u>357-Member House Following the Eleventh Census</u>.

The eleventh census counted 62,979,766 resident persons in the forty-two (42) United States, as of June 1, 1890. [ER-28]

"[T]he House of Representatives shall be composed of three hundred and fifty-six [357] members, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of February 7, 1891, 51st Cong., Sess. II, Ch. 116. [ER-28-29; ER-101-102]

11. <u>386-Member House Following the Twelfth Census</u>.

The twelfth census counted 76,212,168 resident persons in the forty-five (45) United States, as of June 1, 1900. [ER-29]

"[T]he House of Representatives shall be composed of three hundred and eighty-six [386] members, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of January 16, 1901, 56th Cong., Sess. II, Ch. 93. [ER-103-104]

## D. 20th Century – Congress Limits Itself To 435 Members.

### 1. 435-Member House Following the Thirteenth Census.

The thirteenth census counted 92,228,496 resident persons in the forty-six (46) United States, as of April 15, 1910. [ER-30]

"[T]he House of Representatives shall be composed of four hundred and thirty-three [433] Members, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of August 8, 1911, 62nd Cong., Sess. I, Ch. 5. [ER-30-32; ER-105-106]

"[I]f the Territories of Arizona and New Mexico shall become States in the Union before the apportionment of Representatives under the next decennial census they shall have one Representative each[.]" [ER-32-33; ER-106]

### 2. Congress Took No Action Following The Fourteenth Census

The fourteenth census counted 106,021,537 resident persons in the forty-eight (48) United States, as of January 1, 1920. ER-33]

But, as explained by the Census Bureau: "In 1920, the Census Bureau did transmit apportionment counts to Congress, but Congress did not reapportion." [ER-35 (and hyperlink therein)] See note 2 at:

https://www.census.gov/data/tables/time-series/dec/apportionment-data-text.html

3.     <u>In 1929, Congress Created the 435-Member Cap, Prior to the Fifteenth Census.</u>

"[T]he tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months from the beginning of the enumeration and reported by the Director of the Census to the Secretary of Commerce and by him to the President of the United States." Fifteenth Census and Apportionment Act of June 18, 1929, 71st Cong., Sess. I, Ch. 28, Sec. 2. [ER-107-113]

"[T]he President shall transmit to the Congress a statement showing the whole number of persons in each State … as ascertained under the fifteenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives [435][.]" [ER-112]

The fifteenth census counted 123,202,624 resident persons in the United States, as of April 1, 1930. [ER-36]

4. Following the Sixteenth Census, Congress Made The 435-Member Cap Permanent.

The sixteenth census counted 132,164,569 resident persons in the United States, as of April 1, 1940. [ER-39]

[The 1929 Act] to provide for apportionment of Representatives in Congress … is hereby amended in the first sentence of section 22 (a) by striking out the words "second regular session of the Seventy-First Congress" and substituting the following words: "first regular session of the Seventy-seventh Congress", and by striking out "fifteenth" and inserting "sixteenth".

Public Law 481, 54 Stat. 152, Sec. 1 (April 25, 1940). [ER-41; ER-114]

Congress made apportionment of 435 members permanent and automatic:

Each State shall be entitled, in the Seventy-eighth and in each Congress thereafter until the taking effect of a reapportionment under a subsequent statute[,] … to the number of Representatives shown in the statement transmitted to the Congress on January 8, 1941, based upon the method known as the method of equal proportions, no State to receive less than one Member.

Permanent Apportionment Act of November 15, 1941, 77th Cong., Sess. I, Ch. 470, Sec. 2(a). [ER-42; ER-115-116]

Presently, the law provides:

On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State … as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be

> entitled under an apportionment of the then existing number of Representatives [435] by the method known as the method of equal proportions, no State to receive less than one Member.

2 U.S.C. § 2a(a) (emphasis added).

> Each State shall be entitled, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, to the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member.

2 U.S.C. § 2a(b).

### E. Last Half of 20th Century – Representation in the House Becomes 'Zero-Sum' as Population Nearly Doubles.

The seventeenth census counted 151,325,798 resident persons in the United States, as of April 1, 1950. [ER-43]

Representation of Alaska and Hawaii in the House temporarily added one member per state for a total of 437, reverting after the next election to a total of 435. See Public Law 85-508 sec. 9, 72 Stat. 339 (July 7, 1958); and Public Law 86-3 sec. 8, 73 Stat. 4 (Mar. 18, 1959).

The eighteenth census counted 179,323,175 resident persons in the fifty (50) United States, as of April 1, 1960. [ER-46]

The nineteenth census counted 203,302,031 resident persons in the United States, as of April 1, 1970. [ER-53]

The twentieth census counted 226,542,199 resident persons in the United States, as of April 1, 1980. [ER-55]

The twenty-first census counted 248,709,873 resident persons in the United States, as of April 1, 1990. [ER-58]

F. 21st Century – The Largest District is Twice the Size of the Smallest.

    1. <u>2000 Census: Montana's Representative elected from a district of 905,316 residents; Wyoming's from a district of 495,304.</u>

The twenty-second census counted 281,421,906 resident persons in the United States, as of April 1, 2000. [ER-62] Automatic operation of 2 U.S.C. § 2a(a) and (b) resulted in the following apportionment:

| State | 2000 Population | # of Reps | District Size | Vote Fraction* | # of Reps. If Divided By WY^ |
|-------|-----------------|-----------|---------------|----------------|------------------------------|
| Montana | 902,195 | 1 | 905,316 | 0.547 | 1.82 |
| Delaware | 783,600 | 1 | 785,068 | 0.631 | 1.58 |
| South Dakota | 754,844 | 1 | 756,874 | 0.654 | 1.52 |
| Utah | 2,233,169 | 3 | 745,571 | 0.664 | 4.51 |
| Mississippi | 2,844,658 | 4 | 713,232 | 0.694 | 5.74 |
| Oklahoma | 3,450,654 | 5 | 691,764 | 0.716 | 6.97 |
| Oregon | 3,421,399 | 5 | 685,709 | 0.722 | 6.91 |
| Connecticut | 3,405,565 | 5 | 681,907 | 0.726 | 6.88 |
| Indiana | 6,080,485 | 9 | 676,754 | 0.732 | 12.28 |
| Kentucky | 4,041,769 | 6 | 674,905 | 0.734 | 8.16 |
| Kansas | 2,688,418 | 4 | 673,456 | 0.735 | 5.43 |
| Wisconsin | 5,363,675 | 8 | 671,401 | 0.738 | 10.83 |
| South Carolina | 4,012,012 | 6 | 670,844 | 0.738 | 8.1 |
| Arkansas | 2,673,400 | 4 | 669,933 | 0.739 | 5.4 |
| Nevada | 1,998,257 | 3 | 667,344 | 0.742 | 4.03 |
| Michigan | 9,938,444 | 15 | 663,722 | 0.746 | 20.07 |
| Maryland | 5,296,486 | 8 | 663,486 | 0.747 | 10.69 |
| Washington | 5,894,121 | 9 | 656,520 | 0.754 | 11.9 |

| | | | | |
|---|---|---|---|---|
| New York | 18,976,457 | 29 | 655,344 | 0.756 | 38.31 |
| Illinois | 12,419,293 | 19 | 654,686 | 0.757 | 25.07 |
| Texas | 20,851,820 | 32 | 653,250 | 0.758 | 42.1 |
| Idaho | 1,293,953 | 2 | 648,637 | 0.764 | 2.61 |
| New Jersey | 8,414,350 | 13 | 648,027 | 0.764 | 16.99 |
| Pennsylvania | 12,281,054 | 19 | 647,404 | 0.765 | 24.79 |
| Virginia | 7,078,515 | 11 | 645,518 | 0.767 | 14.29 |
| North Dakota | 642,200 | 1 | 643,756 | 0.769 | 1.3 |
| Arizona | 5,130,632 | 8 | 642,585 | 0.771 | 10.36 |
| Florida | 15,982,378 | 25 | 641,156 | 0.773 | 32.27 |
| California | 33,871,648 | 53 | 640,204 | 0.774 | 68.2 |
| Louisiana | 4,468,976 | 7 | 640,039 | 0.774 | 9.02 |
| Maine | 1,274,923 | 2 | 638,866 | 0.775 | 2.57 |
| Alabama | 4,447,100 | 7 | 637,304 | 0.777 | 8.98 |
| Massachusetts | 6,349,097 | 10 | 635,557 | 0.779 | 12.82 |
| Tennessee | 5,689,283 | 9 | 633,337 | 0.782 | 11.49 |
| Ohio | 11,353,140 | 18 | 631,919 | 0.784 | 22.92 |
| Georgia | 8,186,453 | 13 | 631,306 | 0.785 | 16.53 |
| Alaska | 626,932 | 1 | 628,933 | 0.788 | 1.27 |
| Missouri | 5,595,211 | 9 | 622,918 | 0.795 | 11.3 |
| North Carolina | 8,049,313 | 13 | 620,590 | 0.798 | 16.25 |
| New Hampshire | 1,235,786 | 2 | 619,208 | 0.8 | 2.495 |
| Colorado | 4,301,261 | 7 | 615,983 | 0.804 | 8.68 |
| Minnesota | 4,919,479 | 8 | 615,709 | 0.804 | 9.93 |
| Vermont | 608,827 | 1 | 609,890 | 0.812 | 1.3 |
| Hawaii | 1,211,537 | 2 | 608,321 | 0.814 | 2.45 |
| New Mexico | 1,819,046 | 3 | 607,940 | 0.815 | 3.67 |
| West Virginia | 1,808,344 | 3 | 604,359 | 0.82 | 3.65 |
| Iowa | 2,926,324 | 5 | 586,385 | 0.845 | 5.91 |
| Nebraska | 1,711,263 | 3 | 571,790 | 0.866 | 3.45 |
| Rhode Island | 1,048,319 | 2 | 524,831 | 0.944 | 2.12 |
| Wyoming | 493,782 | 1 | 495,304 | 1.00 | 1 |
| | | 435 | | | 566.92 |

| | | | |
|---|---|---|---|
| 500,000 - 599,999 | | | |
| 600,000 - 699,999 | | | |
| | | | |
| 700,000 - 799,999 | | | |

*Smallest District [WY] Divided By Individual District.

^State's Population Divided By Wyoming's 2000 Population of 493,782.

2. <u>2010 Census: Montana's Representative elected from a district of 994,416 residents; Rhode Island's from districts of 527,624.</u>

The twenty-third census counted 308,745,538 resident persons in the United States, as of April 1, 2010. [ER-64] Automatic operation of 2 U.S.C. § 2a(a) and (b) resulted in the following apportionment:

| State | 2010 Population | # of Reps | District Size | Vote Fraction* | # of Reps. If Divided by WY^ |
|---|---|---|---|---|---|
| Montana | 989,415 | 1 | 994,416 | 0.531 | 1.76 |
| Delaware | 897,934 | 1 | 900,877 | 0.586 | 1.59 |
| South Dakota | 814,180 | 1 | 819,761 | 0.644 | 1.44 |
| Idaho | 1,567,582 | 2 | 786,750 | 0.671 | 2.78 |
| Oregon | 3,831,074 | 5 | 769,721 | 0.685 | 6.80 |
| Iowa | 3,046,355 | 4 | 763,447 | 0.691 | 5.40 |
| Louisiana | 4,533,372 | 6 | 758,994 | 0.695 | 8.05 |
| Oklahoma | 3,751,351 | 5 | 752,976 | 0.701 | 6.65 |
| Missouri | 5,988,927 | 8 | 751,435 | 0.702 | 10.63 |
| Mississippi | 2,967,297 | 4 | 744,560 | 0.709 | 5.26 |
| North Carolina | 9,535,483 | 13 | 735,829 | 0.717 | 16.92 |
| New Jersey | 8,791,894 | 12 | 733,958 | 0.719 | 15.60 |
| Arkansas | 2,915,918 | 4 | 731,557 | 0.721 | 5.17 |
| Virginia | 8,001,024 | 11 | 730,703 | 0.722 | 14.20 |
| Massachusetts | 6,547,629 | 9 | 728,849 | 0.724 | 11.62 |

| | | | | | |
|---|---|---|---|---|---|
| Kentucky | 4,339,367 | 6 | 725,101 | 0.728 | 7.70 |
| Maryland | 5,773,552 | 8 | 723,741 | 0.730 | 10.24 |
| Ohio | 11,536,504 | 16 | 723,031 | 0.730 | 20.47 |
| Indiana | 6,483,802 | 9 | 722,398 | 0.730 | 11.50 |
| Alaska | 710,231 | 1 | 721,523 | 0.731 | 1.26 |
| Colorado | 5,029,196 | 7 | 720,704 | 0.732 | 8.92 |
| New York | 19,378,102 | 27 | 719,298 | 0.734 | 34.38 |
| Connecticut | 3,574,097 | 5 | 716,326 | 0.737 | 6.34 |
| Kansas | 2,853,118 | 4 | 715,953 | 0.737 | 5.06 |
| Illinois | 12,830,632 | 18 | 714,688 | 0.738 | 22.76 |
| Arizona | 6,392,017 | 9 | 712,522 | 0.741 | 11.34 |
| Wisconsin | 5,686,986 | 8 | 712,279 | 0.741 | 10.09 |
| Tennessee | 6,346,105 | 9 | 708,381 | 0.745 | 11.26 |
| Michigan | 9,883,640 | 14 | 707,973 | 0.745 | 17.54 |
| Pennsylvania | 12,702,379 | 18 | 707,495 | 0.746 | 22.54 |
| California | 37,253,956 | 53 | 704,566 | 0.749 | 66.10 |
| Texas | 25,145,561 | 36 | 701,901 | 0.752 | 44.61 |
| Florida | 18,801,310 | 27 | 700,029 | 0.754 | 33.36 |
| Georgia | 9,687,653 | 14 | 694,826 | 0.759 | 17.19 |
| Utah | 2,763,885 | 4 | 692,691 | 0.761 | 4.90 |
| New Mexico | 2,059,179 | 3 | 689,091 | 0.766 | 3.66 |
| Alabama | 4,779,736 | 7 | 686,140 | 0.769 | 8.48 |
| Hawaii | 1,360,301 | 2 | 683,431 | 0.772 | 2.41 |
| Nevada | 2,700,551 | 4 | 677,358 | 0.779 | 4.79 |
| North Dakota | 672,591 | 1 | 675,905 | 0.781 | 1.19 |
| Washington | 6,724,540 | 10 | 675,337 | 0.781 | 11.93 |
| Maine | 1,328,361 | 2 | 666,537 | 0.792 | 2.36 |
| Minnesota | 5,303,925 | 8 | 664,360 | 0.794 | 9.41 |
| South Carolina | 4,625,364 | 7 | 663,711 | 0.795 | 8.21 |
| New Hampshire | 1,316,470 | 2 | 660,723 | 0.799 | 2.34 |
| Vermont | 625,741 | 1 | 630,337 | 0.837 | 1.11 |
| West Virginia | 1,852,994 | 3 | 619,938 | 0.924 | 3.29 |
| Nebraska | 1,826,341 | 3 | 610,608 | 0.864 | 3.24 |
| Wyoming | 563,626 | 1 | 568,300 | 0.928 | 1.00 |
| Rhode Island | 1,052,567 | 2 | 527,624 | 1.000 | 1.87 |
| | | 435 | | | 546.72 |

| | |
|---|---|
| 500,000 - 599,999 | * Smallest District [RI] Divided By Individual District. |
| 600,000 - 699,999 | |
| 700,000 - 799,999 | ^ State's Population Divided By Wyoming's 2010 Population of 563,626. |

3. <u>2020 Census: Delaware's Representative elected from a district of 990,837 residents; Montana's from districts of 542,704.</u>

The twenty-fourth census counted 331,449,281 resident persons in the United States, as of April 1, 2020. [ER-69] Automatic operation of 2 U.S.C. § 2a(a) and (b) resulted in the following apportionment:

| State | 2020 Population | # of Reps. | District Size | Vote Fraction* | # of Reps. If Divided by WY^ |
|---|---|---|---|---|---|
| Delaware | 989,948 | 1 | 990,837 | 0.548 | 1.72 |
| Idaho | 1,839,106 | 2 | 920,689 | 0.589 | 3.19 |
| West Virginia | 1,793,716 | 2 | 897,523 | 0.605 | 3.11 |
| South Dakota | 886,667 | 1 | 887,770 | 0.611 | 1.54 |
| Utah | 3,271,616 | 4 | 818,813 | 0.663 | 5.67 |
| Iowa | 3,190,369 | 4 | 798,102 | 0.680 | 5.53 |
| Arizona | 7,151,502 | 9 | 795,436 | 0.682 | 12.40 |
| Oklahoma | 3,959,353 | 5 | 792,703 | 0.685 | 6.86 |
| Ohio | 11,799,448 | 15 | 787,257 | 0.689 | 20.45 |
| Virginia | 8,631,393 | 11 | 786,777 | 0.690 | 14.96 |
| Massachusetts | 7,029,917 | 9 | 781,497 | 0.694 | 12.19 |
| North Dakota | 779,094 | 1 | 779,702 | 0.696 | 1.35 |
| New York | 20,201,249 | 26 | 777,529 | 0.698 | 35.02 |
| Nevada | 3,104,614 | 4 | 777,116 | 0.698 | 5.38 |
| Louisiana | 4,657,757 | 6 | 776,911 | 0.699 | 8.07 |
| Michigan | 10,077,331 | 13 | 775,726 | 0.670 | 17.47 |

| New Jersey | 9,288,994 | 12 | 774,541 | 0.701 | _16.10_ |
|---|---|---|---|---|---|
| Maryland | 6,177,224 | 8 | 773,160 | 0.702 | _10.71_ |
| Washington | 7,705,281 | 10 | 771,595 | 0.703 | _13.36_ |
| Florida | 21,538,187 | 28 | 770,376 | 0.704 | _37.34_ |
| Missouri | 6,154,913 | 8 | 770,035 | 0.705 | _10.67_ |
| Tennessee | 6,910,840 | 9 | 768,544 | 0.706 | _11.98_ |
| Texas | 29,145,505 | 38 | 767,981 | 0.707 | _50.53_ |
| Georgia | 10,711,908 | 14 | 766,091 | 0.708 | _18.57_ |
| Pennsylvania | 13,002,700 | 17 | 765,403 | 0.709 | _22.54_ |
| California | 39,538,223 | 52 | 761,091 | 0.713 | _68.54_ |
| Indiana | 6,785,528 | 9 | 754,476 | 0.719 | _11.76_ |
| Illinois | 12,812,508 | 17 | 754,279 | 0.720 | _22.21_ |
| Arkansas | 3,011,524 | 4 | 753,439 | 0.721 | _5.22_ |
| Kentucky | 4,505,836 | 6 | 751,557 | 0.722 | _7.81_ |
| North Carolina | 10,439,388 | 14 | 746,711 | 0.727 | _18.10_ |
| Mississippi | 2,961,279 | 4 | 740,979 | 0.732 | _5.13_ |
| Wisconsin | 5,893,718 | 8 | 737,184 | 0.736 | _10.22_ |
| Alaska | 733,391 | 1 | 736,081 | 0.737 | _1.27_ |
| Kansas | 2,937,880 | 4 | 735,216 | 0.738 | _5.09_ |
| South Carolina | 5,118,425 | 7 | 732,102 | 0.741 | _8.87_ |
| Hawaii | 1,455,271 | 2 | 730,069 | 0.743 | _2.52_ |
| Colorado | 5,773,714 | 8 | 722,771 | 0.751 | _10.01_ |
| Connecticut | 3,608,298 | 5 | 721,660 | 0.752 | _6.26_ |
| Alabama | 5,024,279 | 7 | 718,579 | 0.755 | _8.71_ |
| Minnesota | 5,706,494 | 8 | 713,719 | 0.760 | _9.89_ |
| Oregon | 4,237,256 | 6 | 706,917 | 0.768 | _7.35_ |
| New Mexico | 2,117,522 | 3 | 706,740 | 0.678 | _3.67_ |
| New Hampshire | 1,377,529 | 2 | 689,545 | 0.787 | _2.39_ |
| Maine | 1,362,359 | 2 | 681,791 | 0.796 | _2.36_ |
| Nebraska | 1,961,504 | 3 | 654,444 | 0.829 | _3.40_ |
| Vermont | 643,077 | 1 | 643,503 | 0.843 | _1.11_ |
| Wyoming | 576,851 | 1 | 577,719 | 0.939 | _1.00_ |
| Rhode Island | 1,097,379 | 2 | 549,082 | 0.988 | _1.90_ |
| Montana | 1,084,225 | 2 | 542,704 | 1.000 | _1.88_ |

| 435 | | 573.38 |

*Smallest District [MT]
Divided By Individual
District.

^ State's Population Divided By
Wyoming's 2020 Population of
576,851.

| 500,000 - 599,999 |
| 600,000 - 699,999 |
| 700,000 - 799,999 |
| 800,000 - 899,999 |
| 900,000 - 999,999 |

# SUMMARY OF ARGUMENT

2 U.S.C. § 2a(a) and (b) are unconstitutional as presently applied, because they cause each State to have such different-sized congressional districts that presently the largest has 990,837 persons, while the smallest has 542,704. This is "malapportionment," as described in *Wesberry v. Sanders*, *supra*, and violates settled "one person, one vote" principles. [See ER-50-52]

The Constitution provides that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[,]" and that "each State shall have at Least one Representative[.]" U.S.CONST. amend. XIV, § 2; U.S.CONST., art. 1, § 2.

Unless Congress supplies a smaller district size which would give the least populous state more than one Representative, in order to be consistent with the above-quoted text, the population of the smallest state, which has one Representative, supplies the necessary size of each other congressional district in the rest of the States.

## ARGUMENT

### A. Dismissal Pursuant to Rule 12(b)(6) Is Reviewed *De Novo.*

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to provide the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must take as true all allegations of material fact in the complaint—as well as any reasonable inferences to be drawn from them—and construe them in the light most favorable to the claimant. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

This Court reviews *de novo* the district court's dismissal of the complaint. *Levi v. Atossa Genetics, Inc.* (*In re Atossa Genetics Inc. Sec. Litig.*), 868 F.3d 784, 793 (9th Cir. 2017). The court must accept all well-pleaded allegations as true. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1205 (9th Cir. 2016). The Court considers the complaint as a whole. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Dismissal Pursuant to Rule 56 is Reviewed *De Novo*.

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Orders granting summary judgment are reviewed *de novo*. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017).

## C. U.S. Census Data Quoted Verbatim, Cited, And Hyperlinked In The Complaint Is Admissible.

The Complaint describes a problem hiding in plain sight, because the Census data show that no two states have congressional districts of the same size, and that '435' is an arbitrary number to divide the population in to. The Complaint cites, links to, and extensively quotes verbatim official data published by the United States Census Bureau. [ER-22 [1st and 2nd Census]; ER-23 [3rd and 4th Census]; ER-24 [5th and 6th Census]; ER-25 [7th and 8th Census]; ER-27 [9th Census]; ER-28 [10th and 11th Census]; ER-29 [12th Census]; ER-30-32 [13th Census]; ER-33-35

[14th Census] and link at ER-35 "[https://www.census.gov/data/tables/time-series/dec/apportionment-data-text.html](https://www.census.gov/data/tables/time-series/dec/apportionment-data-text.html)" [Complete Data Sets]; ER-36-39 [15th Census]; ER-39-41 [16th Census]; ER-43-45 [17th Census]; ER-46-49 [18th Census]; ER-53-55 [19th Census]; ER-55-57 [20th Census]; ER-58-60 [21st Census]; ER-62-64 [22nd Census]; ER-64-66 [23rd Census]; and ER-69-71 [24th Census]].

"United States census data is an appropriate and frequent subject of judicial notice." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir. 2011) (citing *United States v. Esquivel*, 88 F.3d 722, 726–27 (9th Cir. 1996)). See, also, *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1063 (C.D. Cal. 2017); and *Altamirano v. City of Tucson*, 2020 WL 7027555 at *3 (D.Ariz., November 30, 2020) ("Although the census data is potentially admissible under Fed. R. Evid. 803(8)(A)(i) and (ii), … regardless of the applicability of Rule 803, the Court finds that the census data may be subject to judicial notice, pursuant to Fed. R. Evid. 201(b), as a fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Census data is self-authenticating. See Fed. R. Evid. 901(b)(7); Fed. R. Evid. 902(5).

Insofar as the district court refused to consider official data published by the United States Census Bureau and extensively quoted and cited in the Complaint, it erred.

**D.** *Wesberry* **Remains Good Law, And "The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article 1."**

As recently described by the *Rucho* court, in 'the leading case' *Baker v. Carr*, voters in Tennessee complained that the State's districting plan for state representatives 'debase[d]' their votes, because the plan was predicated on a 60-year-old census that no longer reflected the distribution of population in the State." *Rucho*, 139 S.Ct. at 2496. "The [*Baker*] plaintiffs argued that votes of people in overpopulated districts held less value than those of people in less-populated districts, and that this inequality violated the Equal Protection Clause of the Fourteenth Amendment." *Id.* "The District Court dismissed the action on the ground that the claim was not justiciable, relying on this Court's precedents, including *Colegrove*. This Court reversed." *Id.* "[The *Baker v. Carr* court] identified various considerations relevant to determining whether a claim is a nonjusticiable political question, including whether there is 'a lack of judicially discoverable and manageable standards for resolving it.'" *Id.* (citing *Baker*, 369 U.S. at 217). "The Court concluded that the claim of population inequality among districts did not fall into that category, because such a claim could be decided under basic equal protection principles." *Id.* (citing *Baker* at 226).

"In *Wesberry v. Sanders*, the Court extended its ruling [in *Baker v. Carr*] to malapportionment of congressional districts, holding that Article 1, § 2, required that 'one man's vote in a congressional election is to be

worth as much as another's.'" *Rucho* at 2496 (quoting *Wesberry v. Sanders*, 376 U.S. at 8).

Rejecting the contention that apportionment under Article 1 is a non-justiciable political question, the *Wesberry* court explained that "The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article 1." 376 U.S. at 7.

> We hold that, construed in its historical context, the command of art. 1, § 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's. This rule is followed automatically, of course, when Representatives are chosen as a group on a statewide basis, as was a widespread practice in the first 50 years of our Nation's history. ... The history of the Constitution, particularly that part of it relating to the adoption of art. 1, § 2, reveals that those who framed the Constitution meant that, no matter what the mechanics of an election, whether statewide or by districts, it was population which was to be the basis of the House of Representatives. [pp. 7-9]
> ...
> The debates at the Convention make at least one fact abundantly clear: that when the delegates agreed that the House should represent 'people' they intended that in allocating Congressmen the number assigned to each State should be determined solely by the number of the State's inhabitants. The Constitution embodied Edmund Randolph's proposal for a periodic census to ensure 'fair representation of the people,' an idea endorsed by Mason as assuring that 'numbers of inhabitants' should always be the measure of representation in the House of Representatives. The Convention also overwhelmingly agreed to a resolution offered by Randolph to base future apportionment squarely on numbers and to delete any reference to wealth. And the

delegates defeated a motion made by Elbridge Gerry to limit the number of Representatives from newer Western States so that it would never exceed the number from the original States.

...

The House of Representatives, the Convention agreed, was to represent the people as individuals, and on a basis of complete equality for each voter. [pp. 13-14]

...

It is in the light of such history that we must construe art. 1, § 2, of the Constitution, which, carrying out the ideas of Madison and those of like views, provides that Representatives shall be chosen 'by the People of the several States' and shall be 'apportioned among the several States ... according to their respective Numbers.' It is not surprising that our Court has held that this Article gives persons qualified to vote a constitutional right to vote and to have their votes counted. *United States v. Mosley*, 238 U.S. 383 (1915); *Ex parte Yarbrough*, 110 U.S. 651 (1884). Not only can this right to vote not be denied outright, it cannot, consistently with Article 1, be destroyed by alteration of ballots, see *United States v. Classic*, 313 U.S. 299 (1941), or diluted by stuffing of the ballot box, see *United States v. Saylor*, 322 U.S. 385 (1944). No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right. In urging the people to adopt the Constitution, Madison said in No. 57 of The Federalist:

> 'Who are to be the electors of the Federal Representatives? Not the rich more than the poor; not the learned more than the ignorant; not the haughty heirs of distinguished names, more than the humble sons of obscure and unpropitious

> fortune. The electors are to be the great body of the people of the United States. * * *'
>
> **Readers surely could have fairly taken this to mean, 'one person, one vote.'** Cf. *Gray v. Sanders*, 372 U.S. 368 (1963)[.] While it may not be possible to draw congressional districts with mathematical precision, that is no excuse for ignoring our Constitution's plain objective of making equal representation for equal numbers of people the fundamental goal for the House of Representatives. That is the high standard of justice and common sense which the Founders set for us. [pp. 17-18]

*Wesberry v. Sanders*, 376 U.S. at 7-9; 13-14; 17-18.

E. **Under** *Wesberry*, **2 U.S.C. § 2a(a) and (b) Are Unconstitutional Because They Produce Congressional Districts Which Are Twice The Size Of Others, Violating 'One Person, One Vote.'**

At the time *Wesberry* was decided, the 1960 Census and operation of 2 U.S.C. § 2a(a) resulted in the average House district having 410,481 residents. Excepting Alaska [226,167 residents] and Nevada [285,278 residents], every other House district in every State had between 303,000 and 484,000 residents. [ER-46-49; ER-35 (and hyperlink therein)]

But, as of the Census in 2000, the *gap between* the largest and the smallest district was 410,012 residents.

| State | 2000 Population | # of Reps | District Size | Vote Fraction* | # of Reps. If Divided By WY^ |
|---|---|---|---|---|---|
| Montana | 902,195 | 1 | 905,316 | 0.547 | *1.82* |
| Delaware | 783,600 | 1 | 785,068 | 0.631 | *1.58* |
| ... | | | | | |
| Rhode Island | 1,048,319 | 2 | 524,831 | 0.944 | *2.12* |
| Wyoming | 493,782 | 1 | 495,304 | 1.00 | *1* |

The gap between the smallest and the largest districts grew to 466,792 after the Census in 2010:

| State | 2010 Population | # of Reps | District Size | Vote Fraction* | # of Reps. If Divided by WY^ |
|---|---|---|---|---|---|
| Montana | 989,415 | 1 | 994,416 | 0.531 | 1.76 |
| Delaware | 897,934 | 1 | 900,877 | 0.586 | 1.59 |
| South Dakota | 814,180 | 1 | 819,761 | 0.644 | 1.44 |
| ... | | | | | |
| Nebraska | 1,826,341 | 3 | 610,608 | 0.864 | 3.24 |
| Wyoming | 563,626 | 1 | 568,300 | 0.928 | 1.00 |
| Rhode Island | 1,052,567 | 2 | 527,624 | 1.000 | 1.87 |

Presently, every state has congressional districts of different, arbitrary size, and whether a state is assigned large or small congressional districts is a matter of random chance.

| State | 2020 Population | # of Reps. | District Size | Vote Fraction* | # of Reps. If Divided by WY^ |
|---|---|---|---|---|---|
| Delaware | 989,948 | 1 | 990,837 | 0.548 | 1.72 |
| Idaho | 1,839,106 | 2 | 920,689 | 0.589 | 3.19 |
| West Virginia | 1,793,716 | 2 | 897,523 | 0.605 | 3.11 |
| South Dakota | 886,667 | 1 | 887,770 | 0.611 | 1.54 |
| Utah | 3,271,616 | 4 | 818,813 | 0.663 | 5.67 |
| ... | | | | | |
| Nebraska | 1,961,504 | 3 | 654,444 | 0.829 | 3.40 |
| Vermont | 643,077 | 1 | 643,503 | 0.843 | 1.11 |
| Wyoming | 576,851 | 1 | 577,719 | 0.939 | 1.00 |
| Rhode Island | 1,097,379 | 2 | 549,082 | 0.988 | 1.90 |
| Montana | 1,084,225 | 2 | 542,704 | 1.000 | 1.88 |

The problem of unequal representation is easy to solve, as set forth above. Dividing the population of each state by that of the least populous, presently Wyoming, grants voters in every state an equal value to their votes, meeting the constitutional requirements of each state having no less than one (1) member, and that each state be apportioned representatives according to its population.

## F. The District Court Erred In Failing To Distinguish *Wesberry*, The Controlling Case.

This case concerns population inequality among congressional districts. It does not concern partisan gerrymandering, nor does it concern racial gerrymandering.

The apportionment cases relied upon by the district court concern either partisan or racial gerrymandering, meaning the analysis they supply is immaterial to the present case. Specifically, the district court references *Shaw v. Hunt*, 517 U.S. 899, 904 (1996), which is a racial gerrymander case. *Shapiro v. McManus*, 577 U.S. 39, 46 (2015), is a partisan gerrymander case. *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018), is a partisan gerrymander case. *Citizens v. Padilla*, 815 F.Appx. 120 (2020) concerns California constitutional law.

The remainder of the cases referenced by the district court are distinguishable, because none concern art. 1, § 2; art. 2, § 1; amend. XIV § 2; or the legal analysis unique to claims of population inequality among congressional districts. Two (2) are property cases: *Gonzalez v. Automatic*

*Emp. Credit Union*, 419 U.S. 90 (1974) (car repossession statute); and *Grimm v. Portland*, 971 F.3d 1060 (2020) (car towing). One (1) is a 'cruel and unusual punishment' case. *Akhtar v. Mesa, et al.*, 698 F.3d 1202 (9th Cir. 2012). One is an employment claim. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (2018). One (1) is review of dismissal of an administrative complaint before the Federal Elections Commission. *F.E.C. v. Akins*, 524 U.S. 11 (1998). And the last three (3) regard general construction of pleadings. *Huffman v. Lindgren*, 2023 WL 5660151 (9th Cir. 2023); *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2020); and *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004).

    As noted *supra*, the *Wesberry* case was relied upon and extensively quoted in the Complaint. [ER-50-52] *Wesberry* is controlling under these facts, and the district court erred in failing to analyze or distinguish *Wesberry*. See *Evenwel*, 578 U.S. at 59. [Compare ER-6-17 with ER-50-52]

## CONCLUSION

Appellant is one person, registered to vote where he resides. Since he resides in Spokane, Washington, he has 0.703 of a vote, as compared to a voter in Montana. The reason Appellant's vote is 'worth' 0.703 of a vote by a Montana resident is the Permanent Apportionment Act, 2 U.S.C. § 2a(a) and (b), automatic operation of which following each census unconstitutionally assigns different-population-sized congressional districts to every state, and forever arbitrarily caps the number of Representatives at 435, as it was in 1912.

Were the Court to hold that 2 U.S.C. § 2a(a) and (b) are unconstitutional, then in the absence of other direction from Congress, the Constitution provides the metric to determine congressional district size. That metric is the population of the least populous state, since that state must be apportioned "at Least one Representative." The population of each other state is divided by the population of the least populous state to determine each other state's respective number of Representatives. U.S. CONST., art. 1, § 2; U.S. CONST. amend. XIV, § 2. [See column labeled "# of Reps. if Divided by WY", 2020 Table, *supra*, STATEMENT OF THE CASE, section 'F', subsection '3']

Under *Wesberry*, *Rucho*, and *Evenwel*, Appellant has standing to assert this claim of population inequality among congressional districts; the harm, population inequality among congressional districts, is justiciable because the problem can be analyzed using official census

data; and the Court holding 2 U.S.C. § 2a(a) and (b) unconstitutional would remedy the present and ongoing 'vote dilution' harm suffered by Appellant and all other voters.

The district court erred in dismissing Appellant's claim, and for the foregoing reasons, should be reversed.

Filed this 27th day of September, 2023,

KSB LITIGATION, P.S.

By: s/ William C. Schroeder
510 West Riverside Ave., Suite 300
Spokane, Washington, 99201
wcs@KSBLit.legal
(509) 624-8988
Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  23-35606

I am the attorney or self-represented party.

**This brief contains**  10,343  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ William C. Schroeder   **Date**  09/27/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*