**Case Number 23-35606**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

William C. Schroeder,

Appellant,

vs.

United States of America,

Appellee.

Appeal from United States District Court
for the Eastern District of Washington

**EXCERPTS OF RECORD**

**VOLUME 1 OF 1 WITH INDEX**

**ER 1 - 122**

William C. Schroeder
**KSB Litigation, P.S.**
510 W. Riverside Ave., Ste. 300
Spokane, Washington, 99201
(509) 624-8988
wcs@KSBLit.legal
Appellant
WSBA #41986
MSB #11963

# INDEX

Excerpts of Record, Volume 1 of 1

| Document Title | Citation to Record Below | Excerpt of Records Citation |
|---|---|---|
| Title Page / Cover | N/A | ER-1 |
| Index | N/A | ER-2-4 |
| Judgment in a Civil Case – Dismissal Without Prejudice; September 11, 2023 | ECF 10 | ER-5 |
| Memorandum Decision – September 11, 2023 | ECF 9 | ER-6-17 |
| Complaint – July 18, 2022 | ECF 1 | ER-18-77 |
| • Statute I, 2nd Congress, Sess. I, Ch. 23, April 14, 1792. | ECF 1-4 | ER-78 |
| • Statute I, 7th Congress, January 26, 1802. | ECF 1-5 | ER-79 |
| • Statute I, 12th Congress, Sess. I, Ch. 9, December 21, 1811. | ECF 1-6 | ER-80 |
| • Statute I, 17th Congress, Sess. I, Ch. 10, March 7, 1822. | ECF 1-7 | ER-81-82 |
| • Statute I, 22nd Congress, Sess. I, Ch. 91, May 22, 1832. | ECF 1-8 | ER-83 |
| • Statute II, 27th Congress, Sess. II, Ch. 48, June 25, 1842. | ECF 1-9 | ER-84 |
| • Act of 1850, 31st Congress, Sess. I, Ch. 11, May 23, 1850. | ECF 1-10 | ER-85-93 |

| Document Title | Citation to Record Below | Excerpt of Records Citation |
|---|---|---|
| • Act of 1850, Ch. 11, Sec. 20, Amended, 32nd Congress, Sess. I, Ch. 74, July 30, 1852. | ECF 1-11 | ER-94 |
| • Act of 1862, Ch. 36, 37th Congress, Sess. II, March 4, 1862. | ECF 1-12 | ER-95 |
| • Act for Apportionment, 42nd Congress, Sess. II, Ch. 11, February 2, 1872. | ECF 1-13 | ER-96-97 |
| • Act Supplemental to Act for Apportionment, 42nd Congress, Sess. II, Ch. 239, May 30, 1872. | ECF 1-14 | ER-98 |
| • Act Making An Apportionment of Representatives in Congress, 47th Congress, Sess. I, Ch. 20, February 25, 1882. | ECF 1-15 | ER-99-100 |
| • Act Making An Apportionment of Representatives in Congress, 51st Congress, Sess. II, Ch. 116, February 7, 1891. | ECF 1-16 | ER-101-102 |
| • Act Making An Apportionment of Representatives in Congress, 56th Congress, Sess. II, Ch. 93, January 16, 1901. | ECF 1-17 | ER-103-104 |
| • Act for the Apportionment of Representatives in Congress, 62nd Congress, Sess. I, Ch. 5, August 8, 1911. | ECF 1-18 | ER-105-106 |

| Document Title | Citation to Record Below | Excerpt of Records Citation |
|---|---|---|
| • Act to Provide for the Fifteenth and Subsequent Decennial Censuses, 71st Congress, Sess. I, Ch. 28, June 18, 1929. | ECF 1-19 | ER-107-113 |
| • Public Law No. 481, approved April 25, 1940. | ECF 1-20 | ER-114 |
| • Public Law No. 291, approved November 15, 1941. | ECF 1-21 | ER-115-116 |
| • Lodged Notice of Appeal | ECF 13-1 | ER-117-120 |
| • Civil Docket | ECF 13-2 | ER-121-122 |

AO 450 (Rev. 11/11) Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 11, 2023

SEAN F. McAVOY, CLERK

WILLIAM C. SCHROEDER
*Plaintiff*
v.
UNITED STATES OF AMERICA
*Defendant*

Civil Action No. 2:22-cv-00172-MKD

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* __________ recover from the defendant *(name)* __________ the amount of __________ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* __________ recover costs from the plaintiff *(name)* __________ .

☑ other: Defendants' Motion to Dismiss, ECF No. 6, is GRANTED.
Plaintiff's Complaint, ECF No. 1, is DISMISSED without prejudice.

This action was *(check one)*:

☐ tried by a jury with Judge __________ presiding, and the jury has rendered a verdict.

☐ tried by Judge __________ without a jury and the above decision was reached.

☑ decided by Judge MARY K. DIMKE on a motion to dismiss.

Date: 9/11/2023

*CLERK OF COURT*

SEAN F. McAVOY

s/ Wendy Kirkham
*(By) Deputy Clerk*

Wendy Kirkham

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 11, 2023

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM C. SCHROEDER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:22-cv-00172-MKD<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>**ECF No. 6** |

Before the Court is Defendant's motion to dismiss, ECF No. 6. The Court has reviewed the record and is fully informed. The motion was considered without oral argument. For the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

## BACKGROUND

### A. Procedural History

Plaintiff, an attorney representing himself in this action, filed a Complaint alleging the limit on the size of the House of Representatives is unconstitutional.

ECF No. 1 at 1. Plaintiff requested the case be heard by a three-judge panel. *Id.* at 2. On September 19, 2022, Defendant filed a Motion to Dismiss. ECF No. 6.

**B. Summary of Allegations**

Plaintiff alleges that 2 U.S.C. § 2a(a), which permanently limits the House of Representatives to 435 members, violates Article I and Article II of the United States Constitution. ECF No. 1 at 1. Plaintiff alleges the limit deprives citizens of their constitutional right to equal representation in the House of Representatives and in the electoral college for the presidency. *Id.* Plaintiff further alleges the limit is inconsistent with the "one person, one vote" jurisprudence. *Id.*

**LEGAL STANDARD**

"A [Fed. R. Civ. P. 12(b)(1)] jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The reviewing court is to accept the allegations as true and draw all reasonable inferences in the plaintiff's favor "unless challenged by the defendant." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). For a factual attack, the movant challenges the veracity of the allegations. *Safe Air for Everyone*, 373 F.3d at 1039. "[T]he district court may review evidence beyond the complaint without converting the

motion to dismiss into a motion for summary judgment." *Id.* The reviewing

court is not required to accept the allegations as true. *Id.*

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* In considering a motion to dismiss for failure to state a claim, the

Court must accept as true the well-pleaded factual allegations and any reasonable

inference to be drawn from them, but legal conclusions are not entitled to the same

assumption of truth. *Id.* A complaint must contain either direct or inferential

allegations respecting all the material elements necessary to sustain recovery under

some viable legal theory. *Twombly,* 550 U.S. at 562. "Factual allegations must be

enough to raise a right to relief above the speculative level." *Id.* at 555.

Generally, *pro se* litigants must be given the opportunity to amend their

complaint to correct any deficiencies, unless it is clear that amendment would be

futile. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute

on other grounds,* 28 U.S.C. § 1915(e)(2), *as stated in Akhtar v. Mesa*, 698 F.3d

1202, 1212 (9th Cir. 2012). However, *pro se* litigants who are also attorneys are

not afforded liberal pleading construction, and they are not treated as proceeding

without counsel. *Huffman v. Lindgren*, No. 22-35471, 2023 WL 5660151, at *3 (9th Cir. Sept. 1, 2023). As Plaintiff is an attorney, he is not afforded the leeway afforded to non-attorney *pro se* litigants.

**DISCUSSION**

**A. Jurisdiction**

Defendant contends the Court lacks jurisdiction to decide this action, because 1) Plaintiff lacks standing; and 2) the complaint raises a nonjusticiable political question. ECF No. 6 at 6-15.

*1. Standing*

Defendant contends Plaintiff lacks standing because he has not suffered an individualized injury, and even if he did suffer an injury, the Court cannot redress any alleged harm. *Id.* at 12-15. To demonstrate standing, a plaintiff must plausibly plead facts to establish: 1) he "suffered an injury in fact"; 2) there is "a causal connection between the injury and the conduct complained of"; and 3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted)). Defendant raises a facial attack, contending Plaintiff's allegations are insufficient on their face to invoke this Court's jurisdiction; thus, the Court must accept Plaintiff's allegations as true and draw all reasonable

inferences in Plaintiff's favor unless challenged by Defendant.  *See Leite*, 749 F.3d at 1121.

First, when accepting Plaintiff's allegations as true, Plaintiff has not demonstrated an actual or imminent injury caused by the limit on the number of Representatives.  The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance . . . does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573-74).  In *Citizens for Fair Representation*, the Ninth Circuit found the plaintiffs did not have standing to pursue their claim that the large and growing size of California's electoral districts were diluting and devaluing the votes of Californian voters.[1]  *Citizens for Fair Representation v. Padilla*, 815 F. App'x 120, 123 (9th Cir. 2020) (*Citizens*).  In *Citizens*, the plaintiffs alleged non-white Californians were having their votes devalued, however, the court reasoned that all votes were equally being impacted, thus voters' votes were not valued any less

[1] The Court discusses *Citizens* for the purpose of setting forth an example of how the injury standard has been applied in a similar case and recognizes the unpublished decision is not binding precedent.  *See Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020).

based on race.  *Id.*  As such, the Court found plaintiffs had raised only a generally

available grievance, and they therefore lacked standing.  *Id.*

The *Citizens* case was distinguishable from *Federal Election Commission*, a

case in which the Supreme Court found the party had standing when the injury

consisted of an inability to obtain information that the party believed was

statutorily-required to be public information.  *Fed. Election Comm'n v. Akins*, 524

U.S. 11, 21 (1998).  The injury in that case was not just a generally available

grievance, but rather a concrete and specific harm in which a large number of

voters experienced interference with voting rights conferred by law.  *Id.* at 24-25.

Similarly, in *Shaw*, the plaintiff had standing when voters were personally assigned

to voting districts based on race.  *Shaw v. Hunt*, 517 U.S. 899, 905 (1996).

Here, Plaintiff identifies only a generally available alleged grievance.

Plaintiff contends the alleged injury is the deprivation of all citizens' rights to

equal representation.  ECF No. 1 at 1, 58.  Plaintiff alleges that the weight of a

person's vote depends upon the state in which they reside, which violates voters'

rights.  ECF No. 7 at 18.  Plaintiff does not identify how he individually has

suffered a specific and concrete harm.  Plaintiff's contentions that all voters' rights

are being violated by the limit, without any explanation of individual harm,

supports a finding that Plaintiff has not alleged individual harm to establish

standing.

Plaintiff contends the holding in *Rucho* demonstrates he can establish standing in this case. *Id* at 17-18. (citing *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019). Defendant contends Plaintiff misinterprets and misapplies *Rucho.* ECF No. 8 at 3. In *Rucho*, the Supreme Court referenced *Gill*, stating standing was addressed in *Gill. Rucho,* 139 S. Ct. at 2492 (citing *Gill v. Whitford*, 138 S. Ct. 1916 (2018)). In *Gill*, the court held that a plaintiff asserting a partisan gerrymandering claim based on a vote dilution theory must establish they live in an allegedly "cracked" or "packed" district to establish standing. *Gill*, 138 at 1931. "Cracking" is a gerrymandering technique that divides party's supporters among multiple districts, so they fall short of a majority in each one. *Id.* at 1924. "Packing" is a technique in which one party's backers are concentrated in a few districts so they win by overwhelming margins. *Id.* In *Rucho*, the Supreme Court noted that the district court found standing because there was an intent to discriminate against voters from a particular political party and there were allegations of "widespread cracking and packing." *Rucho*, 139 S. Ct. at 2492. The Supreme Court did not set forth a new analysis of standing and focused on whether the claim presented a nonjusticiable political question. As such, *Rucho* only reaffirms the *Gill* standard, which requires allegations of not only vote dilution but also residing in a "cracked" or "packed" district to establish standing. *Gill*, 138 at

1931.  Therefore, *Rucho* does not stand for Plaintiff's contention that an individual alleging injury from general vote dilution establishes standing.

Here, Plaintiff alleges the injury is vote dilution, but he does not contend he lives in a cracked or packed district.  *See* ECF No. 1.  Plaintiff cites to two elections in which presidents won the election by winning the electoral votes despite losing the popular vote.  *Id.* at 47, 51.  However, Plaintiff does not contend the elections were impacted by his district being "cracked" or "packed."  As such, Plaintiff has not established standing under the standard set forth in *Gill* and discussed in *Rucho.*

Defendant further contends Plaintiff has not been injured because an increase in the number of Representatives that allows for the most equal apportionment between states would lead to Washington state having a number of representatives that totals to 2.32 percent of the House, while the current representation is 2.30 percent.  ECF No. 6 at 12-13.  Plaintiff's response appears to contend he, along with all other citizens, have suffered an injury because their votes are not equally weighed, in violation of "one person, one vote;" however Plaintiff offers no specific response to Defendant's contention that Plaintiff has not suffered an injury.  ECF No. 7.

Even if Plaintiff had demonstrated an injury, Defendant contends the requested relief does not redress Plaintiff's alleged harm.  ECF No. 6 at 14-15.

Plaintiff requests the Court declare 2 U.S.C. § 2a unconstitutional and asks the Court to direct Congress to "either create a ratio of member-per-unit-of-population applicable equally to each and every of the several States; or a sufficient overall whole number of districts to be apportioned to provide roughly equal district sizes among the States, as well as within each State, so as to give full effect to both Art. I, §2, and Art. II, § 1." ECF No. 1 at 59.

Plaintiff does not set forth any explanation as to how his requested relief redresses his alleged harm. If the Court accepted that Plaintiff has been individually harmed by the alleged unequal representation in the House of Representatives, the relief must be likely to remedy the issue. *See Dutta*, 895 F.3d at 1173. Plaintiff does not explain how his requested relief is likely to provide him personally with equal voter representation. Defendant presents a scenario in which a reapportionment would result in Plaintiff's state's representation moving from 2.3 percent to 2.32 percent of the total House. ECF No. 6 at 13. If the current representation deprives Plaintiff of equal representation, it is unclear how nearly identical representation would remedy his alleged injury.

Defendant also contends Plaintiff's requested relief would require the Court to supervise complex policy decision-making, without guidance as to the applicable legal standards for the decisions. *Id.* at 14-15. An injury that lacks a judicially discoverable and manageable standard would also indicate this is a

nonjusticiable political question. *Rucho,* 139 S. Ct. at 2494. Plaintiff does not offer a response to Defendant's contention. ECF No. 7. Plaintiff has failed to demonstrate that his requested relief is likely to remedy his alleged harm.

As Plaintiff has not plausibly plead facts to establish he suffered an injury in fact, nor that a favorable decision would redress his alleged injury, Plaintiff does not have standing.

*2. Political Question*

Defendant contends Plaintiff's Complaint raises a nonjusticiable political question. *Id.* at 6-12. The Supreme Court has set forth six independent factors, any of which demonstrates the presence of a non-justiciable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962).

As the Court lacks jurisdiction to hear the claim because Plaintiff lacks standing, the Court declines to address whether Plaintiff's claims present a political question beyond our jurisdiction. The Court notes that Defendant contends Plaintiff's claim implicates four of the six *Baker* factors,

supporting a finding the claim is a nonjusticiable political question. ECF No. 6 at 7-12. Plaintiff contends the claim is a "one person, one vote" claim and is thus justiciable, ECF No. 7 at 2-3, 12, but Plaintiff's Complaint and response largely rely on a historical summary and quotes from cases with little analysis applying precedent to the instant case. For example, Plaintiff does not address the six factors set forth in *Baker.*

**B. Failure to State a Claim**

Defendant also contends Plaintiff has failed to state a claim. ECF No. 6 at 15-16. As the Court lacks jurisdiction to hear Plaintiff's claims under Article III, the Court need not address whether Plaintiff has failed to state a claim.

**C. Three-Judge Panel**

As the Court lacks jurisdiction to hear Plaintiff's claims under Article III, the Court must dismiss the case and need not reach the request for a three-judge panel. *See Shapiro v. McManus*, 577 U.S. 39, 44-45 (2015) (quoting *Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90, 100 (1974)); *Citizens,* 815 F. App'x at 124.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss, **ECF No. 6**, is **GRANTED**.
2. Plaintiff's Complaint, **ECF No. 1**, is **DISMISSED** without prejudice.

The District Court Executive is directed to file this Order, enter judgment,

provide copies to counsel, and **CLOSE THE FILE**.

DATED September 11, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

WILLIAM C. SCHROEDER, WSBA 41986
**KSB LITIGATION, P.S.**
510 W. Riverside Ave., Ste. 300
Spokane, WA, 99201
(509) 624-8988
wcs@KSBlit.legal
*Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| WILLIAM C. SCHROEDER, an individual,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF RE: 2 U.S.C. § 2a(a); U.S. CONST. Art. I, § 2; and Art. II, § 1**<br><br>[Three Judge Panel Requested pursuant to 28 U.S.C. § 2284(a)] |

COMES NOW the above-named Plaintiff, who seeks a declaratory judgment that 2 U.S.C. § 2a(a), which permanently limits the House of Representatives to its size as of 1912 [435 members], deprives citizens of their constitutional rights to equal representation in the House of Representatives [U.S.CONST., Art. I, § 2], and to equal representation in the electoral college for the presidency [U.S.CONST., Art. II, § 1], and is not consistent with the Supreme Court's 'one person, one vote' jurisprudence.

## PARTIES

**1.** Plaintiff William C. Schroeder is a natural born citizen who resides within the Eastern District of Washington and has registered to vote in Washington state.

**2.** Defendant is the United States of America. F.R.Civ.P. 4(i).

## JURISDICTION AND VENUE

**3.** "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

**4.** "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person … To … secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4).

**5.** "The district courts shall have original jurisdiction … of … Any other civil action or claim against the Unites States, not exceeding $10,000 in amount, founded either upon the Constitution, or an Act of Congress[.]" 28 U.S.C. § 1346(a)(2).

**6.** Venue is proper in the Eastern District of Washington. See 28 U.S.C. § 1391(e)(1)(C).

**7.** "A district court of three judges shall be convened … when an action is filed challenging the constitutionality of the apportionment of congressional districts[.]" 28 U.S.C. § 2284(a).

## FACTUAL HISTORY

### 1787

**8.** Composition of the House of Representatives:

> The House of Representatives shall be composed of Members chosen every second Year by the People of the several States[.] … Representatives … shall be apportioned among the several States which may be included within this Union, according to their respective …whole Number of [] Persons[.] … The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative[.]

U.S.CONST., Art. I, § 2.

**9.** "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress[.]" U.S.CONST., Art. II, § 1.

**10.** "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S.CONST., Art. III, § 1.

**11.** "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S.CONST., Art. IV, § 2.

**12.** "New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the

Jurisdiction of any other State … without the Consent of the Legislature[] of the State[] concerned as well as of the Congress." U.S.CONST., Art. IV, § 3.

**1789**

**13.** On September 25, 1789, the First Congress proposed twelve (12) "Articles" [of amendment] to the Constitution.

**14.** Articles 3 through 12 were ratified by three-fourths of the state legislatures as of December 15, 1791, as the First through Tenth Amendments. Article 2 was ratified in 1992, as the Twenty-Seventh Amendment.

**15.** Article "the first", never ratified, provides:

> After the first enumeration required by the first article of the Constitution, there shall be one Representative for every thirty thousand, until the number shall amount to one hundred, after which the proportion shall be so regulated by Congress, that there shall be not less than one hundred Representatives, nor less than one Representative for every forty thousand persons, until the number of Representatives shall amount to two hundred; after which the proportion shall be so regulated by Congress, that there shall not be less than two hundred Representatives, nor more than one Representative for every fifty thousand persons.

**16.** The Constitution imposes no size restrictions upon the House of Representatives, save that stated in Art. I, § 2.

**17.** The Judiciary Act of 1789 established a six-member Supreme Court, comprised of one chief justice and five associate justices.

**1790**

**18.** The first census counted 3,929,214 resident persons of the thirteen (13) United States, as of August 2, 1790.

**1791**

**19.** "No person shall … be deprived of life, liberty, or property, without due process of law[.]" U.S.CONST., Fifth Amend.

**1792**

**20.** "[T]he House of Representatives shall be composed of members elected agreeably to a ratio of one member for every thirty-three thousand persons in each state[.]" Apportionment Act of April 14, 1792, 2nd Cong., Sess. I, Ch. 23. [**Attachment 1**]

**1800**

**21.** The second census counted 5,308,483 resident persons in the sixteen (16) United States, as of August 4, 1800.

**1802**

**22.** "[T]he House of Representatives shall be composed of [141] members elected agreeably to a ratio of one member for every thirty-three thousand persons in each state[.]" Apportionment Act of January 14, 1802, 7th Cong., Sess. I, Ch. 1. [**Att. 2**]

**1804**

**23.** The Twelfth Amendment modified Art. II, § 1, Cl. 3, by specifying that each Elector must cast distinct votes for president and vice president, instead of two votes for president.

**1807**

**24.** The Seventh Circuit Act of 1807 increased the size of the Supreme Court to seven (7) members.

**1810**

**25.** The third census counted 7,239,861 resident persons in the seventeen (17) United States, as of August 6, 1810.

**1811**

**26.** "[T]he House of Representatives shall be composed of [181] members elected agreeably to a ratio of one representative for every thirty-five thousand persons in each state[.]" Apportionment Act of December 21, 1811, 12th Cong., Sess. I, Ch. 9. [**Att. 3**]

**1820**

**27.** Maine became a state on March 15, 1820, with the consent of the legislature of the state of Massachusetts.

**28.** "[I]n the election of representatives in the seventeenth Congress, the state of Massachusetts shall be entitled to choose thirteen representatives only; and the state of Maine shall be entitled to choose seven representatives, according to the consent of the legislature of said state of Massachusetts[.]" 16th Cong., Sess. I, Ch. 39 (April 7, 1820).

**29.** The fourth census counted 9,638,453 resident persons in the twenty-three (23) United States, as of August 7, 1820.

**1822 – 1823**

**30.** "[T]he House of Representatives shall be composed of [215] members elected agreeably to a ratio of one representative for every forty-seven thousand persons in each state[.]" Apportionment Act of March 7, 1822, 17th Cong., Sess. I, Ch. 10 (March 7, 1822). [**Att. 4**]

**1824 – 1825**

**31.** Pursuant to the Twelfth Amendment, the House elected John Quincy-Adams to the presidency.

**1830**

**32.** The fifth census counted 12,860,702 resident persons in the twenty-four (24) United States, as of June 1, 1830.

**1832**

**33.** "[T]he House of Representatives shall be composed of [240] members, elected agreeably to a ratio of one representative for every forty-seven thousand and seven hundred persons in each state[.]" Apportionment Act of May 22, 1832, 22nd Cong., Sess. I, Ch. 91. [**Att. 5**]

**1840**

**34.** The sixth census counted 17,063,353 resident persons in the twenty-six (26) United States, as of June 1, 1840.

**1842**

**35.** "[T]he House of Representatives shall be composed of [223] members elected agreeably to a ratio of one Representative for every

seventy thousand six hundred and eighty persons in each State, and of one additional representative for each State having a fraction greater than one moiety of the said ratio[.]" Apportionment Act of June 25, 1842, 27th Cong., Sess. II, Ch. 47. [**Att. 6**]

**1850**

**36.** The aggregate population of the United States "shall be divided by the number two hundred and thirty-three [233], and the product of such division … shall be the ratio, or rule of apportionment, of representatives among the several States[.]" Census Act of 1850, 31st Cong., Sess. I, Ch. 11, Sec. 25 (May 23, 1850). [**Att. 7**]

**37.** The seventh census counted 23,191,876 resident persons in the thirty (30) United States, as of June 1, 1850.

**1852**

**38.** "[T]he whole number of representatives is hereby increased to two hundred thirty-four [234][.]" Apportionment Act of July 30, 1852, 32nd Cong., Sess. I, Ch. 74. [**Att. 8**]

**1860**

**39.** The eighth census counted 31,443,321 resident persons in the thirty-three (33) United States, as of June 1, 1860.

**1862**

**40.** "[T]he number of members of the House of Representatives of the Congress of the United States shall be two hundred and forty-one [241], and the eight additional members shall be assigned one each

to Pennsylvania, Ohio, Kentucky, Illinois, Iowa, Minnesota, Vermont, and Rhode Island." Apportionment Act of March 4, 1862, 37th Cong., Sess. II, Ch. 36. [**Att. 9**]

**1863**

**41.** The Supreme Court increased in size to ten (10) members.

**1868**

**42.** "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State[.]" U.S.CONST. Fourteenth Amend. § 2.

**43.** "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S.CONST. Fourteenth Amend. § 1.

**44.** Each citizen has a "right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof[.]" U.S.CONST. Fourteenth Amend. § 2.

**1869**

**45.** The Judiciary Act of 1869 matched the size of the Supreme Court to the nine (9) then-existing U.S. Circuit Courts, comprised of one (1) chief justice and eight (8) associate justices. [41st Cong., Sess. 1, Ch. 22; 16 Stat. 44]

**1870**

**46.** "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S.CONST., Fifteenth Amend., § 1 (February 3, 1870).

**47.** The ninth census counted 38,558,371 resident persons in the thirty-seven (37) United States, as of June 1, 1870.

**1872**

**48.** "[T]he House of Representatives shall be composed of two hundred and eighty-three [283] members, to be apportioned among the several States in accordance with the provisions of this act[.]" Apportionment Act of February 2, 1872, 42nd Cong., Sess. II, Ch. 11, Sec. 1. [**Att. 10**]

**49.** "[T]he following States shall be entitled to one [1] representative each in the Congress of the United States in addition to the number apportioned to such States by the act [of February 2, 1872], to wit: New Hampshire, Vermont, New York, Pennsylvania, Indiana, Tennessee, Louisiana, Alabama, and Florida[.]" Apportionment Act of May 30, 1872, 42nd Cong., Sess. II, Ch. 239. [**Att. 11**]

**1876 – 1877**

**50.** Samuel Tilden won the popular vote by 252,666 votes and secured 184 electoral votes to Rutherford B. Hayes' 165, but 20 electoral votes from Florida, Louisiana, South Carolina, and Oregon were

disputed. The resulting Compromise of 1877 saw the political parties agree to award the disputed 20 electoral votes to Hayes, in exchange for the end of Reconstruction.

**1880**

**51.** The tenth census counted 50,189,209 resident persons in the thirty-eight (38) United States, as of June 1, 1880.

**1882**

**52.** "[T]he House of Representatives shall be composed of three hundred and twenty-five [325] members, to be apportioned among the several States as follows: [list][.]" Apportionment Act of February 25, 1882, 47th Cong., Sess. I, Ch. 20. [**Att. 12**]

**53.** "[W]henever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and twenty-five [325]." [Id.]

**1888**

**54.** Benjamin Harrison defeated Grover Cleveland, 233 electoral votes to 168, but lost the popular vote by 90,596.

**1890**

**55.** The eleventh census counted 62,979,766 resident persons in the forty-two (42) United States, as of June 1, 1890.

**1891**

**56.** "[T]he House of Representatives shall be composed of three hundred and fifty-six [356] members, to be apportioned among the

several States as follows: [list] [.]" Apportionment Act of February 7, 1891, 51st Cong., Sess. II, Ch. 116. [**Att. 13**]

**57.** "[W]henever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and fifty-six [356]." [Id.]

**58.** The Judiciary Act of 1891 reorganized the federal courts system, changing the then-existing nine circuit courts into numbered Courts of Appeals. The Supreme Court remained at nine (9) members.

**<u>1893</u>**

**59.** Congress created the Court of Appeals for the District of Columbia but did not increase the size of the Supreme Court.

**<u>1900</u>**

**60.** The twelfth census counted 76,212,168 resident persons in the forty-five (45) United States, as of June 1, 1900.

**<u>1901</u>**

**61.** "[T]he House of Representatives shall be composed of three hundred and eighty-six [386] members, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of January 16, 1901, 56th Cong., Sess. II, Ch. 93. [**Att. 14**]

**62.** "[W]henever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and eighty-six [386]." [Id.]

## 1910

**63.** The thirteenth census counted 92,228,496 resident persons in the forty-six (46) United States, as of April 15, 1910.

| 1910 | | | | |
|---|---|---|---|---|
| STATE | Population | Number of Seats | Change in Seats | Average Population Per District |
| New York | 9,113,614 | 43 | 6 | 211,836 |
| Pennsylvania | 7,665,111 | 36 | 4 | 212,920 |
| Illinois | 5,638,591 | 27 | 2 | 208,837 |
| Ohio | 4,767,121 | 22 | 1 | 216,687 |
| Texas | 3,896,542 | 18 | 2 | 216,475 |
| Massachusetts | 3,366,416 | 16 | 2 | 210,401 |
| Missouri | 3,293,335 | 16 | 0 | 205,833 |
| Michigan | 2,810,173 | 13 | 1 | 216,167 |
| Indiana | 2,700,876 | 13 | 0 | 207,760 |
| Georgia | 2,609,121 | 12 | 1 | 217,427 |
| New Jersey | 2,537,167 | 12 | 2 | 211,431 |
| California | 2,377,549 | 11 | 3 | 216,051 |
| Wisconsin | 2,333,860 | 11 | 0 | 212,078 |
| Kentucky | 2,289,905 | 11 | 0 | 208,173 |
| Iowa | 2,224,771 | 11 | 0 | 202,252 |
| North Carolina | 2,206,287 | 10 | 0 | 220,629 |
| Tennessee | 2,184,789 | 10 | 0 | 218,479 |

| | | | | |
|---|---|---|---|---|
| Alabama | 2,138,093 | 10 | 1 | 213,809 |
| Minnesota | 2,075,708 | 10 | 1 | 207,438 |
| Virginia | 2,061,612 | 10 | 0 | 206,161 |
| Mississippi | 1,797,114 | 8 | 0 | 224,639 |
| Kansas | 1,690,949 | 8 | 0 | 211,369 |
| Oklahoma | 1,657,155 | 8 | 8 | 207,144 |
| Louisiana | 1,656,388 | 8 | 1 | 207,049 |
| Arkansas | 1,574,449 | 7 | 0 | 224,921 |
| South Carolina | 1,515,400 | 7 | 0 | 216,486 |
| Maryland | 1,295,346 | 6 | 0 | 215,891 |
| West Virginia | 1,221,119 | 6 | 1 | 203,520 |
| Nebraska | 1,192,214 | 6 | 0 | 198,702 |
| Washington | 1,141,990 | 5 | 2 | 228,027 [Largest] |
| Connecticut | 1,114,756 | 5 | 0 | 222,951 |
| Colorado | 799,024 | 4 | 1 | 199,643 |
| Florida | 752,619 | 4 | 1 | 188,155 |
| Maine | 742,371 | 4 | 0 | 185,593 |
| Oregon | 672,765 | 3 | 1 | 224,255 |
| South Dakota | 583,888 | 3 | 1 | 191,892 |
| North Dakota | 577,056 | 3 | 1 | 191,468 |
| Rhode Island | 542,610 | 3 | 1 | 180,870 |
| New Hampshire | 430,572 | 2 | 0 | 215,286 |
| Montana | 376,053 | 2 | 1 | 183,169 |

| **Utah** | 373,351 | 2 | 1 | 185,932 |
|---|---|---|---|---|
| **Vermont** | 355,956 | 2 | 0 | 177,978 |
| **Idaho** | 325,594 | 2 | 1 | 161,720 |
| **Delaware** | 202,322 | 1 | 0 | 202,322 |
| **Wyoming** | 145,965 | 1 | 0 | 145,965 |
| **Nevada** | **81,875** | **1** | **0** | **80,293 [Smallest]** |
| **Alaska** | | X | X | X |
| **Arizona** | | X | X | X |
| **Hawaii** | | X | X | X |
| **New Mexico** | | X | X | X |
| ************** | ********* | *** | ** | ******* |
| **United States** | 92,228,496 | 433 | 47 | 210,328 |

**1911**

**64.** "[T]he House of Representatives shall be composed of four hundred and thirty-three [433] Members, to be apportioned among the several States as follows: [list] [.]" Apportionment Act of August 8, 1911, 62nd Cong., Sess. I, Ch. 5. [**Att. 15**]

**65.** "[I]f the Territories of Arizona and New Mexico shall become States in the Union before the apportionment of Representatives under the next decennial census they shall have one Representative each, and if one of such Territories shall so become a State, such State shall have one Representative, which Representative or Representatives shall be

in addition to the number four hundred and thirty-three, as provided in section one of this Act[.]" [Id.]

**1913**

**66.** "The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures." U.S.CONST., Seventeenth Amend.

**1920**

**67.** The fourteenth census counted 106,021,537 resident persons in the forty-eight (48) United States, as of January 1, 1920.

| 1920 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **New York** | 10,385,227 | 43 | 0 | 241,409 |
| **Pennsylvania** | 8,720,017 | 36 | 0 | 242,223 |
| **Illinois** | 6,485,280 | 27 | 0 | 240,196 |
| **Ohio** | 5,759,394 | 22 | 0 | 261,791 |
| **Texas** | 4,663,228 | 18 | 0 | 259,068 |
| **Massachusetts** | 3,852,356 | 16 | 0 | 240,772 |
| **Michigan** | 3,668,412 | 13 | 0 | 282,186 |
| **California** | 3,426,861 | 11 | 0 | 311,457 |
| **Missouri** | 3,404,055 | 16 | 0 | 212,753 |

| | | | | |
|---|---|---|---|---|
| **New Jersey** | 3,155,900 | 12 | 0 | 262,992 |
| **Indiana** | 2,930,390 | 13 | 0 | 225,415 |
| **Georgia** | 2,895,832 | 12 | 0 | 241,319 |
| **Wisconsin** | 2,632,067 | 11 | 0 | 239,210 |
| **North Carolina** | 2,559,123 | 10 | 0 | 255,912 |
| **Kentucky** | 2,416,630 | 11 | 0 | 219,694 |
| **Iowa** | 2,404,021 | 11 | 0 | 218,547 |
| **Minnesota** | 2,387,125 | 10 | 0 | 238,566 |
| **Alabama** | 2,348,174 | 10 | 0 | 234,817 |
| **Tennessee** | 2,337,885 | 10 | 0 | 233,789 |
| **Virginia** | 2,309,187 | 10 | 0 | 230,919 |
| **Oklahoma** | 2,028,283 | 8 | 0 | 253,535 |
| **Louisiana** | 1,798,509 | 8 | 0 | 224,814 |
| **Mississippi** | 1,790,618 | 8 | 0 | 223,827 |
| **Kansas** | 1,769,257 | 8 | 0 | 221,157 |
| **Arkansas** | 1,752,204 | 7 | 0 | 250,315 |
| **South Carolina** | 1,683,724 | 7 | 0 | 240,532 |
| **West Virginia** | 1,463,701 | 6 | 0 | 243,950 |
| **Maryland** | 1,449,661 | 6 | 0 | 241,610 |
| **Connecticut** | 1,380,631 | 5 | 0 | 276,126 |
| **Washington** | 1,356,621 | 5 | 0 | 270,919 |
| **Nebraska** | 1,296,372 | 6 | 0 | 216,062 |
| **Florida** | 968,470 | 4 | 0 | 242,118 |

| | | | | |
|---|---|---|---|---|
| **Colorado** | 939,629 | 4 | 0 | 234,790 |
| **Oregon** | 783,389 | 3 | 0 | 261,130 |
| **Maine** | 768,014 | 4 | 0 | 192,004 |
| **North Dakota** | 646,872 | 3 | 0 | 214,651 |
| **South Dakota** | 636,547 | 3 | 0 | 210,413 |
| **Rhode Island** | 604,397 | 3 | 0 | 201,466 |
| **Montana** | 548,889 | 2 | 0 | 270,756 |
| **Utah** | 449,396 | 2 | 0 | 224,194 |
| **New Hampshire** | 443,083 | 2 | 0 | 221,542 |
| **Idaho** | 431,866 | 2 | 0 | 215,221 |
| **New Mexico** | **360,350** | **1** | **1** | **353,428 [Largest]** |
| **Vermont** | 352,428 | 2 | 0 | 176,214 |
| **Arizona** | 334,162 | 1 | 1 | 309,495 |
| **Delaware** | 223,003 | 1 | 0 | 223,003 |
| **Wyoming** | 194,402 | 1 | 0 | 193,487 |
| **Nevada** | **77,407** | **1** | **0** | **75,820 [Smallest]** |
| **Alaska** | | X | X | X |
| **Hawaii** | | X | X | X |
| ************** | ********* | *** | ** | ******* |
| **United States** | 106,021,537 | 435 | 0 | 241,864 |

**68.** "In 1920, the Census Bureau did transmit apportionment counts to Congress, but Congress did not reapportion." See n.2 at: https://www.census.gov/data/tables/time-series/dec/apportionment-data-text.html

**69.** "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." U.S.CONST., Nineteenth Amend. (August 18, 1920).

**1929**

**70.** "[T]he tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months from the beginning of the enumeration and reported by the Director of the Census to the Secretary of Commerce and by him to the President of the United States." Fifteenth Census and Apportionment Act of June 18, 1929, 71st Cong., Sess. I, Ch. 28, Sec. 2. [**Att. 16**]

**71.** "[T]he President shall transmit to the Congress a statement showing the whole number of persons in each State … as ascertained under the fifteenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives [= 435][.]" [Id., Sec. 22(a)]

**72.** Congress in 1929 created the Court of Appeals for the Tenth Circuit by subdividing the then-existing Court of Appeals for the Eighth Circuit, but did not increase the size of the Supreme Court.

**1930**

**73.** The fifteenth census counted 123,202,624 resident persons in the United States, as of April 1, 1930.

| 1930 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **New York** | 12,588,066 | 45 | 2 | 279,733 |
| **Pennsylvania** | 9,631,350 | 34 | -2 | 283,274 |
| **Illinois** | 7,630,654 | 27 | 0 | 282,607 |
| **Ohio** | 6,646,697 | 24 | 2 | 276,943 |
| **Texas** | 5,824,715 | 21 | 3 | 277,362 |
| **California** | 5,677,251 | 20 | 9 | 283,412 |
| **Michigan** | 4,842,325 | 17 | 4 | 284,827 |
| **Massachusetts** | 4,249,614 | 15 | -1 | 283,307 |
| **New Jersey** | 4,041,334 | 14 | 2 | 288,666 |
| **Missouri** | 3,629,367 | 13 | -3 | 279,162 |
| **Indiana** | 3,238,503 | 12 | -1 | 269,873 |
| **North Carolina** | 3,170,276 | 11 | 1 | 287,934 |
| **Wisconsin** | 2,939,006 | 10 | -1 | 293,172 |
| **Georgia** | 2,908,506 | 10 | -2 | 290,845 |
| **Alabama** | 2,646,248 | 9 | -1 | 294,027 |
| **Tennessee** | 2,616,556 | 9 | -1 | 290,722 |
| **Kentucky** | 2,614,589 | 9 | -2 | 290,508 |
| **Minnesota** | 2,563,953 | 9 | -1 | 283,509 |
| **Iowa** | 2,470,939 | 9 | -2 | 274,491 |
| **Virginia** | 2,421,851 | 9 | -1 | 269,092 |
| **Oklahoma** | 2,396,040 | 9 | 1 | 264,691 |
| **Louisiana** | 2,101,593 | 8 | 0 | 262,699 |
| **Mississippi** | 2,009,821 | 7 | -1 | 286,879 |

| Kansas | 1,880,999 | 7 | -1 | 268,500 |
|---|---|---|---|---|
| Arkansas | 1,854,482 | 7 | 0 | 264,921 |
| South Carolina | 1,738,765 | 6 | -1 | 289,793 |
| West Virginia | 1,729,205 | 6 | 0 | 288,200 |
| Maryland | 1,631,526 | 6 | 0 | 271,920 |
| Connecticut | 1,606,903 | 6 | 1 | 267,816 |
| Washington | 1,563,396 | 6 | 1 | 258,737 |
| Florida | 1,468,211 | 5 | 1 | 293,638 |
| Nebraska | 1,377,963 | 5 | -1 | 275,025 |
| Colorado | 1,035,791 | 4 | 0 | 258,712 |
| Oregon | 953,786 | 3 | 0 | 316,793 |
| Maine | 797,423 | 3 | -1 | 265,806 |
| South Dakota | 692,849 | 2 | -1 | 336,503 |
| Rhode Island | 687,497 | 2 | -1 | 343,749 |
| North Dakota | 680,845 | 2 | -1 | 336,670 |
| Montana | 537,606 | 2 | 0 | 262,365 |
| Utah | 507,847 | 2 | 0 | 252,871 |
| New Hampshire | 465,293 | 2 | 0 | 232,646 |
| Idaho | 445,032 | 2 | 0 | 220,768 |
| Arizona | 435,573 | 1 | 1 | 389,375 |
| **New Mexico** | **423,317** | **1** | **1** | **395,982 [Largest]** |
| Vermont | 359,611 | 1 | -1 | 359,611 |
| Delaware | 238,380 | 1 | 0 | 238,380 |
| Wyoming | 225,565 | 1 | 0 | 223,630 |
| **Nevada** | **91,058** | **1** | **0** | **86,390 [Smallest]** |
| Alaska | | X | X | X |

| Hawaii | | X | X | X |
|---|---|---|---|---|
| ************** | ********* | *** | ** | ******* |
| United States | 123,202,624 | 435 | 27 | 280,675 |

## 1940

**74.** The sixteenth census counted 132,164,569 resident persons in the United States, as of April 1, 1940.

| 1940 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| New York | 13,479,142 | 45 | 0 | 299,536 |
| Pennsylvania | 9,900,180 | 33 | -1 | 300,005 |
| Illinois | 7,897,241 | 26 | -1 | 303,740 |
| Ohio | 6,907,612 | 23 | -1 | 300,331 |
| California | 6,907,387 | 23 | 3 | 300,321 |
| Texas | 6,414,824 | 21 | 0 | 305,468 |
| Michigan | 5,256,106 | 17 | 0 | 309,183 |
| Massachusetts | 4,316,721 | 14 | -1 | 308,337 |
| New Jersey | 4,160,165 | 14 | 0 | 297,155 |
| Missouri | 3,784,664 | 13 | 0 | 291,128 |
| North Carolina | 3,571,623 | 12 | 1 | 297,635 |
| Indiana | 3,427,796 | 11 | -1 | 311,618 |
| Wisconsin | 3,137,587 | 10 | 0 | 313,759 |
| Georgia | 3,123,723 | 10 | 0 | 312,372 |

| | | | | |
|---|---|---|---|---|
| **Tennessee** | 2,915,841 | 10 | 1 | 291,584 |
| **Kentucky** | 2,845,627 | 9 | 0 | 316,181 |
| **Alabama** | 2,832,961 | 9 | 0 | 314,773 |
| **Minnesota** | 2,792,300 | 9 | 0 | 310,256 |
| **Virginia** | 2,677,773 | 9 | 0 | 297,530 |
| **Iowa** | 2,538,268 | 8 | -1 | 317,284 |
| **Louisiana** | 2,363,880 | 8 | 0 | 295,485 |
| **Oklahoma** | 2,336,434 | 8 | -1 | 292,054 |
| **Mississippi** | 2,183,796 | 7 | 0 | 311,971 |
| **Arkansas** | 1,949,387 | 7 | 0 | 278,484 |
| **West Virginia** | 1,901,974 | 6 | 0 | 316,996 |
| **South Carolina** | 1,899,804 | 6 | 0 | 316,634 |
| **Florida** | 1,897,414 | 6 | 1 | 316,236 |
| **Maryland** | 1,821,244 | 6 | 0 | 303,541 |
| **Kansas** | 1,801,028 | 6 | -1 | 300,171 |
| **Washington** | 1,736,191 | 6 | 0 | 289,365 |
| **Connecticut** | 1,709,242 | 6 | 0 | 284,874 |
| **Nebraska** | 1,315,834 | 4 | -1 | 328,959 |
| **Colorado** | 1,123,296 | 4 | 0 | 280,824 |
| **Oregon** | 1,089,684 | 4 | 1 | 272,421 |
| **Maine** | 847,226 | 3 | 0 | 282,409 |
| **Rhode Island** | 713,346 | 2 | 0 | 356,673 |
| **South Dakota** | 642,961 | 2 | 0 | 321,481 |

| North Dakota | 641,935 | 2 | 0 | 320,968 |
|---|---|---|---|---|
| Montana | 559,456 | 2 | 0 | 279,728 |
| Utah | 550,310 | 2 | 0 | 275,155 |
| New Mexico | 531,818 | 2 | 1 | 265,909 |
| Idaho | 524,873 | 2 | 0 | 262,437 |
| Arizona | 499,261 | 2 | 1 | 249,631 |
| New Hampshire | 491,524 | 2 | 0 | 245,762 |
| Vermont | **359,231** | **1** | **0** | **359,231 [Largest]** |
| Delaware | 266,505 | 1 | 0 | 266,505 |
| Wyoming | 250,742 | 1 | 0 | 250,742 |
| Nevada | **110,247** | **1** | **0** | **110,247 [Smallest]** |
| Alaska | | X | X | X |
| Hawaii | | X | X | X |
| ************** | ********* | *** | ** | ******* |
| United States | 132,164,569 | 435 | 9 | 301,164 |

**75.** Congress merely copied the 1929 Act in 1940:

> [The 1929 Act] to provide for apportionment of Representatives in Congress … is hereby amended in the first sentence of section 22 (a) by striking out the words "second regular session of the Seventy-First Congress" and substituting the following words: "first regular session of the Seventy-seventh Congress", and by striking out "fifteenth" and inserting "sixteenth".

54 Stat. 162, Sec. 1 (April 25, 1940). [**Att. 17**]

**1941**

**76.** Congress made apportionment of 435 members permanent and automatic:

> Each State shall be entitled, in the Seventy-eighth and in each Congress thereafter until the taking effect of a reapportionment under a subsequent statute[,] ... to the number of Representatives shown in the statement transmitted to the Congress on January 8, 1941, based upon the method known as the method of equal proportions, no State to receive less than one Member.

Permanent Apportionment Act of November 15, 1941, 77th Cong., Sess. I, Ch. 470, Sec. 2(a). [**Att. 18**]

**77.** 2 U.S.C. § 2a(a) now provides:

> On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State ... as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives [435] by the method known as the method of equal proportions, no State to receive less than one Member.

[**Att. 18**]

**78.** 2 U.S.C. § 2a(b) now provides:

> Each State shall be entitled, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, to

the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member.

[Att. 18]

**1950**

**79.** The seventeenth census counted 151,325,798 resident persons in the United States, as of April 1, 1950.

| **1950** | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **New York** | 14,830,192 | 43 | -2 | 344,888 |
| **California** | 10,586,223 | 30 | 7 | 352,874 |
| **Pennsylvania** | 10,498,012 | 30 | -3 | 349,934 |
| **Illinois** | 8,712,176 | 25 | -1 | 348,487 |
| **Ohio** | 7,946,627 | 23 | 0 | 345,506 |
| **Texas** | 7,711,194 | 22 | 1 | 350,509 |
| **Michigan** | 6,371,766 | 18 | 1 | 353,987 |
| **New Jersey** | 4,835,329 | 14 | 0 | 345,381 |
| **Massachusetts** | 4,690,514 | 14 | 0 | 335,037 |
| **North Carolina** | 4,061,929 | 12 | 0 | 338,494 |
| **Missouri** | 3,954,653 | 11 | -2 | 359,514 |
| **Indiana** | 3,934,224 | 11 | 0 | 357,657 |
| **Georgia** | 3,444,578 | 10 | 0 | 344,458 |
| **Wisconsin** | 3,434,575 | 10 | 0 | 343,458 |
| **Virginia** | 3,318,680 | 10 | 1 | 331,868 |
| **Tennessee** | 3,291,718 | 9 | -1 | 365,746 |
| **Alabama** | 3,061,743 | 9 | 0 | 340,194 |
| **Minnesota** | 2,982,483 | 9 | 0 | 331,387 |

| | | | | |
|---|---|---|---|---|
| Kentucky | 2,944,806 | 8 | -1 | 368,101 |
| Florida | 2,771,305 | 8 | 2 | 346,413 |
| Louisiana | 2,683,516 | 8 | 0 | 335,440 |
| Iowa | 2,621,073 | 8 | 0 | 327,634 |
| Washington | 2,378,963 | 7 | 1 | 339,852 |
| Maryland | 2,343,001 | 7 | 1 | 334,714 |
| Oklahoma | 2,233,351 | 6 | -2 | 372,225 |
| Mississippi | 2,178,914 | 6 | -1 | 363,152 |
| South Carolina | 2,117,027 | 6 | 0 | 352,838 |
| Connecticut | 2,007,280 | 6 | 0 | 334,547 |
| West Virginia | 2,005,552 | 6 | 0 | 334,259 |
| Arkansas | 1,909,511 | 6 | -1 | 318,252 |
| Kansas | 1,905,299 | 6 | 0 | 317,550 |
| Oregon | 1,521,341 | 4 | 0 | 380,335 |
| Nebraska | 1,325,510 | 4 | 0 | 331,378 |
| Colorado | 1,325,089 | 4 | 0 | 331,272 |
| Maine | 913,774 | 3 | 0 | 304,591 |
| **Rhode Island** | **791,896** | **2** | **0** | **395,948 [Largest]** |
| Arizona | 749,587 | 2 | 0 | 374,794 |
| Utah | 688,862 | 2 | 0 | 344,431 |
| New Mexico | 681,187 | 2 | 0 | 340,594 |
| South Dakota | 652,740 | 2 | 0 | 326,370 |
| North Dakota | 619,636 | 2 | 0 | 309,818 |
| Montana | 591,024 | 2 | 0 | 295,512 |
| Idaho | 588,637 | 2 | 0 | 294,319 |
| New Hampshire | 533,242 | 2 | 0 | 266,621 |
| Vermont | 377,747 | 1 | 0 | 377,747 |
| Delaware | 318,085 | 1 | 0 | 318,085 |

| Wyoming | 290,529 | 1 | 0 | 290,529 |
|---|---|---|---|---|
| Nevada | 160,083 | 1 | 0 | 160,083 [Smallest] |
| Alaska | | X | X | X |
| Hawaii | | X | X | X |
| ************** | ********* | *** | ** | ******* |
| United States | 151,325,798 | 435 | 14 | 344,587 |

## 1954

**80.** "The Fifth Amendment … does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states. But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954).

**81.** *Bolling* concerned segregation in schools in the District of Columbia, to which the Fourteenth Amendment does not apply. *Id.*

**82.** Holding that the Fifth Amendment's due process clause forbid racial segregation in D.C. schools, the *Bolling* court explained that "it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government." *Id.*

**83.** "The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases." *Id.*

**84.** "But, ... discrimination may be so unjustifiable as to be violative of due process." *Id.* at 500.

## 1958 / 1959

**85.** Representation of Alaska and Hawaii in the House temporarily added one member per state for a total House of 437, reverting after the next election to a total House of 435. See section 9 of Public Law 85-508, 72 Stat. 339 (July 7, 1958); and section 8 of Public Law 86-3, 73 Stat. 4 (Mar. 18, 1959).

## 1960

**86.** The eighteenth census counted 179,323,175 resident persons in the fifty (50) United States, as of April 1, 1960.

| 1960 | | | | |
|---|---|---|---|---|
| STATE | Population | Number of Seats | Change in Seats | Average Population Per District |
| New York | 16,782,304 | 41 | -2 | 409,324 |
| California | 15,717,204 | 38 | 8 | 413,611 |
| Pennsylvania | 11,319,366 | 27 | -3 | 419,236 |
| Illinois | 10,081,158 | 24 | -1 | 420,048 |
| Ohio | 9,706,397 | 24 | 1 | 404,433 |
| Texas | 9,579,677 | 23 | 1 | 416,508 |
| Michigan | 7,823,194 | 19 | 1 | 411,747 |

| | | | | |
|---|---|---|---|---|
| **New Jersey** | 6,066,782 | 15 | 1 | 404,452 |
| **Massachusetts** | 5,148,578 | 12 | -2 | 429,048 |
| **Florida** | 4,951,560 | 12 | 4 | 412,630 |
| **Indiana** | 4,662,498 | 11 | 0 | 423,863 |
| **North Carolina** | 4,556,155 | 11 | -1 | 414,196 |
| **Missouri** | 4,319,813 | 10 | -1 | 431,981 |
| **Virginia** | 3,966,949 | 10 | 0 | 396,695 |
| **Wisconsin** | 3,951,777 | 10 | 0 | 395,178 |
| **Georgia** | 3,943,116 | 10 | 0 | 394,312 |
| **Tennessee** | 3,567,089 | 9 | 0 | 396,343 |
| **Minnesota** | 3,413,864 | 8 | -1 | 426,733 |
| **Alabama** | 3,266,740 | 8 | -1 | 408,343 |
| **Louisiana** | 3,257,022 | 8 | 0 | 407,128 |
| **Maryland** | 3,100,689 | 8 | 1 | 387,586 |
| **Kentucky** | 3,038,156 | 7 | -1 | 434,022 |
| **Washington** | 2,853,214 | 7 | 0 | 407,602 |
| **Iowa** | 2,757,537 | 7 | -1 | 393,934 |
| **Connecticut** | 2,535,234 | 6 | 0 | 422,539 |
| **South Carolina** | 2,382,594 | 6 | 0 | 397,099 |
| **Oklahoma** | 2,328,284 | 6 | 0 | 388,047 |

| | | | | |
|---|---|---|---|---|
| **Kansas** | 2,178,611 | 5 | -1 | 435,722 |
| **Mississippi** | 2,178,141 | 5 | -1 | 435,628 |
| **West Virginia** | 1,860,421 | 5 | -1 | 372,084 |
| **Arkansas** | 1,786,272 | 4 | -2 | 446,568 |
| **Oregon** | 1,768,687 | 4 | 0 | 442,172 |
| **Colorado** | 1,753,947 | 4 | 0 | 438,487 |
| **Nebraska** | 1,411,330 | 3 | -1 | 470,443 |
| **Arizona** | 1,302,161 | 3 | 1 | 434,054 |
| **Maine** | **969,265** | **2** | **-1** | **484,633 [Largest]** |
| **New Mexico** | 951,023 | 2 | 0 | 475,512 |
| **Utah** | 890,627 | 2 | 0 | 445,314 |
| **Rhode Island** | 859,488 | 2 | 0 | 429,744 |
| **South Dakota** | 680,514 | 2 | 0 | 340,257 |
| **Montana** | 674,767 | 2 | 0 | 337,384 |
| **Idaho** | 667,191 | 2 | 0 | 333,596 |
| **Hawaii** | 632,772 | 2 | 2 | 316,386 |
| **North Dakota** | 632,446 | 2 | 0 | 316,223 |
| **New Hampshire** | 606,921 | 2 | 0 | 303,461 |
| **Delaware** | 446,292 | 1 | 0 | 446,292 |
| **Vermont** | 389,881 | 1 | 0 | 389,881 |

| | | | | |
|---|---|---|---|---|
| **Wyoming** | 330,066 | 1 | 0 | 330,066 |
| **Nevada** | 285,278 | 1 | 0 | 285,278 |
| **Alaska** | **226,167** | **1** | **1** | **226,167 [Smallest]** |
| ************** | ********* | *** | ** | ******* |
| **United States** | 179,323,175 | 435 | 21 | 410,481 |

**1962**

**87.** In *Baker v. Carr*, the Supreme Court recognized standing for an individual to challenge the constitutionality of legislative district re-apportionment:

> Article III, s 2, of the Federal Constitution provides that 'The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *.' It is clear that the cause of action is one which 'arises under' the Federal Constitution. The complaint alleges that the [Tennessee] statute effects an apportionment that deprives the appellants of the equal protection of the laws in violation of the Fourteenth Amendment.

*Baker v. Carr*, 369 U.S. 186, 199 (1962) (applying Fourteenth Amendment to Tennessee apportionment statute).

**1964**

**88.** The Supreme Court heard argument in *Wesberry v. Sanders*, *infra*, on November 18 and November 19 of 1963.

**89.** The Twenty-Fourth Amendment took effect on January 23, 1964.

> The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

U.S.CONST., Twenty-Fourth Amend.

**90.** Rejecting the contention that apportionment under Article I is a non-justiciable political question, the *Wesberry* court explained that "The right to vote is too important in our free society to be stripped of judicial protection by such an interpretation of Article I." *Wesberry v. Sanders*, 376 U.S. 1, 7, 84 S.Ct. 526, 11 L.Ed.2d 481 (Argued Nov. 18 and 19, 1963; decided Feb. 17, 1964).

> We hold that, construed in its historical context, the command of Art. I, s 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's. This rule is followed automatically, of course, when Representatives are chosen as a group on a statewide basis, as was a widespread practice in the first 50 years of our Nation's history. … The history of the Constitution, particularly that part of it relating to the adoption of Art. I, s 2, reveals that those who framed the Constitution meant that, no matter what the mechanics of an election, whether statewide or by districts, it was population which was to be the basis of the House of Representatives. [pp. 7-9]
>
> …
>
> The debates at the Convention make at least one fact abundantly clear: that when the delegates agreed that the House should represent 'people' they intended that in allocating Congressmen the number assigned to each State should be determined solely by the number of the State's

inhabitants. The Constitution embodied Edmund Randolph's proposal for a periodic census to ensure 'fair representation of the people,' an idea endorsed by Mason as assuring that 'numbers of inhabitants' should always be the measure of representation in the House of Representatives. The Convention also overwhelmingly agreed to a resolution offered by Randolph to base future apportionment squarely on numbers and to delete any reference to wealth. And the delegates defeated a motion made by Elbridge Gerry to limit the number of Representatives from newer Western States so that it would never exceed the number from the original States.

…

The House of Representatives, the Convention agreed, was to represent the people as individuals, and on a basis of complete equality for each voter. [pp. 13-14]

…

It is in the light of such history that we must construe Art. I, s 2, of the Constitution, which, carrying out the ideas of Madison and those of like views, provides that Representatives shall be chosen 'by the People of the several States' and shall be 'apportioned among the several States * * * according to their respective Numbers.' It is not surprising that our Court has held that this Article gives persons qualified to vote a constitutional right to vote and to have their votes counted. *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355; *Ex parte Yarbrough*, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274. Not only can this right to vote not be denied outright, it cannot, consistently with Article I, be destroyed by alteration of ballots, see *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, or diluted by stuffing of the ballot box, see *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341. No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily

> abridges this right. In urging the people to adopt the Constitution, Madison said in No. 57 of The Federalist:
>
> > 'Who are to be the electors of the Federal Representatives? Not the rich more than the poor; not the learned more than the ignorant; not the haughty heirs of distinguished names, more than the humble sons of obscure and unpropitious fortune. The electors are to be the great body of the people of the United States. * * *'
>
> Readers surely could have fairly taken this to mean, 'one person, one vote.' Cf. *Gray v. Sanders*, 372 U.S. 368, 381, 83 S.Ct. 801, 809, 9 L.Ed.2d 821.
>
> While it may not be possible to draw congressional districts with mathematical precision, that is no excuse for ignoring our Constitution's plain objective of making equal representation for equal numbers of people the fundamental goal for the House of Representatives. That is the high standard of justice and common sense which the Founders set for us. [pp. 17-18]

*Wesberry v. Sanders*, 376 U.S. at 7-9; 13-14; 17-18 (citations and marks in original).

**<u>1967</u>**

**91.** In 1967, Congress eliminated at-large districts in every state with more than one Representative.

> In each State entitled in the Ninety-first Congress or in any subsequent Congress thereafter to more than one Representative under an apportionment made pursuant to the provisions of section 2a(a) of this title, there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so

established, no district to elect more than one Representative[.]

2 U.S.C. § 2c; Public Law 90–196; 81 Stat. 581 (Dec. 14, 1967).

## 1970

**92.** The nineteenth census counted 203,302,031 resident persons in the United States, as of April 1, 1970.

| 1970 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **California** | 19,953,134 | 43 | 5 | 467,415 |
| **New York** | 18,236,967 | 39 | -2 | 470,207 |
| **Pennsylvania** | 11,793,909 | 25 | -2 | 475,373 |
| **Texas** | 11,196,730 | 24 | 1 | 470,783 |
| **Illinois** | 11,113,976 | 24 | 0 | 466,013 |
| **Ohio** | 10,652,017 | 23 | -1 | 466,530 |
| **Michigan** | 8,875,083 | 19 | 0 | 470,379 |
| **New Jersey** | 7,168,164 | 15 | 0 | 480,536 |
| **Florida** | 6,789,443 | 15 | 3 | 457,047 |
| **Massachusetts** | 5,689,170 | 12 | 0 | 477,223 |
| **Indiana** | 5,193,669 | 11 | 0 | 475,287 |
| **North Carolina** | 5,082,059 | 11 | 0 | 465,930 |
| **Missouri** | 4,676,501 | 10 | 0 | 471,803 |
| **Virginia** | 4,648,494 | 10 | 0 | 469,074 |
| **Georgia** | 4,589,575 | 10 | 0 | 462,731 |
| **Wisconsin** | 4,417,731 | 9 | -1 | 494,113 |
| **Tennessee** | 3,923,687 | 8 | -1 | 495,133 |
| **Maryland** | 3,922,399 | 8 | 0 | 494,212 |

| | | | | |
|---|---|---|---|---|
| **Minnesota** | 3,804,971 | 8 | 0 | 479,147 |
| **Louisiana** | 3,641,306 | 8 | 0 | 459,001 |
| **Alabama** | 3,444,165 | 7 | -1 | 496,555 |
| **Washington** | 3,409,169 | 7 | 0 | 491,927 |
| **Kentucky** | 3,218,706 | 7 | 0 | 463,783 |
| **Connecticut** | 3,031,709 | 6 | 0 | 508,449 |
| **Iowa** | 2,824,376 | 6 | -1 | 474,487 |
| **South Carolina** | 2,590,516 | 6 | 0 | 436,220 |
| **Oklahoma** | 2,559,229 | 6 | 0 | 430,914 |
| **Kansas** | 2,246,578 | 5 | 0 | 453,169 |
| **Mississippi** | 2,216,912 | 5 | 0 | 446,770 |
| **Colorado** | 2,207,259 | 5 | 1 | 445,354 |
| **Oregon** | 2,091,385 | 4 | 0 | 527,703 |
| **Arkansas** | 1,923,295 | 4 | 0 | 485,576 |
| **Arizona** | 1,770,900 | 4 | 1 | 446,905 |
| **West Virginia** | 1,744,237 | 4 | -1 | 440,833 |
| **Nebraska** | 1,483,493 | 3 | 0 | 498,940 |
| **Utah** | 1,059,273 | 2 | 0 | 533,905 |
| **New Mexico** | 1,016,000 | 2 | 0 | 513,332 |
| **Maine** | 992,048 | 2 | 0 | 503,160 |
| **Rhode Island** | 946,725 | 2 | 0 | 478,899 |
| **Hawaii** | 768,561 | 2 | 0 | 392,451 |
| **New Hampshire** | 737,681 | 2 | 0 | 373,142 |
| **Idaho** | 712,567 | 2 | 0 | 359,961 |
| **Montana** | 694,409 | 2 | 0 | 350,787 |
| **South Dakota** | 665,507 | 2 | 0 | 336,624 |
| **North Dakota** | **617,761** | **1** | **-1** | **624,181 [Largest]** |
| **Delaware** | 548,104 | 1 | 0 | 551,928 |

| | | | | |
|---|---|---|---|---|
| **Nevada** | 488,738 | 1 | 0 | 492,396 |
| **Vermont** | 444,330 | 1 | 0 | 448,327 |
| **Wyoming** | 332,416 | 1 | 0 | 335,719 |
| **Alaska** | **300,382** | **1** | **0** | **304,067 [Smallest]** |
| ************** | ********* | *** | ** | ******* |
| **United States** | 203,302,031 | 435 | 11 | 469,088 |

## 1971

**93.** "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S.CONST., Twenty-Sixth Amend.

## 1976

**94.** A plaintiff sued a New York state official, arguing that Art. I, § 2, cl. 3 *required* one Representative for every 30,000 people, which the district court rejected. *Whelan v. Cuomo*, 415 F.Supp. 251, 258 (E.D.N.Y. 1976).

## 1980

**95.** The twentieth census counted 226,542,199 resident persons in the United States, as of April 1, 1980.

| **1980** | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **California** | 23,667,902 | 45 | 2 | 525,968 |
| **New York** | 17,558,072 | 34 | -5 | 516,391 |

| | | | | |
|---|---|---|---|---|
| **Texas** | 14,229,191 | 27 | 3 | 526,977 |
| **Pennsylvania** | 11,863,895 | 23 | -2 | 515,945 |
| **Illinois** | 11,426,518 | 22 | -2 | 519,021 |
| **Ohio** | 10,797,630 | 21 | -2 | 514,163 |
| **Florida** | 9,746,324 | 19 | 4 | 512,631 |
| **Michigan** | 9,262,078 | 18 | -1 | 514,352 |
| **New Jersey** | 7,364,823 | 14 | -1 | 526,011 |
| **North Carolina** | 5,881,766 | 11 | 0 | 534,039 |
| **Massachusetts** | 5,737,037 | 11 | -1 | 521,549 |
| **Indiana** | 5,490,224 | 10 | -1 | 549,018 |
| **Georgia** | 5,463,105 | 10 | 0 | 546,427 |
| **Virginia** | 5,346,818 | 10 | 0 | 534,628 |
| **Missouri** | 4,916,686 | 9 | -1 | 546,383 |
| **Wisconsin** | 4,705,767 | 9 | 0 | 522,815 |
| **Tennessee** | 4,591,120 | 9 | 1 | 510,083 |
| **Maryland** | 4,216,975 | 8 | 0 | 527,056 |
| **Louisiana** | 4,205,900 | 8 | 0 | 525,497 |
| **Washington** | 4,132,156 | 8 | 1 | 516,270 |
| **Minnesota** | 4,075,970 | 8 | 0 | 509,644 |
| **Alabama** | 3,893,888 | 7 | 0 | 555,723 |
| **Kentucky** | 3,660,777 | 7 | 0 | 523,062 |
| **South Carolina** | 3,121,820 | 6 | 0 | 519,868 |
| **Connecticut** | 3,107,576 | 6 | 0 | 517,929 |
| **Oklahoma** | 3,025,290 | 6 | 0 | 504,211 |
| **Iowa** | 2,913,808 | 6 | 0 | 485,565 |
| **Colorado** | 2,889,964 | 6 | 1 | 481,472 |
| **Arizona** | 2,718,215 | 5 | 1 | 543,573 |

| Oregon | 2,633,105 | 5 | 1 | 526,533 |
|---|---|---|---|---|
| Mississippi | 2,520,638 | 5 | 0 | 504,128 |
| Kansas | 2,363,679 | 5 | 0 | 472,642 |
| Arkansas | 2,286,435 | 4 | 0 | 571,378 |
| West Virginia | 1,949,644 | 4 | 0 | 487,411 |
| Nebraska | 1,569,825 | 3 | 0 | 523,335 |
| Utah | 1,461,037 | 3 | 1 | 487,012 |
| New Mexico | 1,302,894 | 3 | 1 | 433,323 |
| Maine | 1,124,660 | 2 | 0 | 562,330 |
| Hawaii | 964,691 | 2 | 0 | 482,500 |
| Rhode Island | 947,154 | 2 | 0 | 473,577 |
| Idaho | 943,935 | 2 | 0 | 471,968 |
| New Hampshire | 920,610 | 2 | 0 | 460,305 |
| Nevada | 800,493 | 2 | 1 | 399,592 |
| **Montana** | **786,690** | **2** | **0** | **393,345 [Smallest]** |
| **South Dakota** | **690,768** | **1** | **-1** | **690,178 [Largest]** |
| North Dakota | 652,717 | 1 | 0 | 652,695 |
| Delaware | 594,338 | 1 | 0 | 595,225 |
| Vermont | 511,456 | 1 | 0 | 511,456 |
| Wyoming | 469,557 | 1 | 0 | 470,816 |
| Alaska | 401,851 | 1 | 0 | 400,481 |
| ************** | ********* | *** | ** | ******* |
| United States | 226,542,199 | 435 | 17 | 519,235 |

## 1981

**96.** Congress created the Court of Appeals for the Eleventh Circuit by subdividing the then-existing Fifth Circuit but did not increase the size of the Supreme Court.

**97.** "The [Due Process Clause of the Fifth Amendment] requires that Congress treat similarly situated persons similarly, not that it engage in gestures of superficial equality." *Rostker v. Goldberg*, 453 U.S. 57, 79 (1981) (regarding Military Selective Service Act).

## 1982

**98.** Congress created the Court of Appeals for the Federal Circuit by merging the Court of Customs and Patent Appeals with the appellate division of the Court of Claims, but did not increase the size of the Supreme Court, which remains at 9 members.

## 1990

**99.** The twenty-first census counted 248,709,873 resident persons in the United States, as of April 1, 1990.

| 1990 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **California** | 29,760,021 | 52 | 7 | 573,832 |
| **New York** | 17,990,455 | 31 | -3 | 582,081 |
| **Texas** | 16,986,510 | 30 | 3 | 568,660 |
| **Florida** | 12,937,926 | 23 | 4 | 565,364 |

| Pennsylvania | 11,881,643 | 21 | -2 | 567,843 |
|---|---|---|---|---|
| Illinois | 11,430,602 | 20 | -2 | 573,334 |
| Ohio | 10,847,115 | 19 | -2 | 573,017 |
| Michigan | 9,295,297 | 16 | -2 | 583,049 |
| New Jersey | 7,730,188 | 13 | -1 | 596,049 |
| North Carolina | 6,628,637 | 12 | 1 | 554,803 |
| Georgia | 6,478,216 | 11 | 1 | 591,674 |
| Virginia | 6,187,358 | 11 | 1 | 565,143 |
| Massachusetts | 6,016,425 | 10 | -1 | 602,905 |
| Indiana | 5,544,159 | 10 | 0 | 556,423 |
| Missouri | 5,117,073 | 9 | 0 | 570,867 |
| Wisconsin | 4,891,769 | 9 | 0 | 545,194 |
| Tennessee | 4,877,185 | 9 | 0 | 544,071 |
| Washington | 4,866,692 | 9 | 1 | 543,105 |
| Maryland | 4,781,468 | 8 | 0 | 599,828 |
| Minnesota | 4,375,099 | 8 | 0 | 548,379 |
| Louisiana | 4,219,973 | 7 | -1 | 605,459 |
| Alabama | 4,040,587 | 7 | 0 | 580,373 |
| Kentucky | 3,685,296 | 6 | -1 | 616,495 |
| Arizona | 3,665,228 | 6 | 1 | 612,998 |
| South Carolina | 3,486,703 | 6 | 0 | 584,285 |
| Colorado | 3,294,394 | 6 | 0 | 551,319 |
| Connecticut | 3,287,116 | 6 | 0 | 549,278 |
| Oklahoma | 3,145,585 | 6 | 0 | 526,267 |
| Oregon | 2,842,321 | 5 | 0 | 570,747 |
| Iowa | 2,776,755 | 5 | -1 | 557,485 |
| Mississippi | 2,573,216 | 5 | 0 | 517,289 |

| Kansas | 2,477,574 | 4 | -1 | 621,400 |
|---|---|---|---|---|
| Arkansas | 2,350,725 | 4 | 0 | 590,560 |
| West Virginia | 1,793,477 | 3 | -1 | 600,542 |
| Utah | 1,722,850 | 3 | 0 | 575,928 |
| Nebraska | 1,578,385 | 3 | 0 | 528,206 |
| New Mexico | 1,515,069 | 3 | 0 | 507,260 |
| Maine | 1,227,928 | 2 | 0 | 616,612 |
| Nevada | 1,201,833 | 2 | 0 | 603,076 |
| New Hampshire | 1,109,252 | 2 | 0 | 556,958 |
| Hawaii | 1,108,229 | 2 | 0 | 557,637 |
| Idaho | 1,006,749 | 2 | 0 | 505,993 |
| Rhode Island | 1,003,464 | 2 | 0 | 502,992 |
| **Montana** | **799,065** | **1** | **-1** | **803,655 [Largest]** |
| South Dakota | 696,004 | 1 | 0 | 699,999 |
| Delaware | 666,168 | 1 | 0 | 668,696 |
| North Dakota | 638,800 | 1 | 0 | 641,364 |
| Vermont | 562,758 | 1 | 0 | 564,964 |
| Alaska | 550,043 | 1 | 0 | 551,947 |
| **Wyoming** | **453,588** | **1** | **0** | **455,975 [Smallest]** |
| ************** | ********* | *** | ** | ******* |
| United States | 248,709,873 | 435 | 19 | 572,466 |

## 1992

**100.** The Supreme Court held that the "method of equal proportions" was satisfied in light of "the need to allocate a fixed number of indivisible Representatives among 50 States of varying

populations makes it virtually impossible to have the same district size in any pair of States, let alone 50." *U.S. Dept. of Commerce v. Montana*, 503 U.S. 442, 463 (1992).

**101.** Mathematically, the *Montana* court was incorrect.

**102.** Equal apportionment is only "virtually impossible" if the number of representatives is permanently set to 435, with no state having fewer than one representative.

**103.** The *Montana* court did not analyze whether capping the number of representatives at 435 itself could violate citizens' rights to equal representation in the House [Art. I, § 2] and in the electoral college [Art. II, § 1], or the 'one person, one vote' principle, particularly in light of a growing population. See 503 U.S. at 451 and n. 24.

**1995**

**104.** As the Answer was always "435", Congress determined the 2 U.S.C. § 2a(a) decennial report regarding the results of the Census and apportionment of seats in the House of Representatives was 'wasteful,' and terminated the provision requiring submittal to Congress, effective May 15, 2000. 31 U.S.C. § 1113. See Public Law 104–66, § 3003 (December 21, 1995); 1090 Stat. 707, Sec. 3003.

**1996**

**105.** Section 201 of Public Law 104-186 struck the phrase "and in case of vacancies in the offices of both the Clerk and the Sergeant at Arms, or the absence or inability of both to act, such duty shall devolve

upon the Doorkeeper of the House of Representatives" from 2 U.S.C. § 2a(b). Public Law 104-186, Title II, § 201 (August 20, 1996)

## 2000

**106.** The twenty-second census counted 281,421,906 resident persons in the United States, as of April 1, 2000.

| 2000 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **California** | 33,871,648 | 53 | 1 | 640,204 |
| **Texas** | 20,851,820 | 32 | 2 | 653,250 |
| **New York** | 18,976,457 | 29 | -2 | 655,344 |
| **Florida** | 15,982,378 | 25 | 2 | 641,156 |
| **Illinois** | 12,419,293 | 19 | -1 | 654,686 |
| **Pennsylvania** | 12,281,054 | 19 | -2 | 647,404 |
| **Ohio** | 11,353,140 | 18 | -1 | 631,919 |
| **Michigan** | 9,938,444 | 15 | -1 | 663,722 |
| **New Jersey** | 8,414,350 | 13 | 0 | 648,027 |
| **Georgia** | 8,186,453 | 13 | 2 | 631,306 |
| **North Carolina** | 8,049,313 | 13 | 1 | 620,590 |
| **Virginia** | 7,078,515 | 11 | 0 | 645,518 |
| **Massachusetts** | 6,349,097 | 10 | 0 | 635,557 |
| **Indiana** | 6,080,485 | 9 | -1 | 676,754 |
| **Washington** | 5,894,121 | 9 | 0 | 656,520 |
| **Tennessee** | 5,689,283 | 9 | 0 | 633,337 |
| **Missouri** | 5,595,211 | 9 | 0 | 622,918 |

| | | | | |
|---|---|---|---|---|
| **Wisconsin** | 5,363,675 | 8 | -1 | 671,401 |
| **Maryland** | 5,296,486 | 8 | 0 | 663,486 |
| **Arizona** | 5,130,632 | 8 | 2 | 642,585 |
| **Minnesota** | 4,919,479 | 8 | 0 | 615,709 |
| **Louisiana** | 4,468,976 | 7 | 0 | 640,039 |
| **Alabama** | 4,447,100 | 7 | 0 | 637,304 |
| **Colorado** | 4,301,261 | 7 | 1 | 615,983 |
| **Kentucky** | 4,041,769 | 6 | 0 | 674,905 |
| **South Carolina** | 4,012,012 | 6 | 0 | 670,844 |
| **Oklahoma** | 3,450,654 | 5 | -1 | 691,764 |
| **Oregon** | 3,421,399 | 5 | 0 | 685,709 |
| **Connecticut** | 3,405,565 | 5 | -1 | 681,907 |
| **Iowa** | 2,926,324 | 5 | 0 | 586,385 |
| **Mississippi** | 2,844,658 | 4 | -1 | 713,232 |
| **Kansas** | 2,688,418 | 4 | 0 | 673,456 |
| **Arkansas** | 2,673,400 | 4 | 0 | 669,933 |
| **Utah** | 2,233,169 | 3 | 0 | 745,571 |
| **Nevada** | 1,998,257 | 3 | 1 | 667,344 |
| **New Mexico** | 1,819,046 | 3 | 0 | 607,940 |
| **West Virginia** | 1,808,344 | 3 | 0 | 604,359 |
| **Nebraska** | 1,711,263 | 3 | 0 | 571,790 |
| **Idaho** | 1,293,953 | 2 | 0 | 648,637 |
| **Maine** | 1,274,923 | 2 | 0 | 638,866 |
| **New Hampshire** | 1,235,786 | 2 | 0 | 619,208 |
| **Hawaii** | 1,211,537 | 2 | 0 | 608,321 |
| **Rhode Island** | 1,048,319 | 2 | 0 | 524,831 |
| - | | | | |

| Montana | 902,195 | 1 | 0 | 905,316 [Largest] |
|---|---|---|---|---|
| Delaware | 783,600 | 1 | 0 | 785,068 |
| South Dakota | 754,844 | 1 | 0 | 756,874 |
| North Dakota | 642,200 | 1 | 0 | 643,756 |
| Alaska | 626,932 | 1 | 0 | 628,933 |
| Vermont | 608,827 | 1 | 0 | 609,890 |
| Wyoming | 493,782 | 1 | 0 | 495,304 [Smallest] |
| ************** | ********* | *** | ** | ******* |
| United States | 281,421,906 | 435 | 12 | 646,952 |

**107.** On December 12, 2000, the Supreme Court issued an injunction regarding the presidential election, predicated upon Fifth Amendment due process grounds. *Bush v. Gore*, 531 U.S. 98 (2000).

**108.** George W. Bush had 271 electors to Al Gore's 267, though Bush lost the national popular vote by 537,179.

## 2010

**109.** The twenty-third census counted 308,745,538 resident persons in the United States, as of April 1, 2010.

| 2010 | | | | |
|---|---|---|---|---|
| STATE | Population | Number of Seats | Change in Seats | Average Population Per District |
| California | 37,253,956 | 53 | 0 | 704,566 |
| Texas | 25,145,561 | 36 | 4 | 701,901 |
| New York | 19,378,102 | 27 | -2 | 719,298 |

| | | | | |
|---|---|---|---|---|
| **Florida** | 18,801,310 | 27 | 2 | 700,029 |
| **Illinois** | 12,830,632 | 18 | -1 | 714,688 |
| **Pennsylvania** | 12,702,379 | 18 | -1 | 707,495 |
| **Ohio** | 11,536,504 | 16 | -2 | 723,031 |
| **Michigan** | 9,883,640 | 14 | -1 | 707,973 |
| **Georgia** | 9,687,653 | 14 | 1 | 694,826 |
| **North Carolina** | 9,535,483 | 13 | 0 | 735,829 |
| **New Jersey** | 8,791,894 | 12 | -1 | 733,958 |
| **Virginia** | 8,001,024 | 11 | 0 | 730,703 |
| **Washington** | 6,724,540 | 10 | 1 | 675,337 |
| **Massachusetts** | 6,547,629 | 9 | -1 | 728,849 |
| **Indiana** | 6,483,802 | 9 | 0 | 722,398 |
| **Arizona** | 6,392,017 | 9 | 1 | 712,522 |
| **Tennessee** | 6,346,105 | 9 | 0 | 708,381 |
| **Missouri** | 5,988,927 | 8 | -1 | 751,435 |
| **Maryland** | 5,773,552 | 8 | 0 | 723,741 |
| **Wisconsin** | 5,686,986 | 8 | 0 | 712,279 |
| **Minnesota** | 5,303,925 | 8 | 0 | 664,360 |
| **Colorado** | 5,029,196 | 7 | 0 | 720,704 |
| **Alabama** | 4,779,736 | 7 | 0 | 686,140 |
| **South Carolina** | 4,625,364 | 7 | 1 | 663,711 |
| **Louisiana** | 4,533,372 | 6 | -1 | 758,994 |
| **Kentucky** | 4,339,367 | 6 | 0 | 725,101 |
| **Oregon** | 3,831,074 | 5 | 0 | 769,721 |
| **Oklahoma** | 3,751,351 | 5 | 0 | 752,976 |

| Connecticut | 3,574,097 | 5 | 0 | 716,326 |
|---|---|---|---|---|
| Iowa | 3,046,355 | 4 | -1 | 763,447 |
| Mississippi | 2,967,297 | 4 | 0 | 744,560 |
| Arkansas | 2,915,918 | 4 | 0 | 731,557 |
| Kansas | 2,853,118 | 4 | 0 | 715,953 |
| Utah | 2,763,885 | 4 | 1 | 692,691 |
| Nevada | 2,700,551 | 4 | 1 | 677,358 |
| New Mexico | 2,059,179 | 3 | 0 | 689,091 |
| West Virginia | 1,852,994 | 3 | 0 | 619,938 |
| Nebraska | 1,826,341 | 3 | 0 | 610,608 |
| Idaho | 1,567,582 | 2 | 0 | 786,750 |
| Hawaii | 1,360,301 | 2 | 0 | 683,431 |
| Maine | 1,328,361 | 2 | 0 | 666,537 |
| New Hampshire | 1,316,470 | 2 | 0 | 660,723 |
| Rhode Island | 1,052,567 | 2 | 0 | 527,624 [Smallest] |
| Montana | 989,415 | 1 | 0 | 994,416 [Largest] |
| Delaware | 897,934 | 1 | 0 | 900,877 |
| South Dakota | 814,180 | 1 | 0 | 819,761 |
| Alaska | 710,231 | 1 | 0 | 721,523 |
| North Dakota | 672,591 | 1 | 0 | 675,905 |
| Vermont | 625,741 | 1 | 0 | 630,337 |
| Wyoming | 563,626 | 1 | 0 | 568,300 |
| ************** | ********* | *** | ** | ******* |
| United States | 308,745,538 | 435 | 12 | 710,767 |

**110.** One district court held the 435-member cap to be valid, without considering the Art. II issue. *Clemons v. U.S. Dep't of Commerce*, 710 F. Supp.2d 570, 590 (N.D. Miss. 2010). However, the Supreme Court ordered that *Clemons* be remanded "with instructions to dismiss the complaint for lack of jurisdiction." 562 U.S. 1105, 131 S.Ct. 821 (Mem.) (2010). But, see *infra*, *Rucho v. Common Cause*, 139 S.Ct. 2484, 2496 (2019).

**2013**

**111.** "[B]asic due process and equal protection principles [are] applicable to the Federal Government." *U.S. v. Windsor*, 570 U.S. 744, 769-70 (2013) (regarding Defense Of Marriage Act) (citing U.S.CONST., Fifth Amend.; and *Bolling v. Sharpe*, 347 U.S. 497 (1954)).

> The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws. While the Fifth Amendment itself withdraws from Government the power to degrade or demean in the way this law does, the equal protection guarantee of the Fourteenth Amendment makes that Fifth Amendment right all the more specific and all the better understood and preserved.

*Windsor*, 570 U.S. at 774 (citing *Bolling*, 347 U.S., at 499–500; and *Adarand Constructors, Inc. v. Penã*, 515 U.S. 200, 217–218 (1995)).

**112.** As an alternative to an analysis under *Windsor*, "…the Citizenship Clause [of the Fourteenth Amendment] guarantees citizens equal treatment by the Federal Government with respect to civil

rights." *U.S. v. Vaello Madero*, 142 S.Ct. 1539, 1551 (2022) (Thomas, J., Concurring).

**2016**

**113.** In the 2016 presidential election, Donald Trump obtained 304 electoral votes to Hillary Clinton's 227, despite losing the popular vote by 2,868,686 votes.

**2019**

**114.** Abrogating *Clemons v. U.S. Dep't of Commerce*, *supra*, the Supreme Court explained:

> In the leading case of *Baker v. Carr*, voters in Tennessee complained that the State's districting plan for state representatives "debase[d]" their votes, because the plan was predicated on a 60-year-old census that no longer reflected the distribution of population in the State. The plaintiffs argued that votes of people in overpopulated districts held less value than those of people in less-populated districts, and that this inequality violated the Equal Protection Clause of the Fourteenth Amendment. The District Court dismissed the action on the ground that the claim was not justiciable, relying on this Court's precedents, including *Colegrove*. *Baker v. Carr*, 179 F. Supp. 824, 825, 826 (MD Tenn. 1959). This Court reversed. It identified various considerations relevant to determining whether a claim is a nonjusticiable political question, including whether there is "a lack of judicially discoverable and manageable standards for resolving it." 369 U.S. at 217, 82 S.Ct. 691. The Court concluded that the claim of population inequality among districts did not fall into that category, because such a claim could be decided under basic equal protection principles. *Id.*, at 226, 82 S.Ct. 691. In *Wesberry v. Sanders*, the Court extended its ruling to malapportionment of congressional districts, holding that Article I, § 2, required that "one man's vote in a congressional

election is to be worth as much as another's." 376 U.S. at 8, 84 S.Ct. 526.

*Rucho v. Common Cause*, 139 S.Ct. 2484, 2496 (2019).

**2020**

**115.** The twenty-fourth census counted 331,449,281 resident persons in the United States, as of April 1, 2020.

| 2020 | | | | |
|---|---|---|---|---|
| **STATE** | **Population** | **Number of Seats** | **Change in Seats** | **Average Population Per District** |
| **California** | 39,538,223 | 52 | -1 | 761,091 |
| **Texas** | 29,145,505 | 38 | 2 | 767,981 |
| **Florida** | 21,538,187 | 28 | 1 | 770,376 |
| **New York** | 20,201,249 | 26 | -1 | 777,529 |
| **Pennsylvania** | 13,002,700 | 17 | -1 | 765,403 |
| **Illinois** | 12,812,508 | 17 | -1 | 754,279 |
| **Ohio** | 11,799,448 | 15 | -1 | 787,257 |
| **Georgia** | 10,711,908 | 14 | 0 | 766,091 |
| **North Carolina** | 10,439,388 | 14 | 1 | 746,711 |
| **Michigan** | 10,077,331 | 13 | -1 | 775,726 |
| **New Jersey** | 9,288,994 | 12 | 0 | 774,541 |
| **Virginia** | 8,631,393 | 11 | 0 | 786,777 |
| **Washington** | 7,705,281 | 10 | 0 | 771,595 |
| **Arizona** | 7,151,502 | 9 | 0 | 795,436 |
| **Massachusetts** | 7,029,917 | 9 | 0 | 781,497 |
| **Tennessee** | 6,910,840 | 9 | 0 | 768,544 |
| **Indiana** | 6,785,528 | 9 | 0 | 754,476 |

| | | | | |
|---|---|---|---|---|
| **Maryland** | 6,177,224 | 8 | 0 | 773,160 |
| **Missouri** | 6,154,913 | 8 | 0 | 770,035 |
| **Wisconsin** | 5,893,718 | 8 | 0 | 737,184 |
| **Colorado** | 5,773,714 | 8 | 1 | 722,771 |
| **Minnesota** | 5,706,494 | 8 | 0 | 713,719 |
| **South Carolina** | 5,118,425 | 7 | 0 | 732,102 |
| **Alabama** | 5,024,279 | 7 | 0 | 718,579 |
| **Louisiana** | 4,657,757 | 6 | 0 | 776,911 |
| **Kentucky** | 4,505,836 | 6 | 0 | 751,557 |
| **Oregon** | 4,237,256 | 6 | 1 | 706,917 |
| **Oklahoma** | 3,959,353 | 5 | 0 | 792,703 |
| **Connecticut** | 3,608,298 | 5 | 0 | 721,660 |
| **Utah** | 3,271,616 | 4 | 0 | 818,813 |
| **Iowa** | 3,190,369 | 4 | 0 | 798,102 |
| **Nevada** | 3,104,614 | 4 | 0 | 777,116 |
| **Arkansas** | 3,011,524 | 4 | 0 | 753,439 |
| **Mississippi** | 2,961,279 | 4 | 0 | 740,979 |
| **Kansas** | 2,937,880 | 4 | 0 | 735,216 |
| **New Mexico** | 2,117,522 | 3 | 0 | 706,740 |
| **Nebraska** | 1,961,504 | 3 | 0 | 654,444 |
| **Idaho** | 1,839,106 | 2 | 0 | 920,689 |
| **West Virginia** | 1,793,716 | 2 | -1 | 897,523 |
| **Hawaii** | 1,455,271 | 2 | 0 | 730,069 |
| **New Hampshire** | 1,377,529 | 2 | 0 | 689,545 |
| **Maine** | 1,362,359 | 2 | 0 | 681,791 |
| **Rhode Island** | 1,097,379 | 2 | 0 | 549,082 |

| Montana | 1,084,225 | 2 | 1 | 542,704 [Smallest] |
|---|---|---|---|---|
| Delaware | 989,948 | 1 | 0 | 990,837 [Largest] |
| South Dakota | 886,667 | 1 | 0 | 887,770 |
| North Dakota | 779,094 | 1 | 0 | 779,702 |
| Alaska | 733,391 | 1 | 0 | 736,081 |
| Vermont | 643,077 | 1 | 0 | 643,503 |
| Wyoming | 576,851 | 1 | 0 | 577,719 |
| ************** | ********* | *** | ** | ******* |
| United States | 331,449,281 | 435 | 7 | 761,169 |

2022 – The Growing Democracy Deficit

*Federal Courts*

**116.** Despite Congress having created 12 territorial Courts of Appeals and the Federal Circuit Court of Appeals, hundreds of district courts, numerous Article I and II courts and tribunals, and otherwise dramatically expanded the federal judiciary over the past century, it has left the number of Supreme Court Justices at 9 since 1869.

*U.S. Senate*

1910 Population Distribution

**117.** The U.S. population in 1910 was 92,228,496 persons.

**118.** In 1910, New York was the largest state, with over 9 million residents. The second largest state had over 7 million residents, the third largest had over 5 million residents, and the fourth largest had

over 4 million residents. Three (3) states in 1910 had 3 million residents.

**119.** So, the approximately 34 million people residing in the seven (7) largest states in 1910 were represented by two (2) senators per state [14 total].

**120.** Thirteen (13) states had 2 million residents in 1910. Eleven (11) states had one million residents or more; seven (7) states had greater than 500,000 residents; and eight (8) states had fewer than 500,000 residents.

**121.** Thus, 39 of the states in 1910 had fewer than 3 million residents, with each state being represented by two (2) senators.

<u>2020 Population Distribution</u>

**122.** The U.S. population in 2020 was 331,449,281 persons.

**123.** In 2020, the seven (7) largest states had, respectively, populations of 40 million (CA), 30 million (TX), 22 million (FL), 20 million (NY), 13 million (PA), 12 million (IL), and 11 million (OH); with two (2) senators representing each state.

**124.** So, approximately 148 million residents are represented by a total of 14 senators

**125.** Three (3) states in 2020 had populations exceeding 10 million; one (1) state had 9 million; and the next state had 8 million; with two (2) senators representing each state.

**126.** Thus, the next 47 million residents are represented by a total of ten (10) senators.

**127.** As of 2020, three (3) states' populations exceeded 7 million; four (4) states' populations exceeded 6 million; and five (5) states' populations exceeded 5 million; with two (2) senators representing each state.

**128.** So, these 70 million residents are represented by a total of 24 senators.

**129.** Three (3) states' populations exceeded 4 million; six (6) states' populations exceeded 3 million; and three (3) states exceeded 2 million; with two (2) senators representing each state.

**130.** So, these 36 million residents are represented by a total of 24 senators.

**131.** Finally, eight (8) states had populations greater than 1 million residents, and six (6) states had populations below 1 million residents; with two (2) senators representing each state.

**132.** So, these 16 million residents are represented by a total of 28 senators.

**133.** "Remember … Maine". Congress can subdivide states at any time with the assent of any given state's legislature. U.S.CONST., Art. IV, § 3.

**134.** As the 576,851 residents of Wyoming have two (2) senators, this provides a minimum size ('constitutional unit') for future state

creation via subdivision of existing states. Any polity, within any one state, having a population equal to or exceeding that of Wyoming should be entitled to equal footing as Wyoming, in terms of representation in the Senate, and subdivision into its own state.

*House of Representatives*

**135.** In 1912, when there were 435 congressional districts, the average congressional district had 210,328 residents.

**136.** The largest district had 228,027 residents; and the smallest had 80,293.

**137.** Re-apportionment after the 2020 census was once again constrained by the 435-member cap in place for the past 110 years.

**138.** The average congressional district had 761,169 residents in 2020.

**139.** The largest district after 2020 has 990,837 residents (DE), and the smallest has 524,704 (MT).

## CAUSE OF ACTION

### Declaratory Relief – 435 Member Cap Unconstitutional

**140.** Plaintiff re-incorporates the preceding paragraphs as if fully set forth herein.

**141.** Claims pursuant to Art. I, § 2 are justiciable, as the Constitution "require[s] that 'one man's vote in a congressional election is to be worth as much as another's.'" *Rucho v. Common Cause*, 139 S.Ct. at 2496 (quoting *Wesberry v. Sanders*, 376 U.S. at 7)).

> In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

**142.** 2 U.S.C. § 2a(a), which permanently limits the House of Representatives to 435 members, deprives citizens and residents of their constitutional right to equal representation in the House of Representatives [U.S.CONST., Art. I, § 2].

**143.** Furthermore, 2 U.S.C. § 2a(a), which permanently limits the House of Representatives to 435 members, deprives citizens and residents of their constitutional right to equal representation in the electoral college for the presidency [U.S.CONST., Art. II, § 1]

**144.** Congress' failure to increase or otherwise change the number of Representatives commensurate with the total population of the United States and the relative populations of the several States, and instead leaving the number [435] unchanged since 1912, and self-executing since 1941, violates the 'one person, one vote' principle.

**145.** Particularly when read together with the Art. II, § 1 requirements of the 'electoral college,' as well as the other above-quoted sections of the Constitution pertaining to voting, the 'one person, one

vote' principle must apply to relative district size among the states, as well as within each state.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

**146.** That the Court hold that the 435-Member-cap established in 2 U.S.C. § 2a(a) is unconstitutional in light of Art. I, § 2; Art. II, § 1; and the 'one person, one vote' principle. Read together the clauses require roughly equal district sizes among the States, as well as within each State, to give full effect to both Art. I, § 2 and Art. II, § 1.

**147.** That Congress be directed to either create a ratio of member-per-unit-of-population applicable equally to each and every of the several States; or a sufficient overall whole number of districts to be apportioned to provide roughly equal district sizes among the States, as well as within each State, so as to give full effect to both Art. I, § 2, and Art. II, § 1.

**148.** For any such other and further relief as the Court may deem to be just and equitable.

Submitted this 18th day of July, 2022,

**KSB LITIGATION, P.S.**

By: *s/ William C. Schroeder*
William C. Schroeder, WSBA #41986
510 West Riverside Ave., 3rd Floor
Spokane, Washington, 99201

wcs@KSBLit.legal
*Plaintiff*

mouth and Exeter alternately, beginning at the first. In Massachusetts district at Boston. In Rhode Island district at Newport and Providence alternately, beginning at the first. In Connecticut district at Hartford and New Haven alternately beginning at the last. And in New York district at the city of New York only.

Judges of supreme court at each session to determine the circuits they are respectively to attend, &c.

SEC. 3. *And be it enacted*, That at each session of the supreme court of the United States, or as soon after as may be, the judges of the supreme court attending at such session shall, in writing subscribed with their names (which writing shall be lodged with the clerk of the supreme court and safely kept in his office), assign to the said judges respectively the circuits which they are to attend at the ensuing sessions of the circuit courts; which assignment shall be made in such manner that no judge, unless by his own consent, shall have assigned to him any circuit which he hath already attended, until the same hath been afterwards attended by every other of the said judges. *Provided always*, That if the public service or the convenience of the judges shall at any time, in their opinion, require a different arrangement, the same may take place with the consent of any four of the judges of the supreme court.(*a*)

Session of Maine district,

1789, ch. 20.

1802, ch. 31, sec. 22.

SEC. 4. *And be it further enacted*, That the district court for the district of Maine, which, by the act, intituled "An act to establish the judicial courts of the United States," is holden on the first Tuesday of June, annually, at Portland, shall, from and after the passing of this act, be holden on the third Tuesday of June, annually, any thing in the act aforesaid to the contrary notwithstanding: and all writs and recognizances returnable, and suits and other proceedings, that were continued to the district court for the district of Maine on the first Tuesday of June next, shall now be returnable and held continued to the same court, on the third Tuesday of June next.

and of N. Carolina altered.

1797, ch. 27, sec. 2.

SEC. 5. *And be it further enacted*, That the stated district courts for the district of North Carolina shall, in future, be held at the towns of Newbern, Wilmington and Edenton in rotation, beginning at Newbern, as the said court now stands adjourned.

APPROVED, April 13, 1792.

---

STATUTE I.

April 14, 1792.

CHAP. XXIII.—*An Act for apportioning Representatives among the several States, according to the first enumeration.*

[Obsolete.] Apportionment of representatives to Congress according to first enumeration.

1791, ch. 9.
1802, ch. 1.
1811, ch. 9.
1820, ch. 37.
1832, ch. 91.
1842, ch. 25.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That from and after the third day of March one thousand seven hundred and ninety-three, the House of Representatives shall be composed of members elected agreeably to a ratio of one member for every thirty-three thousand persons in each state, computed according to the rule prescribed by the constitution; that is to say: Within the state of New Hampshire, four; within the state of Massachussetts, fourteen; within the state of Vermont, two; within the state of Rhode Island, two; within the state of Connecticut, seven; within the state of New York, ten; within the state of New Jersey, five; within the state of Pennsylvania, thirteen; within the state of Delaware, one; within the state of Maryland, eight; within the state of Virginia, nineteen; within the state of Kentucky, two; within the state of North Carolina, ten; within the state of South Carolina, six; and within the state of Georgia, two members.

APPROVED, April 14, 1792.

(*a*) The provisions of the acts of Congress relating to the assignment of the circuits to the justices of the Supreme Court, have been: Act of April 13, 1792, sec. 3; act of March 2, 1793; act of April 29, 1802, sec. 5; act of March 3, 1803; act of March 3, 1837.

# ACTS OF THE SEVENTH CONGRESS

OF THE

# UNITED STATES,

*Passed at the first session, which was begun and held at the City of Washington, in the District of Columbia, on Monday, the seventh day of December,* 1801, *and ended on the third day of May,* 1802.

THOMAS JEFFERSON, President; AARON BURR, Vice President of the United States, and President of the Senate; ABRAHAM BALDWIN, President of the Senate pro tempore, on the 14th of January, 1802, and from the 21st of April, 1802; NATHANIEL MACON, Speaker of the House of Representatives.

## STATUTE I.

Jan. 14, 1802.

[Obsolete.]

Apportionment of representatives.

One member to every thirty-three thousand persons in each state.

N. Hampshire 5. Mas'chus'ts 17. Vermont 4. Rhode Island 2. Connecticut 7. New York 17. New Jersey 6. Pennsyl'a 18. Delaware 1. Maryland 9. Virginia 22. N. Carolina 12. S. Carolina 8. Georgia 4. Kentucky 6. Tennessee 3.

CHAPTER I.—*An Act for the apportionment of Representatives among the several States, according to the second enumeration.*(*a*)

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That from and after the third day of March, one thousand eight hundred and three, the House of Representatives shall be composed of members elected agreeably to a ratio of one member for every thirty-three thousand persons in each state, computed according to the rule prescribed by the constitution; that is to say: within the state of New Hampshire, five; within the state of Massachusetts, seventeen; within the state of Vermont, four; within the state of Rhode Island, two; within the state of Connecticut, seven; within the state of New York, seventeen; within the state of New Jersey, six; within the state of Pennsylvania, eighteen; within the state of Delaware, one; within the state of Maryland, nine; within the state of Virginia, twenty-two; within the state of North Carolina, twelve; within the state of South Carolina, eight; within the state of Georgia, four; within the state of Kentucky, six; and within the state of Tennessee, three members.

APPROVED, January 14, 1802.

---

STATUTE I.

Jan. 26, 1802.

CHAP. II.—*An Act concerning the Library for the use of both Houses of Congress.*(*b*)

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the books and

---

(*a*) By the act of April 14, 1792, chap. 23, the ratio of representatives was one member to every thirty-three thousand persons in each state, after the first census.

By the act of January 14, 1802, chap. 1, the ratio of representatives was one member to every thirty-three thousand persons in each state, after the second census.

By the act of December 21, 1811, chap. 9, the ratio of representatives was one member to every thirty-five thousand persons in each state, after the third census.

By the act of March 7, 1822, chap. 10, the ratio of representatives was one member to every forty thousand persons in each state, after the fourth census.

By the act of May 22, 1832, chap. 91, the ratio of representatives was one member to every forty-seven thousand seven hundred persons in each state, after the fifth census.

By the act of June 25, 1842, chap. 21, the ratio of representatives was one member to every seventy thousand six hundred and eighty persons in each state, and one additional member to each state having a fraction greater than one moiety of that number of persons, according to the sixth census.

(*b*) The acts for the establishment and regulation of the Library of Congress, are: An act concerning

tory of Michigan, on the twenty-fifth day of November, one thousand eight hundred and eight.

Sec. 2. *And be it further enacted,* That the aforesaid roads shall be opened and made under the direction of the President of the United States, in such manner as he shall direct.

Roads to be opened and made under the direction of the President.

Sec. 3. *And be it further enacted,* That the said commissioners shall each be entitled to receive three dollars, and their necessary assistants one dollar and fifty cents, for each and every day which they shall be necessarily employed in the exploring, surveying and marking said roads; and for the purpose of compensating the aforesaid commissioners and their assistants, and for opening and making said roads, there shall be and hereby is appropriated the sum of six thousand dollars, to be paid out of any monies in the treasury not otherwise appropriated.

Compensation of the commissioners and assistants.

Approved, December 12, 1811.

Statute I.

Dec. 21, 1811.

[Obsolete.]

Chap. IX.—*An Act for the apportionment of Representatives among the several States, according to the third enumeration.*(a)

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That from and after the third day of March, one thousand eight hundred and thirteen, the House of Representatives shall be composed of members elected agreeably to a ratio of one representative for every thirty-five thousand persons in each state, computed according to the rule prescribed by the constitution of the United States, that is to say: Within the state of New Hampshire, six; within the state of Massachusetts, twenty; within the state of Vermont, six; within the state of Rhode Island, two; within the state of Connecticut, seven; within the state of New York, twenty-seven; within the state of New Jersey, six; within the state of Pennsylvania, twenty-three; within the state of Delaware, two; within the state of Maryland, nine; within the state of Virginia, twenty-three; within the state of North Carolina, thirteen; within the state of South Carolina, nine; within the state of Georgia, six; within the state of Kentucky, ten; within the state of Ohio, six; within the state of Tennessee, six.

Ratio of one representative to every thirty-five thousand.

Approved, December 21, 1811.

Statute I.

Dec. 24, 1811.

[Obsolete.]

Act of March 3, 1815, ch. 78.

Chap. X.—*An Act for completing the existing Military Establishment.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the military establishment, as now authorized by law, be immediately completed.

The military establishment to be completed.

Sec. 2. *And be it further enacted,* That there be allowed and paid to each effective, able bodied man, recruited or re-enlisted for that service, for the term of five years, unless sooner discharged, the sum of sixteen dollars; but the payment of one half of the said bounty shall be deferred until he shall be mustered and have joined the corps in which he is to serve; and whenever any non-commissioned officer or soldier shall be discharged from the service, who shall have obtained from the commanding officer of his company, battalion or regiment a certificate that he had faithfully performed his duty whilst in service, he shall moreover be allowed and paid, in addition to the aforesaid bounty, three months' pay, and one hundred and sixty acres of land; and the heirs and representatives of those non-commissioned officers or soldiers, who may be killed in action, or die in the service of the United States, shall likewise be paid and allowed the said additional bounty of three months' pay, and one hundred and sixty acres of land, to be designated, surveyed and laid off

Pay and bounty to officers and men.

Non-commissioned officers and soldiers when discharged to have one hundred and sixty acres of land and additional bounty.

(a) See act of January 14, 1802, chap. 1, page 128, and note.

Sec. 2. *And be it further enacted,* That the several appropriations hereinbefore made, shall be paid out of any money in the treasury not otherwise appropriated.

Out of money in the treasury.

Approved, February 19, 1822.

---

Statute I.

Feb. 19, 1822.

Chap. VIII.—*An Act authorizing the transfer of certain certificates of the funded debt of the United States.*

[Obsolete.] Certificates of the funded debt, issued to creditor states upon the assumption of their debts, made transferable.

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That the certificates of the funded debt of the United States, which, upon the assumption of the debts of the several creditor states, were issued in their favour, respectively, be, and hereby are, made transferable, according to the rules and forms instituted for the purpose of transfers of the public debt.

Approved, February 19, 1822.

---

Statute I.

Feb. 23, 1822.

Chap. IX.—*An Act for the preservation of the timber of the United States in Florida.*

Act of March 1, 1817, ch. 22.

The President may employ the land and naval forces to prevent the destruction of, or carrying away, public timber, &c.

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That the President of the United States be, and hereby is, authorized to employ so much of the land and naval forces of the United States as may be necessary effectually to prevent the felling, cutting down, or other destruction of the timber of the United States in Florida; and also to prevent the transportation or carrying away any such timber as may be already felled or cut down; and to take such other and further measures as may be deemed advisable for the preservation of the timber of the United States in Florida.

Approved, February 23, 1822.

---

Statute I.

March 7, 1822.

Chap. X.—*An Act for the apportionment of representatives among the several states, according to the fourth census.* (a)

After the 3d of March, 1823, the House of Representatives to be composed of members elected agreeably to a ratio of one for every 40,000 persons, &c.

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That, from and after the third day of March, one thousand eight hundred and twenty-three, the House of Representatives shall be composed of members elected agreeably to a ratio of one representative for every forty thousand persons in each state, computed according to the rule prescribed by the constitution of the United States; that is to say: within the state of Maine, seven; within the state of New Hampshire, six; within the state of Massachusetts, thirteen; within the state of Rhode Island, two; within the state of Connecticut, six; within the state of Vermont, five; within the state of New York, thirty-four; within the state of New Jersey, six; within the state of Pennsylvania, twenty-six; within the state of Delaware, one; within the state of Maryland, nine; within the state of Virginia, twenty-two; within the state of North Carolina, thirteen; within the state of South Carolina, nine; within the state of Georgia, seven; within the state of Alabama, two; within the state of Mississippi, one; within the state of Louisiana, three; within the state of Tennessee, nine; within the state of Kentucky, twelve; within the state of Ohio, fourteen; within the state of Indiana, three; within the state of Illinois, one; and within the state of Missouri, one.

Number of members to which each state is entitled.

(a) See the acts relating to the apportionment of representatives among the several states, according to the census of the United States, vol. ii. 128.

Alabama to have three members, if it is made to appear, &c.

SEC. 2. *And be it further enacted*, That, as the returns of the marshal of the state of Alabama are not complete, in consequence of the death of the former marshal, who commenced the enumeration in said state, nothing in this act contained shall be construed to prevent the state of Alabama from having three representatives, if it shall be made to appear to Congress, at the next session, that the said state, at the time of passing this act, would have been entitled to that number, according to its population and the ratio hereby established, if the said returns had been complete.

APPROVED, March 7, 1822.

---

STATUTE I.

March 15, 1822.

[Obsolete.]

CHAP. XI.—*An Act making appropriations for the military service of the United States for the year one thousand eight hundred and twenty-two, and towards the service of the year one thousand eight hundred and twenty-three.*

Sums appropriated for the military service of the United States of the year 1822.

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled*, That the following sums be, and the same are hereby, respectively appropriated for the military service of the United States for the year one thousand eight hundred and twenty-two, to wit:

Pay and subsistence of officers.

For the pay of the army and subsistence of the officers, nine hundred and eighty-two thousand nine hundred and seventeen dollars, including the sum of eighty-six thousand nine hundred dollars for the pay and subsistence of the officers and cadets belonging to the military academy at West Point.

Subsistence in addition to an unexpended balance.

For subsistence, in addition to an unexpended balance of one hundred and twenty thousand eight hundred and sixty-three dollars and thirty-seven cents, the sum of one hundred and seventy-four thousand seven hundred and ninety-three dollars and sixty-three cents.

Forage.

For forage for officers, in addition to an unexpended balance of eleven thousand eight hundred and sixty-nine dollars, the sum of five thousand six hundred and seventy-five dollars.

Medical and hospital department.

For the medical and hospital department, in addition to an unexpended balance of twelve thousand one hundred and thirty-three dollars and forty-four cents, the sum of twenty-two thousand eight hundred and fifty-four dollars and fifty-six cents.

Purchasing department.

For the purchasing department, in addition to an unexpended balance of fifty-five thousand and eighty-nine dollars and forty cents, the sum of seventy-three thousand four hundred and thirty-three dollars; and for the purchase of woollens for the year one thousand eight hundred and twenty-three, the sum of seventy-five thousand dollars.

Quartermaster general's department.

For the quartermaster general's department, for regular supplies, transportation, rent, and repairs, postage, courts martial, fuel, and contingencies, and for extra pay to soldiers employed in the erection and repairs of barracks and other labour, three hundred and thirteen thousand two hundred and seventeen dollars.

Contingencies.

For the contingencies of the army, twenty thousand dollars.

Quartermaster's supplies, &c.

For quartermaster's supplies, transportation, mathematical instruments, books, and stationery, for the military academy, thirteen thousand nine hundred and seventy-nine dollars.

Pensions to invalids and others.

For the pensions to the invalids, to the commutation pensioners, and to the widows and orphans, in addition to an unexpended balance of twenty-seven thousand eight hundred and ninety-one dollars and five cents, the sum of three hundred and seventeen thousand one hundred and eight dollars.

Revolutionary pensioners.

For pensions to the revolutionary pensioners of the United States, including a deficiency in the appropriation of last year of four hundred and fifty-one thousand eight hundred and thirty-six dollars and fifty-seven

Case 2:22-cv-00172 ECF No. 1-8 filed 07/18/22 PageID.72 Page 1 of 1

thorized, by proclamation, to suspend the operation of either or both of the provisions of this act, as the case may be, and to withhold any or all the privileges allowed, or to be allowed, to Colombian vessels or their cargoes.

Approved, May 19, 1832.

---

Statute I.

May 19, 1832.

Chap. LXXX.—*An Act authorizing the revision and extension of the rules and regulations of the naval service.*

Board to be constituted, &c.

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That the President of the United States be, and he is hereby, authorized to constitute a board of naval officers to be composed of the naval commissioners and two post captains to meet at the seat of government, whose duty it shall be, with the aid and assistance of the attorney general, carefully to revise and enlarge the rules and regulations governing the naval service, with the view to adapt them to the present and future exigencies of this important arm of national defence, which rules and regulations, when approved by him and sanctioned by Congress, shall have the force of law, and stand in lieu of all others heretofore enacted.

Approved, May 19, 1832.

---

Statute I.

May 22, 1832.

Chap. XCI.—*An Act for the apportionment of representatives among the several states, according to the fifth census.*

Maine, 8
NewHamp. 5
Mass. 12
R. Island, 2
Conn. 6
Vermont, 5
NewYork, 40
NewJersey, 6
Penn'a. 28
Delaware, 1
Maryland, 8
Virginia, 21
N.Carolina, 13
S.Carolina, 9
Georgia, 9
Kentucky, 13
Tennessee, 13
Ohio, 19
Indiana, 7
Mississippi, 2
Illinois, 3
Louisiana, 3
Missouri, 2
Alabama, 5

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That from and after the third day of March, one thousand eight hundred and thirty-three, the House of Representatives shall be composed of members, elected agreeably to a ratio of one representative for every forty-seven thousand and seven hundred persons in each state, computed according to the rule prescribed by the constitution of the United States, that is to say, within the state of Maine, eight; within the state of New Hampshire, five; within the state of Massachusetts, twelve; within the state of Rhode Island, two; within the state of Connecticut, six; within the state of Vermont, five; within the state of New York, forty; within the state of New Jersey, six; within the state of Pennsylvania, twenty-eight; within the state of Delaware, one; within the state of Maryland, eight; within the state of Virginia, twenty-one; within the state of North Carolina, thirteen; within the state of South Carolina, nine; within the state of Georgia, nine; within the state of Kentucky, thirteen; within the state of Tennessee, thirteen; within the state of Ohio, nineteen; within the state of Indiana, seven; within the state of Mississippi, two; within the state of Illinois, three; within the state of Louisiana, three; within the state of Missouri, two; and within the state of Alabama, five.

Approved, May 22, 1832.

---

Statute I.

May 22, 1832.

Chap. XCII.—*An act to alter the time of holding the district court of the United States for the western district of Louisiana.* (a)

Court to be held 2d Monday in June.

*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That the district court of the United States for the western district of Louisiana, shall be hereafter holden on the second Monday of June, in each year, instead of the third Monday of August, as is now required by law.

(a) See notes to the acts relating to the district court in Louisiana, vol. iii. p. 774.

have been offered at public sale within either of the land districts in said State of Mississippi, contiguous to said lands, within said State," ceded by the Chickasaws, be so amended that the said lands may be selected, under the direction of the Governor of said State of Mississippi, out of any public lands remaining unsold within either of the land districts in said State of Mississippi, contiguous to the lands in said State, ceded by the Chickasaw Indians.

Approved, June 13, 1842.

---

Statute II.

June 25, 1842.

Chap. XLVII.—*An Act for the apportionment of Representatives among the several States according to the sixth census.* (a)

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That from and after the third day of March, one thousand eight hundred and forty-three, the House of Representatives shall be composed of members elected agreeably to a ratio of one Representative for every seventy thousand six hundred and eighty persons in each State, and of one additional representative for each State having a fraction greater than one moiety of the said ratio, computed according to the rule prescribed by the Constitution of the United States; that is to say: Within the State of Maine, seven; within the State of New Hampshire, four; within the State of Massachusetts, ten; within the State of Rhode Island, two; within the State of Connecticut, four; within the State of Vermont, four; within the State of New York, thirty-four; within the State of New Jersey, five; within the State of Pennsylvania, twenty-four; within the State of Delaware, one; within the State of Maryland, six; within the State of Virginia, fifteen; within the State of North Carolina, nine; within the State of South Carolina, seven; within the State of Georgia, eight; within the State of Alabama, seven; within the State of Louisiana, four; within the State of Mississippi, four; within the State of Tennessee, eleven; within the State of Kentucky, ten; within the State of Ohio, twenty-one; within the State of Indiana, ten; within the State of Illinois, seven; within the State of Missouri, five; within the State of Arkansas, one; and within the State of Michigan, three.

House of Representatives, how to be composed.

Ratio of Representation.

Number of Representatives to each State.

Sec. 2. *And be it further enacted,* That in every case where a State is entitled to more than one Representative, the number to which each State shall be entitled under this apportionment shall be elected by districts composed of contiguous territory equal in number to the number of Representatives to which said State may be entitled, no one district electing more than one Representative.

Where a State is entitled to more than one representative, the election to be by districts, &c.

Approved, June 25, 1842.

---

Statute II.

July 6, 1842.

Chap. L.—*An Act confirming certain land claims in Louisiana.*

Post, p. 649.

Certain land claims in New Orleans district confirmed.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the claims to lands within the land district of New Orleans, being numbers six, seven, eight, nine, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, thirty, thirty-four, thirty-five, thirty-eight, forty-seven, forty-eight, fifty-seven, fifty-nine, sixty, sixty-one, and sixty-two, of the two reports of the register and receiver of said land district, dated fourteenth of December, eighteen hundred and thirty-six, and second of November, eighteen hundred and thirty-seven, and made under the provisions of the act of the sixth of February, eighteen hundred and thirty-five, entitled "An act for the final adjustment of claims to lands in the State of Louisiana," be, and the same are

1835, ch. 17.

(a) See notes of the acts for the apportionment of representatives among the several States, according to the first, second, third, fourth, fifth, and sixth census; act of Jan. 14, 1802, chap. 1.

Case 2:22-cv-00172 ECF No. 1-10 filed 07/18/22 PageID.74 Page 1 of 9

*Money in the treasury not otherwise appropriated.*

fiscal year ending June thirtieth, eighteen hundred and fifty, and for the whole year ending June thirtieth, eighteen hundred and fifty-one, shall be paid out of any money in the treasury not otherwise appropriated.

Approved, May 15, 1850.

---

*May 23, 1850.*

*1850, ch. 43.*

Chap. XI. — *An Act providing for the taking of the seventh and subsequent Censuses of the United States, and to fix the Number of the Members of the House of Representatives, and provide for their future Apportionment among the several States.*

*I. — Of the Duties, Liabilities, and Compensation of Marshals.*

*Marshals to take a census.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the marshals of the several districts of the United States, including the District of Columbia and the Territories, are hereby required respectively to cause all the inhabitants to be enumerated, and to collect all the other statistical information within their respective districts, in the manner provided for in this act, and specified in the instructions which shall be given by the Secretary of the Interior, and in the tables annexed, and to return the same to the said Secretary on or before the first day of November next ensuing, omitting from the enumeration of the inhabitants Indians not taxed; also, at the discretion of said Secretary, any part or all the statistics of the Territories except those of population:

*Proviso.*

*Provided, however,* And if the time assigned for making the returns shall prove inadequate for the Territories, the said Secretary may extend the same:

*Further proviso.*

*Provided, further,* If there be any district or Territory of the United States in which there is no marshal of the United States, the President shall appoint some suitable person to discharge the duties assigned by this act to marshals.

*Marshals required to swear or affirm.*

Sec. 2. *And be it further enacted,* That each of said marshals shall, before entering upon his duties, take and subscribe the following oath, or affirmation, before any circuit or district judge of the United States, or before any judge of any State court, to wit:

*Form of oath of affirmation.*

I, , marshal of the district of , do solemnly swear (or affirm) that I will to the best of my ability enumerate, or cause to be enumerated, all the inhabitants of said district, and will collect, or cause to be collected, the other statistical information within the same, and will faithfully perform all the duties enjoined on me by the act providing for the taking of the seventh census.

And when duly authenticated by the said judge, he shall deposite a copy thereof, so authenticated, with the said Secretary of the Interior, and no marshal shall discharge any of the duties herein required, until he has taken and subscribed this oath, and forwarded a copy as aforesaid.

*Each marshal is required to separate his district into subdivisions containing not exceeding 20,000 persons, &c.*

Sec. 3. *And be it further enacted,* That each marshal shall separate his district into subdivisions containing not exceeding twenty thousand persons in each, unless the limitation to that number causes inconvenient boundaries, in which case the number may be larger; and shall also estimate, from the best sources of information which he is able to obtain, the number of square miles in each subdivision, and transmit the same to the Department of the Interior:

*Proviso.*

*Provided, however,* That in bounding such subdivisions, the limits thereof shall be known civil divisions, such as county, hundred, parish, township, town, city, ward or district lines, or highways, or natural boundaries, such as rivers, lakes, &c.

*Each marshal to appoint and*

Sec. 4. *And be it further enacted,* That each marshal shall appoint an assistant for each such subdivision, who is a resident

therein, to whom he shall give a commission under his hand, authorizing him to perform the duties herein assigned to assistants, which commission shall set forth the boundaries of the subdivision, of which appointment so made, and the boundaries so specified, the marshal shall keep a true and faithful record.

commission an assistant for each subdivision.

Sec. 5. *And be it further enacted*, That each marshal shall seasonably supply each assistant with the instructions issued by the Department of the Interior, the blanks provided for the enumeration of the population, and the collection of other statistics, and give to him, from time to time, all such information and directions as may be necessary to enable him to discharge his duty. He shall carefully examine whether the return of each assistant marshal be made in conformity with the terms of this act, and, where discrepancies are detected, require the same to be corrected. He shall dispose of the two sets of the returns required from the assistant marshals as hereinafter provided for as follows: One set he shall transmit forthwith to the Secretary of the Interior; and the other copy thereof he shall transmit to the office of the Secretary of the State or Territory to which his district belongs. He shall classify and determine the rate of compensation to be paid to each assistant marshal according to the provisions of this act, subject to the final approval of the Secretary of the Interior. He shall, from time to time, make himself acquainted with the progress made by each assistant marshal in the discharge of his duties, and in case of inability or neglect arising from sickness, or otherwise, appoint a substitute.

Marshals required to supply assistants with needful instructions, and blanks for the prosecution of their duties, &c.

Marshal's duties defined.

Sec. 6. *And be it further enacted*, That if any marshal shall, by any arrangement or understanding whatever, secure to himself any fee, reward, or compensation for the appointment of an assistant, or shall in any way secure to himself any part of the compensation provided by this act for the services of assistants, or if he shall knowingly neglect or refuse to perform the duties herein assigned to him, he shall, in any such case, be deemed guilty of a misdemeanor, and if convicted in any such case, shall, for such offence, forfeit and pay not less than one thousand dollars.

Marshal forbidden to secure fee, reward, or compensation, from an assistant.

Penalty.

Sec. 7. *And be it further enacted*, That any marshal of the United States may, for any purposes not inconsistent with the duties of the assistants herein provided for, appoint a deputy or deputies, to act in his behalf; but for all official acts of such deputy or deputies the marshal shall be responsible: *Provided, however*, An appointment to collect the social statistics shall not be deemed an interference with the duties of the assistants.

Marshal may appoint deputies.

Proviso.

Sec. 8. *And be it further enacted*, That whenever the population returned in any district shall exceed one million, the marshal thereof shall be entitled to receive as a compensation for all his services in executing this act, after the rate of one dollar for each thousand persons; but if the number returned shall be less than a million in any district, the marshal thereof shall be allowed for his services at the rate of one dollar and twenty-five cents for each thousand persons: *Provided, however*, That no marshal shall receive less than two hundred and fifty dollars: and when the compensation does not in the whole exceed the sum of five hundred dollars, a reasonable allowance for clerk hire shall be made, the amount whereof shall be determined by the Secretary of the Interior. *And provided, further*, That the marshal of any district may, at his discretion, perform the duties of an assistant in any subdivision in which he may reside; and when he shall personally perform the duties assigned by this act to assistants, he shall receive therefor the compensation allowed to assistants for like services.

Marshal's fees.

Further proviso.

*II. — Of Assistants, their Duties, Liabilities, and Compensation.*

Assistant to be commissioned by the marshal.

Sec. 9. *And be it further enacted,* That no assistant shall be deemed qualified to enter upon his duties, until he has received from the marshal, under his hand, such a commission as is provided for in this act, and shall take and subscribe the following oath, or affirmation, which shall be thereon endorsed, to wit:

Form of oath or affirmation.

I, , an assistant to the marshal of the district of , do solemnly swear (or affirm) that I will make a true and exact enumeration of all the inhabitants within the district assigned to me, and will also faithfully collect the other statistics therein, in the manner provided for in the act for taking the seventh census, and in conformity with all lawful instructions which I may receive, and will make due and correct returns thereof, as required in said act. (Signed.) Which said oath, or affirmation, may be administered by any judge of a court of record, or any justice of the peace empowered to administer oaths, and a copy thereof duly authenticated shall be forwarded to the marshal by such assistant before he proceeds to the business of the appointment.

Duties of assistants defined.

Sec. 10. *And be it further enacted,* That each assistant, when duly qualified in manner aforesaid, shall perform the service required of him, by a personal visit to each dwelling-house, and to each family, in the subdivision assigned to him, and shall ascertain, by inquiries made of some member of each family, if any one can be found capable of giving the information, but if not, then of the agent of such family, the name of each member thereof, the age and place of birth of each, and all the other particulars specified in this act, the tables thereto subjoined, and the instructions of the Secretary of the Interior; and shall also visit personally the farms, mills, shops, mines, and other places respecting which information is required, as above specified, in his district, and shall obtain all such information from the best and most reliable sources; and when, in either case, the information is obtained and entered on the tables, as obtained, till the same is complete, then such memoranda shall be immediately read to the person or persons furnishing the facts, to correct errors and supply omissions, if any shall exist.

Each assistant to furnish returns within one month after the time specified.

Sec. 11. *And be it further enacted,* That each assistant shall, within one month after the time specified for the completion of the enumeration, furnish the original census returns to the clerk of the county court of their respective counties, and two copies, duly compared and corrected, to the marshal of the district. He shall affix his signature to each page of the schedules before he returns them to his marshal, and, on the last page thereof, shall state the whole number of pages in each return, and certify that they were well and truly made according to the tenor of his oath of office.

Assistants' compensation for enumerating inhabitants.

Sec. 12. *And be it further enacted,* That each assistant shall be allowed, as compensation for his services, after the rate of two cents for each person enumerated, and ten cents a mile for necessary travel, to be ascertained by multiplying the square root of the number of dwelling-houses in the division by the square root of the number of square miles in each division, and the product shall be taken as the number of miles travelled for all purposes in taking this census.

Additional compensation for specified duties.

Sec. 13. *And be it further enacted,* That, in addition to the compensation allowed for the enumeration of the inhabitants, there shall be paid for each farm, fully returned, ten cents; for each establishment of productive industry, fully taken and returned, fifteen cents; for the social statistics, two per cent. upon the amount allowed for the enumeration of population, and for each name of a deceased person

returned, two cents: *Provided, however,* That, in making returns of farms and establishments of productive industry, the instructions given by the Secretary of the Interior must be strictly observed, and no allowance shall be made for any return not authorized by such instructions, or for any returns not limited to the year next preceding the first of June next.

Proviso.

Sec. 14. *And be it further enacted,* That any assistant who, having accepted the appointment, shall, without justifiable cause, neglect or refuse to perform the duties enjoined on him by this act, shall be guilty of a misdemeanor, and, upon conviction, be liable to a forfeiture of five hundred dollars; or if he shall wilfully make a false oath, it shall be deemed perjury; or if he shall wilfully make a false certificate, it shall be deemed a misdemeanor, and if convicted or found guilty of either of the last-named offences, he shall forfeit and pay not exceeding five thousand dollars, and be imprisoned not less than two years. And each marshal shall be alike punishable for the two last-named offences when committed by him.

Non-performance of duties declared a misdemeanor.

Penalties on marshals and assistants, for false oaths and false certificates.

Sec. 15. *And be it further enacted,* That each and every free person more than twenty years of age, belonging to any family residing in any subdivision, and in case of the absence of the heads and other members of any such family, then any agent of such family shall be, and each of them hereby is, required, if thereto requested by the marshal or his assistant, to render a true account, to the best of his or her knowledge, of every person belonging to such family, in the various particulars required in and by this act, and the tables thereto subjoined, on pain of forfeiting thirty dollars, to be sued for and recovered in an action of debt by the assistant to the use of the United States.

Persons refusing to give information subject to a forfeit of thirty dollars.

Sec. 16. *And be it further enacted,* That all fines and penalties herein provided for may be enforced in the courts of the United States within the States or Territories where such offence shall have been committed, or forfeiture incurred.

Fines and penalties to be enforced in the U. States courts.

Sec. 17. *And be it further enacted,* That the marshals and their assistants are hereby authorized to transmit, through the post-office, any papers or documents relating to the census, by writing thereon, "Official business, census," and subscribing the same with the addition to his name of marshal, or assistant, as the case may be; but this privilege shall extend to nothing but documents and papers relating to the census, which shall pass free; and the sum of twelve thousand dollars is hereby appropriated out of any money in the treasury not otherwise appropriated, for the purpose of covering the expense of transmitting the blanks and other matter through the mail, to be paid to the Post-Office Department.

Marshals and assistants authorized to transmit papers and documents relating to the census through the Post-Office, free; for transmitting blanks, &c., an appropriation of $12,000 is made.

Sec. 18. *And be it further enacted,* That if, in any of the Territories or places where the population is sparse, the officers of the army, or any persons thereto belonging, can be usefully employed in taking the census, the Secretary of War is hereby directed to afford such aid, if it can be given without prejudice to the public service.

Where the population is sparse, officers and others belonging to the army to give necessary aid.

Sec. 19. *And be it further enacted,* That the Secretary of the Interior is hereby required to carry into effect the provisions of this act, and to provide blanks and distribute the same among the marshals, so that the enumeration may commence on the first day of June next, and be taken with reference to that day in each and every district and subdivision of districts; to draw up and distribute, at the same time, printed instructions, defining and explaining the duties of such as collect the statistics, and the limits by which such duties are circumscribed, in a clear and intelligible manner; to see, also, that all due diligence is employed by the marshals and assistants to make return of their respective doings completed, at the times herein prescribed; and further, as the returns are so made, to cause the same to be classified and arranged in the best and most convenient manner for use, and lay

The Secretary of the Interior required to provide blanks, and distribute them to the marshals.

To be laid before Congress.

the same before Congress at the next session thereof. And to enable him the better to discharge these duties, he is hereby authorized and required to appoint a suitable and competent person as superintending clerk, who shall, under his direction, have the general management of matters appertaining thereto, with the privilege of franking and receiving, free of charge, all official documents and letters connected therewith; and the said Secretary shall also appoint such clerks and other officers as may be necessary, from time to time, for the efficient management of said service. And the compensation to be allowed and paid to the officers connected with the census office, shall be as follows: For the superintending clerk, two thousand five hundred dollars per annum in full for his services; and for other assistants and clerks, the compensation usually paid for similar services, to be fixed and allowed by the Secretary of the Interior. *Provided*, That no salary to a subordinate clerk under this section shall exceed the sum of one thousand dollars per annum. The blanks and preparatory printing for taking the census shall be prepared and executed under the direction of the Census Board; the other printing hereafter to be executed as Congress shall direct.

Superintending clerk and other officers authorized. Franking privilege. Salaries. Proviso. Blanks and printing.

Sec. 20. *And be it further enacted*, That for the purpose of carrying into effect this act, and defraying the preliminary expenses, there is hereby appropriated, out of any money in the treasury not otherwise appropriated, one hundred and fifty thousand dollars; out of which the said Secretary of the Interior may allow, to the person employed as secretary of the Census Board, a compensation after the rate of three thousand dollars per annum during the period he has been in their employ.

Appropriation. Salary of the Secretary of the Census Board.

Sec. 21. *And be it further enacted*, That whenever a marshal shall certify that an assistant has completed to his satisfaction, and made return of the subdivision confided to him, and shall also certify the amount of compensation to which, under the provisions of this act, such assistant is entitled, designating how much for each kind of service, the Secretary of the Interior shall thereupon cause one half of the sum so due to be paid to such assistant, and when the returns have been carefully examined for classification, if found executed in a manner satisfactory, then he shall also cause the other half to be paid. And he shall make payments in the manner and upon like conditions to the several marshals for their services.

The marshal to certify that the assistant has performed his duty.

Sec. 22. *And be it further enacted*, That the tables hereto annexed, and made part of this act, are numbered from one to six, inclusive.

Tables annexed part of the act.

Sec. 23. *And be it further enacted*, That if no other law be passed providing for the taking of the eighth, or any subsequent census of the United States, on or before the first day of January of any year, when, by the Constitution of the United States, any future enumeration of the inhabitants thereof is required to be taken, such census shall, in all things, be taken and completed according to the provisions of this act.

If no other law be passed for the taking of the census before the 1st of January of any year, required by the Constitution of the U. S., then the census to be taken according to this act.

Sec. 24. *And be it further enacted*, That from and after the third day of March, one thousand eight hundred and fifty-three, the House of Representatives shall be composed of two hundred and thirty-three members, to be apportioned among the several States in the manner directed in the next section of this act.

House of Representatives to consist of two hundred and thirty-three members.

Sec. 25. *And be it further enacted*, That so soon as the next and each subsequent enumeration of the inhabitants of the several States, directed by the Constitution of the United States to be taken, shall be completed and returned to the office of the Department of the Interior, it shall be the duty of the Secretary of the Interior to ascertain the aggregate representative population of the United States, by adding to the whole number of free persons in all the States, including those bound to service for a term of years, and excluding Indians not taxed, three fifths of all other persons; which aggregate population he shall divide by the number two hundred and thirty-three, and the prod-

Enumeration to be made, and apportionment declared, under the direction of the Secretary of the Interior.

And to enable authorized and superintending nanagement of inking and re- ters connected uch clerks and for the efficient to be allowed e, shall be as e hundred dol- assistants and es, to be fixed , That no sal- ed the sum of uratory printing nder the direc- to be executed

rpose of carry- xpenses, there y not otherwise it of which the nployed as sec- e of three thou- n their employ. marshal shall ion, and made ilso certify the ns of this act, ch kind of ser- se one half of ie returns have uted in a man- ialf to be paid. like conditions

iereto annexed, x, inclusive. law be passed it census of the iny year, when, numeration of census shall, in ions of this act. after the third ree, the House ind thirty-three in the manner

s the next and several States, be taken, shall artment of the terior to ascer- ited States, by tates, including ng Indians not population he , and the prod-

uct of such division, rejecting any fraction of an unit, if any such happen to remain, shall be the ratio, or rule of apportionment, of representatives among the several States under such enumeration; and the said Secretary of the Department of the Interior shall then proceed, in the same manner, to ascertain the representative population of each State, and to divide the whole number of the representative population of each State by the ratio already determined by him as above directed; and the product of this last division shall be the number of representatives apportioned to such State under the then last enumeration: *Provided*, That the loss in the number of members caused by the fractions remaining in the several States, on the division of the population thereof, shall be compensated for by assigning to so many States having the largest fractions, one additional member each for its fraction as may be necessary to make the whole number of representatives two hundred and thirty-three. *And provided, also*, That if, after the apportionment of the representatives under the next, or any subsequent census, a new State or States shall be admitted into the Union, the representative or representatives assigned to such new State or States shall be in addition to the number of representatives herein above limited; which excess of representatives over two hundred and thirty-three shall only continue until the next succeeding apportionment of representatives under the next succeeding census.

Proviso.

Further proviso.

Sec. 26. *And be it further enacted*, That when the Department of the Interior shall have apportioned the representatives, in the manner above directed, among the several States under the next or any subsequent enumeration of the inhabitants of the United States, he shall, as soon as practicable, made out and transmit, under the seal of his office, to the House of Representatives, a certificate of the number of members apportioned to each State under the then last enumeration; and shall likewise make out and transmit, without delay, to the executive of each State, a certificate, under his seal of office, of the number of members apportioned to such State, under such last enumeration.

Certificate of the number of members apportioned to be sent to each State and H. of Rep.

Sec. 27. *And be it further enacted*, That the Secretary of the Interior, in his instructions to the marshals, shall direct that the statistics in regard to all other descriptions of hemp not embraced in the denomination of dew and water-rotted, shall be taken and estimated in the returns.

Statistics in regard to hemp, besides dew and water-rotted, to be taken in the returns.

SCHEDULE 1.—Free Inhabitants *in*   *in the County of*   *, State of*   *, enumerated by me, on the*   *day of*   , 1850.   *Assistant.*

| Dwelling-houses numbered in the order of visitation. | Families numbered in the order of visitation. | Name of every person whose usual place of abode on the first day of June, 1850, was in this family. | Description. | | | Profession, occupation, or trade of each male person over 15 years of age. | Value of real estate owned. | Place of birth, naming the State, Territory, or country. | Married within the year. | Attended school within the year. | Persons over 20 years of age who cannot read and write. | Whether deaf and dumb, blind, insane, idiotic, pauper, or convict. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Age. | Sex. | Color. White, black, or mulatto. | | | | | | | |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 1 | | | | | | | | | | | | 1 |
| 2 | | | | | | | | | | | | 2 |

SCHEDULE 2. — Slave Inhabitants *in* *in the County of* , *State of* , *enumerated by me, on the* *day of* , 1850. *Assistant.*

| Name of slave owners. | Number of slaves. | Description. Age. | Sex. | Color. | Fugitives from the State. | Number manumitted. | Deaf and dumb, blind, insane, or idiotic. | Remarks. |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 1 | | | | | | | | 1 |
| 2 | | | | | | | | 2 |

SCHEDULE 3. — Productions of Agriculture *in* *in the County of* , *State of* , *during the year ending June 1st,* 1850, *as enumerated by me on the* *day of* , 1850.

| Name of owner, agent, or manager of the farm. | Acres of land. Improved. | Unimproved. | Cash value of farm. | Value of farming implements and machinery. | Live stock on hand, June 1, 1850. Horses. | Mules and Asses. | Working Oxen. | Milch Cows. | Other Cattle. | Sheep. | Swine. | The value of live stock. | The value of animals slaughtered during the year. | Produce during the year ending June 1st, 1850. Wheat, bushels of. | Rye, bushels of. | Indian Corn, bushels of. | Oats, bushels of. | Rice, pounds of. | Tobacco, pounds of. | Ginned Cotton, bales of 400 lbs. each. | Wool, pounds of. | Beans and Peas, bushels of. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 |

SCHEDULE 3. — Continued.

Produce during the year ending June 1, 1850. — Continued.

| Buckwheat, bushels of. | Barley, bushels of. | Potatoes. Irish, bushels of. | Sweet, bushels of. | Value of orchard products in dollars. | Wine, gallons of. | Value of produce of market garden. | Butter, pounds of. | Cheese, pounds of. | Hay, tons of. | Clover seed, bushels of. | Other grass seeds, bushels of. | Hops, pounds of. | Hemp. Dew-rotted, tons of. | Water-rotted, tons of. | Flax, pounds of. | Flaxseed, bushels of. | Silk Cocoons, pounds of. | Maple Sugar, pounds of. | Cane Sugar, hhds. of — of 1,000 lbs. | Molasses, gallons of. | Honey and Beeswax, pounds of. | Value of home-made manufactures. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 |

ER-91

f , State of
Assistant.

| and blind, e, or tic. | REMARKS. |
|---|---|
| | 9 |
| | 1 |
| | 2 |

he County of ,
erated by me on the

the year ending
st, 1850.

| Oats, bushels of. | Rice, pounds of. | Tobacco, pounds of. | Ginned Cotton, bales of 400 lbs. each. | Wool, pounds of. | Beans and Peas, bushels of. |
|---|---|---|---|---|---|
| 18 | 19 | 20 | 21 | 22 | 23 |

ntinued.

| Cane Sugar, hhds. of — of 1,000 lbs. | Molasses, gallons of. | Honey and Beeswax, pounds of. | Value of home-made manufactures. |
|---|---|---|---|
| 43 | 44 | 45 | 46 |

SCHEDULE 4. — Products of Industry *in in the County of , State of , during the year ending June 1, 1850, as enumerated by me.*
*Assistant.*

| Name of Corporation, Company, or Individual, producing articles to the annual value of $500. | Name of business, manufacture, or product. | Capital invested in real and personal estate in the business. | Raw material used, including fuel. | | | Kind of motive power, machinery, structure, or resource. | Average No. of hands employed. | | Wages. | | Annual product. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Quantities. | Kinds. | Values. | | Male. | Female. | Average monthly cost of male labor. | Average monthly cost of female labor. | Quantities. | Kinds. | Values. |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| | | | | | | | | | | | | | |

SCHEDULE 5. — Social Statistics *of , in the County of , and State of , compiled by me.*
*Assistant.*

| Name of town, county, or city. | Aggregate valuation of real and personal estate. | Aggregate amount of taxes assessed. | Public schools. |
|---|---|---|---|
| | Real estate . . $<br>Person'l estate<br><br>Total . . . $<br><br>How valued?<br><br>True valuat'n $ | State . . . . . $<br>County . . .<br>Parish . . . .<br>Town . . . . .<br><br>Total . . . $<br><br>Road tax $<br><br>How paid? | No. colleges.<br>Do. academies.<br>Do. free schools.<br>Do. other schools.<br>Do. school-houses.<br>Amount of money raised by tax for schools last year, $<br>Raised in other ways for schools last year, $<br>Received from public funds for schools last year, $ |

SCHEDULE 5. — Continued.

| Public libraries. | | | Periodicals, including newspapers. | | | | Seasons. |
|---|---|---|---|---|---|---|---|
| | No. | Vols. | Name. | Class. | How often published. | Number of circulation. | Has this season produced average crops? |
| Social.<br>Colleges.<br>Academies.<br>Public schools.<br>Sunday schools. | | | | | | | What crops are short?<br><br>To what extent?<br><br>What is the average per year? |

Case 2:22-cv-00172 ECF No. 1-10 filed 07/18/22 PageID.82 Page 9 of 9

SCHEDULE 5. — Continued.

| Public paupers. | Criminals. | Cost of labor. | Religious worship. |
|---|---|---|---|
| Whole number of paupers supported during the past y'r. | Number convicted of crime during year ending June 1, '50. | Av'ge wages to farm hand per month, hired by the year and boarded, $ | No. of churches. |
| Number supported on the 1st day of June. | In prison on the 1st June, 1850. | Average wages of a day laborer, without board, $ | |
| | | With board, $ | No. of persons each will accommodate. |
| Native { White. Black. | Native { White. Black. | Average payment to a carpenter per day, without board, $ | |
| Foreign. | Foreign. | Average wages to a female domestic per week, without board, $ | |
| Cost of supporting paupers during last year. | | Average price of board to a laboring man per week, $ | Value of churches, $ |

SCHEDULE 6. — Persons who died *during the year ending* 1st *June*, 1850, *in the of , in the County of , and State of , enumerated by me. Assistant.*

| Name of every person who died during the year ending 1st June, 1850, whose usual place of abode at the time of his death was in this family. | Description. | | | | Married or widowed. | Place of birth, naming the State, Territory, or country. | The month in which the person died. | Profession, occupation, or trade. | Disease, or cause of death. |
|---|---|---|---|---|---|---|---|---|---|
| | Age. | Sex. | Color. — White, black, or mulatto. | Free or slave. | | | | | |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| | | | | | | | | | |

Approved, May 23, 1850.

---

May 23, 1850.

1837, ch. 3.

Chap. XII. — *An Act supplementary to the Act entitled "An Act supplementary to the Act entitled 'An Act establishing a Mint, and regulating the Coins of the United States.'"*

To enable the mint and branch mints to make returns to depositors, etc., the President is authorized to direct transfers of public money.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That, for the purpose of enabling the mint and branch mints of the United States to make returns to depositors with as little delay as possible, it shall be lawful for the President of the United States, when the state of the treasury shall admit thereof, to direct transfers to be made from time to time to the mint and branch mints for such sums of public money as he shall judge convenient and necessary, out of which those who bring bullion to the mint may be paid the value thereof, as soon as practicable after this value has been ascertained; that no bullion so deposited shall become the property of the United States; that no dis-

for the ports of entry for the collection districts of Puget's Sound and Umpqua, in the Territory of Oregon, upon receiving satisfactory information as to the best location for said ports, instead of the places now established by law in said districts respectively.

Pay of collector at Astoria.

Sec. 2. *And be it further enacted,* That the annual compensation of the collector at Astoria, in the collection district of Oregon, in said Territory, be, and the same is hereby fixed at the sum of three thousand dollars, including the fees of his office, commencing on the first day of July, in the year one thousand eight hundred and fifty; and in no event shall he be allowed a greater amount than said sum of three thousand dollars, so including the present fees of his office as aforesaid.

Approved, July 21, 1852.

---

July 30, 1852.

1850, ch. 11.

Chap. LXXIV.—*An Act supplementary to "An Act providing for the taking of the seventh and subsequent Censuses of the United States, and to fix the number of the Members of the House of Representatives, and provide for their future Apportionment among the several States," approved twenty-third May, eighteen hundred and fifty.*

Apportionment of Representatives to Congress.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Interior proceed forthwith to apportion two hundred thirty-three representatives among the several States, in accordance with the provisions contained in the twenty-fifth section of the act of twenty-third May, eighteen hundred and fifty, and according to the returns of population which have been completed and returned to the Census-Office in the Department of the Interior. And, it being made to appear that the returns of the population of California are incomplete, it is further enacted, that said State shall retain the number of representatives prescribed by the act of admission thereof into the Union until a new apportionment, and for this purpose the whole number of representatives is hereby increased to two hundred thirty-four until such apportionment.

Provision in case of loss, &c., of returns, for a new enumeration.

Sec. 2. *And be it further enacted,* That if, at any future decennial enumeration of the inhabitants of the United States, the census of any district or subdivision in the United States shall have been improperly taken, or if the returns of any district or subdivision shall be accidentally lost or destroyed, the Secretary of the Interior shall have power to order a new enumeration of such district or subdivision.

Act of 1850, ch. 11, sec. 20, amended.

Sec. 3. *And be it further enacted,* That the twentieth section of the said act be amended by striking out the words "has been" from the last line, and inserting the words "may necessarily be" in lieu thereof.

Approved, July 30, 1852.

---

July 30, 1852.

Chap. LXXV.—*An Act to establish additional Land Districts in the State of Wisconsin.*

Stevens's Point land district, constituted in Wisconsin.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That so much of the public lands of the United States, in the State of Wisconsin, as lies within the following boundaries, to wit:—commencing at the southwest corner of township fifteen, north of range two, east of the fourth principal meridian, thence running due east to the southeast corner of township fifteen, north of range eleven, east of the fourth principal meridian, thence north along said range line to the north line of the State of Wisconsin, thence westerly along said north line to the line between ranges one and two, east of the fourth principal meridian, thence south to the place of beginning, shall be formed into a new land district, to be called the Stevens Point Land District, and for the sale of the public lands within the district hereby constituted, a land-office

Provisions for a land-office at Stevens's Point.

year from date or earlier, at the option of the Government, and shall bear interest at the rate of six per centum per annum.

Approved, March 1, 1862.

---

Chap. XXXVI. — *An Act fixing the Number of the House of Representatives from and after the third March, eighteen hundred and sixty-three.*

March 4, 1862.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That from and after the third day of March, eighteen hundred and sixty-three, the number of members of the House of Representatives of the Congress of the United States shall be two hundred and forty-one; and the eight additional members shall be assigned one each to Pennsylvania, Ohio, Kentucky, Illinois, Iowa, Minnesota, Vermont, and Rhode Island.

Number of members of House of Representatives.

Approved, March 4, 1862.

---

Chap. XXXVII. — *An Act to provide for the Appointment of additional Clerks in the Office of the Assistant Treasurer at New York, and for other Purposes.*

March 6, 1862.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Assistant Treasurer of the United States at New York be, and he hereby is, authorized to appoint, from time to time, by and with the consent and approbation of the Secretary of the Treasury, such other clerks, messengers, and watchmen, in addition to those already employed by him, as the exigencies of the public business may require, at rates of compensation to be fixed by the Secretary of the Treasury: *Provided,* That such rates shall in no case exceed those now allowed by law for the several persons similarly employed in the office of the said Assistant Treasurer. The compensation for such additional clerks, messengers, and watchmen, for the current and next fiscal year, shall be paid out of any moneys in the Treasury not otherwise appropriated. Estimates for compensation for such additional clerks, messengers, and watchmen, after the next fiscal year, shall be submitted by the Secretary of the Treasury with his annual estimates.

Assistant Treasurer at New York may appoint additional clerks, &c.

Compensation.

Estimates.

Sec. 2. *And be it further enacted,* That the said Assistant Treasurer of the United States at New York be, and he hereby is, further authorized to appoint, with the approbation of the Secretary of the Treasury, a competent person from among his clerks who shall be called the Deputy Assistant Treasurer of the United States. The said Deputy Assistant Treasurer, in addition to the duties performed by him and any others which he may be required to perform by the said Assistant Treasurer, is hereby authorized to witness the execution of any and all transfers of Government stock and powers of attorney, and sign all receipts for patent fees and bullion receipts, with like effect as if the same were witnessed and signed, respectively, by the said Assistant Treasurer in person. The said Deputy Assistant Treasurer shall receive an additional compensation of one thousand dollars per annum, to be paid out of any money in the Treasury not otherwise appropriated: *Provided,* That the total compensation received by him shall not exceed three thousand dollars per annum.

Deputy Assistant Treasurer at New York. Appointment.

Duties.

Compensation.

Sec. 3. *And be it further enacted,* That the sum of two thousand five hundred dollars be, and the same is hereby appropriated, out of any money in the Treasury not otherwise appropriated, for the purchase of blank checks for the use of the Sub-treasury.

Appropriation for blank checks for Sub-treasury.

Approved, March 6, 1862.

se 2:22-cv-00172 ECF No. 1-13 filed 07/18/22 PageID.85 Page 1 c

September; at Harrisonburg, on the Tuesday after the second Monday of April and October; and at Abingdon, on the Tuesday after the fourth Monday of May and October. And all recognizances, indictments, or other proceedings, civil or criminal, now pending in either of said courts, shall be entered and have day in court, and be heard and tried according to the times of holding said court, as herein provided.

See *Post*, p. 53.

Pending process.

Approved, February 1, 1872.

---

February 2, 1872.

CHAP. XI.—*An Act for the Apportionment of Representatives to Congress among the several States according to the ninth Census.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That from and after the third day of March, eighteen hundred and seventy-three, the House of Representatives shall be composed of two hundred and eighty-three members, to be apportioned among the several States in accordance with the provisions of this act, that is to say: to the State of Maine, five; to the State of New Hampshire, two; to the State of Vermont, two; to the State of Massachusetts, eleven; to the State of Rhode Island, two; to the State of Connecticut, four; to the State of New York, thirty-two; to the State of New Jersey, seven; to the State of Pennsylvania, twenty-six; to the State of Delaware, one; to the State of Maryland, six; to the State of Virginia, nine; to the State of North Carolina, eight; to the State of South Carolina, five; to the State of Georgia, nine; to the State of Alabama, seven; to the State of Mississippi, six; to the State of Louisiana, five; to the State of Ohio, twenty; to the State of Kentucky, ten; to the State of Tennessee, nine; to the State of Indiana, twelve; to the State of Illinois, nineteen; to the State of Missouri, thirteen; to the State of Arkansas, four; to the State of Michigan, nine; to the State of Florida, one; to the State of Texas, six; to the State of Iowa, nine; to the State of Wisconsin, eight; to the State of California, four; to the State of Minnesota, three; to the State of Oregon, one; to the State of Kansas, three; to the State of West Virginia, three; to the State of Nevada, one; to the State of Nebraska, one: *Provided*, That if, after such apportionment shall have been made, any new State shall be admitted into the Union, the Representative or Representatives of such new State shall be additional to the number of two hundred and eighty-three herein limited.

Number of members of the House of Representatives after March 3, 1873, and how apportioned;

See 1872, ch. 239. *Post*, p. 192.

in new States afterwards admitted.

See 1872, ch. 139. *Post*, p. 61.

Sec. 2. That in each State entitled under this law to more than one Representative, the number to which said States may be entitled in the forty-third, and each subsequent Congress, shall be elected by districts composed of contiguous territory, and containing as nearly as practicable an equal number of inhabitants, and equal in number to the number of Representatives to which said States may be entitled in Congress, no one district electing more than one Representative: *Provided*, That in the election of Representatives to the forty-third Congress in any State which by this law is given an increased number of Representatives, the additional Representative or Representatives allowed to such State may be elected by the State at large, and the other Representatives to which the State is entitled by the districts as now prescribed by law in said State, unless the legislature of said State shall otherwise provide before the time fixed by law for the election of Representatives therein.

Election of members of the forty-third Congress, &c.;

of the additional representatives in States entitled thereto.

1872, ch. 253. *Post*, p. 195.

Sec. 3. That the Tuesday next after the first Monday in November, in the year eighteen hundred and seventy-six, is hereby fixed and established as the day, in each of the States and Territories of the United States, for the election of Representatives and Delegates to the forty-fifth Congress; and the Tuesday next after the first Monday in November, in every second year thereafter, is hereby fixed and established as the day for the election, in each of said States and Territories, of Representatives and Delegates to the Congress commencing on the fourth day of March next thereafter.

Day established for the election of representatives, &c., to the forty-fifth Congress;

to subsequent Congresses.

Sec. 4. That if, upon trial, there shall be a failure to elect a Representative or Delegate in Congress in any State, District, or Territory, upon the day hereby fixed and established for such election, or if, after any such election, a vacancy shall occur in any such State, District, or Territory, from death, resignation, or otherwise, an election shall be held to fill any vacancy caused by such failure, resignation, death, or otherwise, at such time as is or may be provided by law for filling vacancies in the State or Territory in which the same may occur.

Elections to fill vacancies. See 1872, ch. 139. *Post*, p. 61.

Sec. 5. That no State shall be hereafter admitted to the Union without having the necessary population to entitle it to at least one Representative according to the ratio of representation fixed by this bill.

No State to be admitted to the Union without what population.

Sec. 6. That should any State, after the passage of this act, deny or abridge the right of any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, to vote at any election named in the amendments to the Constitution, article fourteen, section two, except for participation in the rebellion or other crime, the number of Representatives apportioned in this act to such State shall be reduced in the proportion which the number of such male citizens shall have to the whole number of male citizens twenty-one years of age in such State.

Number of representatives apportioned to any State to be proportionally reduced, if the right to vote is denied or abridged, except, &c.

Approved, February 2, 1872.

---

CHAP. XII.—*An Act to authorize the Payment of duplicate Checks of disbursing Officers.*

Feb. 2, 1872.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That in place of original checks, when lost, stolen, or destroyed, disbursing officers and agents of the United States are hereby authorized, after the expiration of six months from the date of such checks, and within three years from such date, to issue duplicate checks, and the treasurer, assistant treasurers, and designated depositaries of the United States are directed to pay such checks, drawn in pursuance of law by such officers or agents, upon notice and proof of the loss of the original check or checks, under such regulations in regard to their issue and payment, and upon the execution of such bonds, with sureties, to indemnify the United States, as the Secretary of the Treasury shall prescribe: *Provided*, That this act shall not apply to any check exceeding in amount the sum of one thousand dollars.

Duplicate checks may be issued by disbursing officers in place of original checks lost, &c., after, &c.: to be paid, &c.

Limit to amount.

Sec. 2. That in case the disbursing officer or agent by whom such lost, destroyed, or stolen original check was issued, be dead, or no longer in the service of the United States, it shall be the duty of the proper accounting officer, under such regulations as the Secretary of the Treasury shall prescribe, to state an account in favor of the owner of such original check for the amount thereof, and to charge such amount to the account of such officer or agent.

Provision in case the officer issuing the check be dead or not in office.

Approved, February 2, 1872.

---

CHAP. XIII.—*An Act to admit certain Machinery imported from foreign Countries free of Duty.*

Feb. 2, 1872.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the Calcasieu sulphur and mining company of New Orleans be, and is hereby, permitted to import, free of duty, under such rules and regulations as the Secretary of the Treasury shall prescribe, certain machinery and accompanying implements for the purpose of, and to be used only in, making a series of experiments in mining for sulphur in the parish of Calcasieu, in the State of Louisiana: *Provided*, That the value of such importation shall not exceed the sum of seventy-five thousand dollars, and that said machinery and implements be imported within one year from and after the passage of this act.

The Calcasieu sulphur, &c., company, may import free of duty certain machinery, &c., within one year.

Limit to value.

Approved, February 2, 1872.

term to use, and vend to others to use, said improvement in horse-powers so constructed or used.

Approved, May 29, 1872.

May 29, 1872.

CHAP. CCXXXV. — *An Act to increase the capital Stock and to extend the Works of the Washington Gas-Light Company.*

Washington gas-light company may increase its capital stock.

Provisos.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the capital stock of the Washington Gas-Light Company be, and the same is hereby, increased two hundred thousand dollars, with the privilege of increasing it not exceeding one million dollars, as the same may be required from time to time, for extending their works in the District of Columbia east of Rock Creek: *Provided, however,* That said increase of capital stock shall not be made from undivided profits of said company which have already accrued, or may hereafter accrue, but from capital actually paid in: *Provided also,* That said increased capital stock shall be subject to all the conditions of the charter of said Washington Gas-Light Company.

Approved, May 29, 1872.

May 30, 1872.

CHAP. CCXXXIX. — *An Act supplemental to an Act entitled "An Act for the Apportionment of Representatives to Congress among the several States according to the ninth Census."*

1872, ch. 10. *Ante*, p. 28.

One additional representative in Congress to each of certain States;

how may be elected to forty-third Congress.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That from and after the third day of March, eighteen hundred and seventy-three, the following States shall be entitled to one representative each in the Congress of the United States in addition to the number apportioned to such States by the act entitled "An act for the apportionment of representatives to Congress among the several States according to the ninth census," approved February second, eighteen hundred and seventy-two, to wit: New Hampshire, Vermont, New York, Pennsylvania, Indiana, Tennessee, Louisiana, Alabama, and Florida, and be elected by separate districts, as in said act directed: *Provided,* That in the election of representatives to the forty-third Congress only, in any State which by this law is given an increased number of representatives, the additional representatives allowed to such State may be elected by the State at large, unless the legislature of said State shall otherwise provide before the time fixed by law for the election of representatives therein.

Approved, May 30, 1872.

May 31, 1872.

CHAP. CCXL. — *An Act fixing the Rank of Professors of Mathematics in the United States Navy.*

Number and rank of professors of mathematics in the United States navy.

1871, ch. 117, § 9. Vol. xvi. p. 536.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the ninth section of the naval appropriation bill, approved March third, eighteen hundred and seventy-one, be amended by inserting, after the clause relating to the chaplains, the following clause:

There shall be three professors of mathematics, who shall have the relative rank of captain; four that of commander; and five that of lieutenant commander or lieutenant.

Approved, May 31, 1872.

May 31, 1872.

CHAP. CCXLI. — *An Act relating to the Creation of new Land Districts.*

When new land districts are made by, &c., business in original districts to

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That hereafter in case of the division of existing land districts by the erection of new ones, or by a change of boundaries by the President of the United States, all business in such original districts shall be entertained and transacted, without prej-

CHAP. 18.—An act in reference to the Trustees of the Lincoln Monument Association

Feb. 25, 1882.

Lincoln Monument Association. 15 Stat., 11.

Whereas, owing to the large number of Trustees named in the "Act to incorporate the Lincoln Monument Association" approved March thirtieth, eighteen hundred and sixty-seven, it proves to be impracticable for a majority of said Trustees to meet for the transaction of the business of said association: Therefore,

Five trustees a legal quorum.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That hereafter five of the Trustees of said association, whether named in said act, or subsequently appointed, shall constitute a legal quorum and may exercise all the powers conferred by law upon said association: *Provided*, That each of said trustees shall be notified by the President or Secretary twenty days in advance of any meeting of said trustees.

*Proviso.*

Approved, February 25, 1882.

---

CHAP. 19.—An act authorizing the Lancaster National Bank of Lancaster, Massachusetts, to change its location and name.

Feb. 25, 1882.

Lancaster National Bank, Lancaster, Mass., to change name and location.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the Lancaster National Bank of Lancaster, in the Commonwealth of Massachusetts, is hereby authorized to change its location to the town of Clinton, in the county of Worcester, in said Commonwealth, whenever the stockholders representing two-thirds of the capital stock of said bank, at a meeting for that purpose, determine to make such change; and the president and cashier shall execute a certificate, under the corporate seal of the bank, specifying such determination, and shall cause the same to be recorded in the office of the Comptroller of the Currency, and thereupon such change of location shall be effected, and the operations of discount and deposit of said bank shall be carried on in the said town of Clinton.

Liabilities, etc., not affected.

SEC. 2. That nothing in this act contained shall be so construed as in manner to release the said bank from any liabilities, or affect any action or proceeding in law in which said bank may be a party or interested; and when such change shall have been determined upon as aforesaid, notice thereof and of such change shall be published in two weekly papers in said county of Worcester not less than four weeks.

SEC. 3. That whenever the location of said bank shall have been changed from said town of Lancaster to said town of Clinton, in accordance with the first section of this act, its name shall be changed to the Lancaster National Bank of Clinton, Massachusetts, if the board of directors of said bank shall accept the new name by resolution of the board, and cause a copy of such resolution, duly authenticated, to be filed with the Comptroller of the Currency.

SEC. 4. That all the debts, demands, liabilities, rights, privileges, and powers of the Lancaster National Bank of Lancaster shall devolve upon the Lancaster National Bank of Clinton whenever such change of name is effected.

Approved, February 25, 1882.

---

CHAP. 20.—An act making an apportionment of Representatives in Congress among the several States under the tenth census.

Feb. 25, 1882.

Apportionment of Representatives in Congress among the States under the tenth census.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That after the third of March, eighteen hundred and eighty-three, the House of Representatives shall be composed of three hundred and twenty-five members, to be apportioned among the several States as follows:

Alabama, eight.
Arkansas, five.

California, six.
Colorado, one.
Connecticut, four.
Delaware, one.
Florida, two.
Georgia, ten.
Illinois, twenty.
Indiana, thirteen.
Iowa, eleven.
Kansas, seven.
Kentucky, eleven.
Louisiana, six.
Maine, four.
Maryland, six.
Massachusetts, twelve.
Michigan, eleven.
Minnesota, five.
Mississippi, seven.
Missouri, fourteen.
Nebraska, three.
Nevada, one.
New Hampshire, two.
New Jersey, seven.
New York, thirty-four.
North Carolina, nine.
Ohio, twenty-one.
Oregon, one.
Pennsylvania, twenty-eight.
Rhode Island, two.
South Carolina, seven.
Tennessee, ten.
Texas, eleven.
Vermont, two.
Virginia, ten.
West Virginia, four.
Wisconsin, nine.

Assignment to new States to be in addition.

SECTION TWO.—That whenever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and twenty-five.

Proviso.

Election of Representatives at large, when.

SECTION THREE.—That in each State entitled under this apportionment the number to which such State may be entitled in the Forty-eighth and each subsequent Congress shall be elected by Districts composed of contiguous territory, and containing as nearly as practicable an equal number of inhabitants, and equal in number to the Representatives to which such State may be entitled in Congress, no one District electing more than one Representative: *Provided*, That unless the Legislature of such State shall otherwise provide before the election of such Representatives shall take place as provided by law, where no change shall be hereby made in the representation of a State, the Representatives thereof to the Forty-eighth Congress shall be elected therein as now provided by law. If the number as hereby provided for shall be larger than it was before this change, then the additional Representative or Representatives allowed to said State under this apportionment may be elected by the State at large, and the other Representatives to which the State is entitled by the Districts as now prescribed by law in said State; and if the number hereby provided for shall in any State be less than it was before the change hereby made, then the whole number to such State hereby provided for shall be elected at large, unless the Legislatures of said States have provided or shall otherwise provide before the time fixed by law for the next election of Representatives therein.

All acts and parts of acts inconsistent herewith are hereby repealed.

Approved, February 25, 1882.

February 7, 1891.

**CHAP. 116.**—An act making an apportionment of Representatives in Congress among the several States under the Eleventh Census.

Number and apportionment of Representatives in Congress.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That after the third of March, eighteen hundred and ninety-three, the House of Representatives shall be composed of three hundred and fifty-six members, to be apportioned among the several States as follows:

Alabama, nine.
Arkansas, six.
California, seven.
Colorado, two.
Connecticut, four.
Delaware, one.
Florida, two.
Georgia, eleven.
Idaho, one.
Illinois, twenty-two.
Indiana, thirteen.
Iowa, eleven.
Kansas, eight.
Kentucky, eleven.
Louisiana, six.
Maine, four.
Maryland, six.
Massachusetts, thirteen.
Michigan, twelve.
Minnesota, seven.
Mississippi, seven.
Missouri, fifteen.
Montana, one.
Nebraska, six.
Nevada, one.
New Hampshire, two.
New Jersey, eight.
New York, thirty-four.
North Carolina, nine.
North Dakota, one.
Ohio, twenty-one.
Oregon, two.
Pennsylvania, thirty.
Rhode Island, two.
South Carolina, seven.
South Dakota, two.
Tennessee, ten.
Texas, thirteen.
Vermont, two.
Virginia, ten.
Washington, two.
West Virginia, four.
Wisconsin, ten.
Wyoming, one.

Representatives assigned to new States.

SEC. 2. That whenever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and fifty-six.

Election by districts, etc.

SEC. 3. That in each State entitled under this apportionment the number to which such State may be entitled in the Fifty-third and each subsequent Congress shall be elected by districts composed of contiguous territory and containing as nearly as practicable an equal number of inhabitants. The said districts shall be equal to the number of the Representatives to which such State may be entitled in Congress, no one district electing more than one Representative.

Election at large, of additional Representatives, etc.

Sec. 4. That in case of an increase in the number of Representatives which may be given to any State under this apportionment such additional Representative or Representatives shall be elected by the State at large, and the other Representatives by the districts now prescribed by law until the legislature of such State in the manner herein prescribed shall redistrict such State, and if there be no increase in the number of Representatives from a State the Representatives thereof shall be elected from the districts now prescribed by law until such State be redistricted as herein prescribed by the legislature of said State.

Repeal.

Sec. 5. That all acts and parts of acts inconsistent with this act are hereby repealed.

Approved, February 7, 1891.

---

February 7, 1891.

**CHAP. 117.**—An act to prohibit the sale of tobacco to minors under sixteen years of age in the District of Columbia.

District of Columbia.

Sale, etc., of tobacco to minors under sixteen years, prohibited.

Penalty.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That hereafter no person in the District of Columbia shall sell, give, or furnish any cigar, cigarette, or tobacco in any of its forms to any minor under sixteen years of age; and for each and every violation of this section the offender shall, on conviction, be fined not less than two dollars nor more than ten dollars, or be imprisoned for not less than five days nor more than twenty days.

Approved, February 7, 1891.

---

February 9, 1891.

**CHAP. 121.**—An act to authorize the Norfolk and Western Railroad Company to bridge the Tug Fork of the Big Sandy River at certain points, where the same forms the boundary line between the States of West Virginia and Kentucky.

Norfolk and Western Railroad Company may bridge Tug Fork of Big Sandy River, between West Virginia and Kentucky.

Location of bridges.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That it shall be lawful for the Norfolk and Western Railroad Company, a corporation existing under the laws of Virginia and West Virginia, to construct and maintain bridges and approaches thereto across the Tug Fork of the Big Sandy River at such points where the same forms the boundary line between the States of West Virginia and Kentucky as the said company may deem suitable for the passage of its road over the said fork of the Big Sandy River, subject to the approval of the Secretary of War.

Lawful structures and post routes.

Sec. 2. That any bridge or bridges authorized to be constructed under this act shall be lawful structures, and shall be recognized and known as post routes, and they shall enjoy all the rights and privileges of other post roads in the United States, upon which also no higher charge shall be made for the transmission over the same of the mails, or for through passengers or freight passing over said bridge or bridges and approaches, than the rate per mile paid for transportation over the railroads leading to said bridge or bridges; and the United States shall have the right of way for postal telegraph and telephone purposes without charges therefor across said bridge or bridges and approaches.

Postal telegraph, etc.

Security of navigation.

Said bridge or bridges shall be built and located under and subject to such regulations for the security of navigation as the Secretary of War shall prescribe; and to secure that object the said company or corporation shall submit to the Secretary of War, for his examination and approval, a design and drawings of the bridge or bridges and a map of the location or locations, giving, for the space of one

Maps, plans, etc.

and sixty to eighteen hundred and ninety-six in the enforcement of law and order, the care of the deaf, dumb, blind, and insane, and generally for the protection of life, liberty, and property in said county, and the establishment and maintenance of a government for the inhabitants thereof, or a fair estimate of the same.

Employees.

SEC. 4. That to enable him to execute the provisions of this Act the Secretary of the Interior is authorized to employ such persons and adopt such measures as to him may seem proper and necessary. He is also authorized to receive and consider duly certified copies of patents, deeds, conveyances, transcripts of court records, and certificates from any department of the Government of the United States or the State of Texas, under the seal thereof as to official records therein. He may also receive and consider depositions of witnesses, and in such cases the United States shall be represented by the Attorney-General thereof, or some person designated by him, and the State of Texas shall be represented by the attorney-general thereof, or some person designated by him; and these officials may appear and represent their respective governments before the Secretary of the Interior in all other matters provided for by this Act. He may also receive and consider any testimony taken by either party in said cause entitled The United States against The State of Texas, in the Supreme Court of the United States, reported in One hundred and sixty-second United States, page one, and may receive and consider any testimony which he may consider to be pertinent to the subject of such inquiry.

Testimony, etc.

Expenses of inquiry.

SEC. 5. That the sum of seven thousand five hundred dollars, or so much thereof as may be necessary, is hereby appropriated, out of any money in the Treasury not otherwise appropriated, to enable the Secretary of the Interior to properly care for the interests of the United States in making such investigation and in carrying out the purposes of this Act; and he shall report in detail to the Congress at the next session, or as soon thereafter as may be practicable: *Provided*, That the State of Texas shall defray the expenses of presenting its own case and claims.

Approved, January 15, 1901.

---

January 16, 1901.

**CHAP. 92.**—An Act To provide for the holding of the circuit and district courts of the United States for the eastern district of Arkansas.

Arkansas, eastern judicial district. Terms of court.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the regular terms of the circuit and district courts for the eastern district of Arkansas shall be held at the times and places as follows, to wit:

For the western division, at Little Rock on the first Monday in April and the third Monday in October;

For the eastern division, at Helena on the second Mondays in March and October;

For the northern division, at Batesville on the fourth Monday in May and the second Monday in December.

SEC. 2. That this Act shall take effect and be in force from and after its passage.

Approved, January 16, 1901.

---

January 16, 1901.

**CHAP. 93.**—An Act Making an apportionment of Representatives in Congress among the several States under the Twelfth Census.

House of Representatives to consist of 386 members.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That after the third day of March, nineteen hundred and three, the House of Representatives

—apportionment.

shall be composed of three hundred and eighty-six members, to be apportioned among the several States as follows: Alabama, nine; Arkansas, seven; California, eight; Colorado, three; Connecticut, five; Delaware, one; Florida, three; Georgia, eleven; Idaho, one; Illinois, twenty-five; Indiana, thirteen; Iowa, eleven; Kansas, eight; Kentucky, eleven; Louisiana, seven; Maine, four; Maryland, six; Massachusetts, fourteen; Michigan, twelve; Minnesota, nine; Mississippi, eight; Missouri, sixteen; Montana, one; Nebraska, six; Nevada, one; New Hampshire, two; New Jersey, ten; New York, thirty-seven; North Carolina, ten; North Dakota, two; Ohio, twenty-one; Oregon, two; Pennsylvania, thirty-two; Rhode Island, two; South Carolina, seven; South Dakota, two; Tennessee, ten; Texas, sixteen; Utah, one; Vermont, two; Virginia, ten; Washington, three; West Virginia, five; Wisconsin, eleven; and Wyoming, one.

Representatives from new States to be in addition.

Sec. 2. That whenever a new State is admitted to the Union the Representative or Representatives assigned to it shall be in addition to the number three hundred and eighty-six.

Districts.

Sec. 3. That in each State entitled under this apportionment, the number to which such State may be entitled in the Fifty-eighth and each subsequent Congress shall be elected by districts composed of contiguous and compact territory and containing as nearly as practicable an equal number of inhabitants. The said districts shall be equal to the number of the Representatives to which such State may be entitled in Congress, no one district electing more than one Representative.

Elections where increase of representatives under apportionment.

—no increase.

—diminished.

Sec. 4. That in case of an increase in the number of Representatives which may be given to any State under this apportionment such additional Representative or Representatives shall be elected by the State at large, and the other Representatives by the districts now prescribed by law until the legislature of such State in the manner herein prescribed, shall redistrict such State; and if there be no increase in the number of Representatives from a State the Representatives thereof shall be elected from the districts now prescribed by law until such State be redistricted as herein prescribed by the legislature of said State; and if the number hereby provided for shall in any State be less than it was before the change hereby made, then the whole number to such State hereby provided for shall be elected at large, unless the legislatures of said States have provided or shall otherwise provide before the time fixed by law for the next election of Representatives therein.

Repeal.

Sec. 5. That all Acts and parts of Acts inconsistent with this Act are hereby repealed.

Approved, January 16, 1901.

---

January 19, 1901.

**CHAP. 101.**—An Act Relating to the accounts of United States marshals and clerks of the district courts of the Territory of Utah.

Utah Territory. Clerks and marshals liable only for fees earned in United States cases.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the United States marshals and the clerks of the district courts of the Territory of Utah prior to its admission to the Union as a State shall be held accountable only for fees earned in United States cases, in accordance with a decision of the Attorney-General dated December second, eighteen hundred and ninety-one, and all unclosed accounts of such officers shall be settled and closed accordingly, and the fees earned in United States cases, and withheld from them, shall be paid to them out of any money not otherwise appropriated.

Approved, January 19, 1901.

Case 2:22-cv-00172 ECF No. 1-18 filed 07/18/22 PageID.94 Page 1 of 2

been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed; or to any article manufactured in bonded warehouse and exported under any provision of law: *And provided further*, That when manufactured tobacco which has been exported without payment of internal-revenue tax shall be reimported it shall be retained in the custody of the collector of customs until internal-revenue stamps in payment of the legal duties shall be placed thereon: *And provided further*, That cattle, horses, sheep, and other domestic animals straying across the boundary line into any foreign country or driven across such boundary line by the owners for temporary pasturage purposes only, together with their offspring, shall be dutiable, unless brought back to the United States within six months, under regulations to be prescribed by the Secretary of the Treasury, in accordance with the provisions of paragraph four hundred and ninety-two."

Tobacco, to be taxed.

Animals temporarily crossing boundary.

Restriction.
Vol. 36, p. 72, amended.

Approved, July 27, 1911.

---

August 8, 1911.
[H. R. 2983.]
[Public, No. 5.]

**CHAP. 5.**—An Act For the apportionment of Representatives in Congress among the several States under the Thirteenth Census.

Representatives in Congress.
Apportionment to States under Thirteenth Census.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That after the third day of March, nineteen hundred and thirteen, the House of Representatives shall be composed of four hundred and thirty-three Members, to be apportioned among the several States as follows:

Alabama, ten.
Arkansas, seven.
California, eleven.
Colorado, four.
Connecticut, five.
Delaware, one.
Florida, four.
Georgia, twelve.
Idaho, two.
Illinois, twenty-seven.
Indiana, thirteen.
Iowa, eleven.
Kansas, eight.
Kentucky, eleven.
Louisiana, eight.
Maine, four.
Maryland, six.
Massachusetts, sixteen.
Michigan, thirteen.
Minnesota, ten.
Mississippi, eight.
Missouri, sixteen.
Montana, two
Nebraska, six.
Nevada, one.
New Hampshire, two.
New Jersey, twelve.
New York, forty-three.
North Carolina, ten.
North Dakota, three.
Ohio, twenty-two.
Oklahoma, eight.
Oregon, three.
Pennsylvania, thirty-six.

Rhode Island, three.
South Carolina, seven.
South Dakota, three.
Tennessee, ten.
Texas, eighteen.
Utah, two.
Vermont, two.
Virginia, ten.
Washington, five.
West Virginia, six.
Wisconsin, eleven.
Wyoming, one.

Arizona and New Mexico when admitted as States.
*Post*, p. 39.

SEC. 2. That if the Territories of Arizona and New Mexico shall become States in the Union before the apportionment of Representatives under the next decennial census they shall have one Representative each, and if one of such Territories shall so become a State, such State shall have one Representative, which Representative or Representatives shall be in addition to the number four hundred and thirty-three, as provided in section one of this Act, and all laws and parts of laws in conflict with this section are to that extent hereby repealed.

Vol. 36, p. 561.

Assignment of districts.

SEC. 3. That in each State entitled under this apportionment to more than one Representative, the Representatives to the Sixty-third and each subsequent Congress shall be elected by districts composed of a contiguous and compact territory, and containing as nearly as practicable an equal number of inhabitants. The said districts shall be equal to the number of Representatives to which such State may be entitled in Congress, no district electing more than one Representative.

Elections.
Additional Representatives at large.

SEC. 4. That in case of an increase in the number of Representatives in any State under this apportionment such additional Representative or Representatives shall be elected by the State at large and the other Representatives by the districts now prescribed by law until such State shall be redistricted in the manner provided by the laws thereof and in accordance with the rules enumerated in section three of this Act; and if there be no change in the number of Representatives from a State, the Representatives thereof shall be elected from the districts now prescribed by law until such State shall be redistricted as herein prescribed.

Present number.

Nominations for Representatives at large.

SEC. 5. That candidates for Representative or Representatives to be elected at large in any State shall be nominated in the same manner as candidates for governor, unless otherwise provided by the laws of such State.

Approved, August 8, 1911.

---

August 10, 1911.
[S. 1149.]
[Public, No. 6.]

CHAP. 6.—An Act Permitting the Minneapolis, Saint Paul and Sault Sainte Marie Railway Company to construct, maintain, and operate a railroad bridge across the Saint Croix River between the States of Wisconsin and Minnesota.

Saint Croix River.
Minneapolis, Saint Paul and Sault Sainte Marie Railway Company may bridge, between Burnett County, Wis., and Pine County, Minn.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the consent of Congress is hereby granted to the Minneapolis, Saint Paul and Sault Sainte Marie Railway Company, a railway corporation organized under the laws of the States of Wisconsin and Minnesota, to construct, maintain, and operate a railroad bridge and approaches thereto, across the Saint Croix River, at a point suitable to the interests of navigation, from a point on the south bank of said river in lot one, section twenty-one, township forty-one north, range sixteen west, in Burnett County, Wisconsin, to a point on the north bank of said river in lot one, section twenty-one, township forty-one north, range sixteen west, in Pine

...ck has

Case 2:22-cv-00172 ECF No. 1-19 filed 07/18/22 PageID.96 Page 1 of 7

**CHAP. 28.**—An Act To provide for the fifteenth and subsequent decennial censuses and to provide for apportionment of Representatives in Congress.

June 18, 1929.
[S. 312.]
[Public, No. 13.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That a census of population, agriculture, irrigation, drainage, distribution, unemployment, and mines shall be taken by the Director of the Census in the year 1930 and every ten years thereafter. The census herein provided for shall include each State, the District of Columbia, Alaska, Hawaii, and Porto Rico. A census of Guam, Samoa, and the Virgin Islands shall be taken in the same year by the respective governors of said islands and a census of the Panama Canal Zone by the Governor of the Canal Zone, all in accordance with plans prescribed or approved by the Director of the Census.

Fifteenth Census.
Census of population, etc., to be taken in 1930 and every ten years thereafter.
Territorial extent.

SEC. 2. That the period of three years beginning the 1st day of January in the year 1930 and every tenth year thereafter shall be known as the decennial census period, and the reports upon the inquiries provided for in said section shall be completed within such period: *Provided*, That the tabulation of total population by States as required for the apportionment of Representatives shall be completed within eight months from the beginning of the enumeration and reported by the Director of the Census to the Secretary of Commerce and by him to the President of the United States.

Census periods designated.
*Proviso.*
Completion of population tabulation.

SEC. 3. That there may be employed in the Bureau of the Census, in addition to the force provided for by the appropriation Act for the fiscal year immediately preceding the decennial census period, two assistant directors, one of whom shall act as executive assistant to the director, performing, in addition, the duties usually assigned to the chief clerk, and the other, who must be a person of known and tried experience in statistical work, as technical and statistical advisor; these officials to be appointed by the Secretary of Commerce, upon the recommendation of the Director of the Census, in conformity with the civil service laws and rules.

Additional executive force to be employed in the Bureau.

In addition to the force hereinbefore provided for, there may be appointed by the Director of the Census, without regard to the provisions of the Classification Act, for any period not extending beyond the decennial census period, at rates of compensation to be fixed by him, as many temporary employees in the District of Columbia as may be necessary to meet the requirements of the work: *Provided*, That census employees who may be transferred to any such temporary positions shall not lose their permanent civil-service status by reason of such transfer: *Provided further*, That hereafter in making appointments to clerical and other positions in the executive branch of the Government in the District of Columbia or elsewhere preference shall be given to honorably discharged soldiers, sailors, and marines, and widows of such, and to the wives of injured soldiers, sailors, and marines, who themselves are not qualified, but whose wives are qualified, to hold such positions: *Provided further*, That all such temporary appointments shall be made in conformity with the civil service laws and rules: *Provided further*, That in making any appointments under this Act to positions in the District of Columbia or elsewhere, preference shall be given to persons discharged under honorable conditions from the military or naval forces of the United States who served in such forces during the time of war and were disabled in the line of duty, to their widows, and to their wives if the husband is not qualified to hold such positions.

Temporary employees in the District for census period.
*Provisos.*
Civil service status retained of regular employees transferred.
Preference for Army and Navy service in government clerical, etc., appointments.
Temporary appointments under civil service laws.
Preference to disabled military or naval war veterans, etc.

Appointment of special agents, supervisors, etc.
Vol. 32, p. 51.
Enumerators.

That special agents, supervisors, supervisors' clerks, enumerators, and interpreters may be appointed by the Director of the Census to carry out the provisions of this Act and of the Act to provide for a permanent Census Office, approved March 6, 1902, and Acts amendatory thereof or supplemental thereto, such appointments to be made without regard to the Civil Service laws or the Classification Act of 1923, as amended, except that such special agents shall be appointed in accordance with the Civil Service laws. The Director of the Census may delegate to the supervisors authority to appoint enumerators.

For Army, Navy, etc., posts.

The enlisted men and officers of the Army, Navy, and Marine Corps may be appointed and compensated for the enumeration of Army, Navy, Marine, and other military posts.

Field work by executive departments, etc., employees.

Employees of the Department of Commerce and other departments and independent offices of the Government may, with the consent of the head of the respective department or office, be employed and compensated for field work in connection with the Fifteenth Decennial Census.

Compensation of appointees.

The special agents, supervisors, supervisors' clerks, enumerators, and interpreters thus appointed shall receive compensation at rates to be fixed by the Director of the Census:

*Provisos.*
Special agents.

*Provided*, That special agents appointed at a per diem rate shall not be paid in excess of $8 per diem except as hereinafter provided; and that the compensation on a piece-price basis may be fixed without limitation as to the amount earned per diem:

Additional special agents during census period.

*Provided further*, That during the decennial census period the Director of the Census may fix the compensation of not to exceed twenty-five special agents at an amount not to exceed $12 per diem:

Detail of permanent employees as supervisors or enumerators.

*Provided further*, That permanent employees of the Census Office and special agents may be detailed, when necessary, to act as supervisors or enumerators, such permanent employees and special agents to have like authority with and perform the same duties as the supervisors or enumerators in respect to the subjects committed to them under this Act.

Inquiries restricted to designated subjects.

SEC. 4. That the fifteenth and subsequent censuses shall be restricted to inquiries relating to population, to agriculture, to irrigation, to drainage, to distribution, to unemployment, and to mines.

Schedules.

The number, form, and subdivision of the inquiries in the schedules used to take the census shall be determined by the Director of the Census, with the approval of the Secretary of Commerce.

Duties of supervisors.

SEC. 5. That each supervisor shall perform such duties as may be imposed upon him by the Director of the Census in the enforcement of this Act, and the duties thus imposed shall be performed in any and all particulars in accordance with the orders and instructions of the Director of the Census;

Duties of enumerators.

that each enumerator or other employee detailed to serve as enumerator shall be charged with the collection in his subdivision of the facts and statistics called for on the population and agricultural schedules, and such other schedules as the Director of the Census may determine shall be used by him in connection with the census.

Personal visits, etc.

It shall be the duty of each enumerator to visit personally each dwelling house in his subdivision, and each family therein, and each individual living out of a family in any place of abode, and by inquiry made of the head of each family, or of the member thereof deemed most competent and trustworthy, or of such individual living out of a family, to obtain each and every item of information and all particulars required for the census; and in case no person shall be found at the usual place of abode of such family, or individual living out of a family, competent to answer the inquiries, then it shall be lawful for the census employee to obtain the required information as nearly as may be practicable from the family or families or person or persons living nearest to such place of abode who may be competent to answer such inquiries.

Census of population and agriculture to be taken as of April 1.

SEC. 6. That the census of the population and of agriculture required by section 1 of this Act shall be taken as of the 1st day of April, and it shall be the duty of each enumerator to commence the enumeration of his district on the day following unless the Director of the Census in his discretion shall change the date of commencement of the enumeration in said district by reason of climatic or other conditions which would materially interfere with the proper conduct of the work; but in any event it shall be the duty of each enumerator to prepare the returns hereinbefore required to be made and to forward the same to the supervisor of his district within thirty days from the commencement of the enumeration of his district: *Provided*, that in any city having two thousand five hundred inhabitants or more under the preceding census the enumeration of the population shall be completed within two weeks from the commencement thereof.

Returns in 30 days.

*Proviso.* To be completed within two weeks, in certain cities.

Punishment for receiving fee, etc., to secure appointments.

SEC. 7. That if any person shall receive or secure to himself any fee, reward, or compensation as a consideration for the appointment or employment of any person as supervisor, enumerator, or clerk, or other employee, or shall in any way receive or secure to himself any part of the compensation paid to any supervisor, enumerator, clerk, or other employee, he shall be deemed guilty of a felony, and upon conviction thereof shall be fined not more than $3,000 or be imprisoned not more than five years, or both.

Punishable acts of census employees. Refusal or neglect of duties.

SEC. 8. That any supervisor, supervisor's clerk, enumerator, interpreter, special agent, or other employee who, having taken and subscribed the oath of office, shall, without justifiable cause, neglect or refuse to perform the duties enjoined on him by this Act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding $500; or if he shall, without the authority of the Director of the Census, publish or communicate any information coming into his possession by reason of his employment under the provision of this Act, or the Act to provide for a permanent Census Office or Acts amendatory thereof or supplemental thereto, he shall be guilty of a felony and upon conviction thereof shall be fined not to exceed $1,000 or be imprisoned not to exceed two years, or both so fined and imprisoned in the discretion of the court; or if he shall willfully and knowingly swear or affirm falsely as to the truth of any statement required to be made or subscribed by him under oath by or under authority of this Act or of the Act to provide for a permanent Census Office or Acts amendatory thereof or supplemental thereto, he shall be deemed guilty of perjury, and upon conviction thereof shall be fined not exceeding $2,000 or imprisoned not exceeding five years, or both; or if he shall willfully and knowingly make a false certificate or a fictitious return he shall be guilty of a felony, and upon conviction of either of the last-named offenses he shall be fined not exceeding $2,000 or be imprisoned not exceeding five years, or both; or if any person who is or has been an enumerator shall knowingly or willfully furnish or cause to be furnished, directly or indirectly, to the Director of the Census or to any supervisor or other employee of the census any false statement or false information with reference to any inquiry for which he was authorized and required to collect information, he shall be guilty of a felony, and upon conviction thereof shall be fined not exceeding $2,000 or be imprisoned not exceeding five years, or both.

Unauthorized publishing information.

Swearing to false statements.

Making false certificates or fictitious returns.

Enumerators knowingly furnishing false information to Director, etc.

Correct answers to census schedules required of all persons.

SEC. 9. That it shall be the duty of all persons over eighteen years of age when requested by the Director of the Census, or by any supervisor, enumerator, or special agent, or other employee of the Census Office, acting under the instructions of the said director, to answer correctly, to the best of their knowledge, all questions on the census schedules applying to themselves and to the families to which they

belong or are related, and to the farm or farms of which they or their families are the occupants; and any person over eighteen years of age who, under the conditions hereinbefore stated, shall refuse or willfully neglect to answer any of these questions, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding $100 or be imprisoned not exceeding sixty days, or both, and any such person who shall willfully give answers that are false shall be fined not exceeding $500 or be imprisoned not exceeding one year, or both.

Punishment for refusal, etc.

Intentionally rendering inaccurate enumeration of population to census employees, unlawful.

And it is hereby made unlawful for any individual, committee, or other organization of any kind whatsoever, to offer or render to any supervisor, supervisor's clerk, enumerator, interpreter, special agent, or other officer or employee of the Census Office engaged in making an enumeration of population, either directly or indirectly, any suggestion, advice, or assistance of any kind, with the intent or purpose of causing an inaccurate enumeration of population to be made, either as to the number of persons resident in any district or community, or in any other respect; and any individual, or any officer or member of any committee or other organization of any kind whatsoever, who directly or indirectly offers or renders any such suggestion, advice, information, or assistance, with such unlawful intent or purpose, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding $1,000, or be imprisoned for not exceeding one year, or both.

Punishment for.

Hotels, etc., required to furnish names of all occupants.

And it shall be the duty of every owner, proprietor, manager, superintendent, or agent of a hotel, apartment house, boarding or lodging house, tenement, or other building, when requested by the Director of the Census, or by any supervisor, enumerator, special agent, or other employee of the Census Office, acting under the instructions of the said director, to furnish the names of the occupants of said hotel, apartment house, boarding or lodging house, tenement, or other building, and to give thereto free ingress and egress therefrom to any duly accredited representative of the Census Office, so as to permit the collection of statistics for census purposes, including the proper and correct enumeration of all persons having their usual place of abode in said hotel, apartment house, boarding or lodging house, tenement, or other building; and any owner, proprietor, manager, superintendent, or agent of a hotel, apartment house, boarding or lodging house, tenement, or other building who shall refuse or willfully neglect to give such information or assistance under the conditions hereinbefore stated shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding $500.

Access to census representatives.

Punishment for refusal, etc.

Officials of companies, etc., required to answer all questions in census schedules relating to business thereof, etc.

SEC. 10. That it shall be the duty of every owner, official, agent, person in charge, or assistant to the person in charge, of any company, business, institution, establishment, religious body, or organization of any nature whatsoever, to answer completely and correctly to the best of his knowledge all questions relating to his respective company, business, institution, establishment, religious body, or other organization, or to records or statistics in his official custody, contained on any census schedule prepared by the Director of the Census under the authority of this Act, or of the Act to provide for a permanent Census Office, approved March 6, 1902, or of Acts amendatory thereof or supplemental thereto; and any person violating the provisions of this section by refusing or willfully neglecting to answer any of said questions, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not exceeding $500, or imprisoned for a period not exceeding sixty days, or both so fined and imprisoned, and any person violating the provisions of this section by willfully giving answers that are false shall be fined not exceeding $10,000 or imprisoned for a period not exceeding one year, or both.

Punishment for willfully refusing, giving false answers, etc.

SEC. 11. That the information furnished under the provisions of this Act shall be used only for the statistical purposes for which it is supplied. No publication shall be made by the Census Office whereby the data furnished by any particular establishment or individual can be identified, nor shall the Director of the Census permit anyone other than the sworn employees of the Census Office to examine the individual reports.

Use of information for statistical purposes only.

Restriction on publication of data.

SEC. 12. That all fines and penalties imposed by this Act may be enforced by indictment or information in any court of competent jurisdiction.

Enforcement of fines and penalties.

SEC. 13. That the Director of the Census is hereby authorized to make requisition upon the Public Printer for such printing as may be necessary to carry out the provisions of this Act, to wit: Blanks, schedules, circulars, pamphlets, envelopes, work sheets, and other items of miscellaneous printing; that he is further authorized to have printed by the Public Printer, in such editions as the director may deem necessary, preliminary and other census bulletins, and final reports of the results of the several investigations authorized by this Act or by the Act to establish a permanent Census Office and Acts amendatory thereof or supplemental thereto and to publish and distribute said bulletins and reports.

Printing, etc., authorized.

Bulletins, etc.

SEC. 14. That all mail matter, of whatever class or weight, relating to the census and addressed to the Census Office, or to any official thereof, and indorsed "Official business, Census Office," shall be transmitted free of postage, and by registered mail if necessary, and so marked: *Provided*, That if any person shall make use of such indorsement to avoid the payment of postage or registry fee on his or her private letter, package, or other matter in the mail, the person so offending shall be guilty of a misdemeanor and subject to a fine of $300, to be prosecuted in any court of competent jurisdiction.

*Free transmission of mail on official business.*
U. S. C., p. 1256.

*Proviso.*
Penalty for private use.

SEC. 15. That the Secretary of Commerce, whenever he may deem it advisable, on request of the Director of the Census, is hereby authorized to call upon any other department or office of the Government for information pertinent to the work herein provided for.

Information from other Government departments, etc.

SEC. 16. That there shall be in the year 1935, and once every ten years thereafter, a census of agriculture and livestock, which shall show the acreage of farm land, the acreage of the principal crops, and the number and value of domestic animals on the farms and ranges of the country. The schedule employed in this census shall be prepared by the Director of the Census. Such census shall be taken as of the 1st day of January and shall relate to the crop year. The Director of the Census may appoint enumerators or special agents for the purpose of this census in accordance with the provisions of the permanent census Act.

Census of agriculture and livestock in 1935, and every ten years thereafter.

Time of taking.
Appointment of enumerators for.

SEC. 17. That the Director of the Census be, and he is hereby, authorized and directed to collect and publish, for every second year after 1927, statistics of manufacturing industries; and the director is hereby authorized to prepare such schedules as in his judgment may be necessary.

Manufacturing statistics to be published biennially.

SEC. 18. That the Director of the Census be, and he is hereby, authorized at his discretion, upon the written request of the governor of any State or Territory or of a court of record, to furnish such governor or court of record with certified copies of so much of the population or agricultural returns as may be requested, upon the payment of the actual cost of making such copies and $1 additional for certification; and that the Director of the Census is further authorized, in his discretion, to furnish to individuals such data from the population schedules as may be desired for genealogical or other proper purposes, upon payment of the actual cost of searching the

Certified copies of population and agricultural returns to States, courts, etc.

Genealogical, etc., data to individuals.

Case 2:22-cv-00172 ECF No. 1-19 filed 07/18/22 PageID.101 Page 6 of 7

Statistical compilations.

records and $1 for supplying a certificate; and that the Director of the Census is authorized to furnish transcripts of tables and other records and to prepare special statistical compilations for State or local officials, private concerns, or individuals upon the payment of the actual cost of such work: *Provided, however*, That in no case shall information furnished under the authority of this Act be used to the detriment of the person or persons to whom such information relates. All moneys hereafter received by the Bureau of the Census in payment for labor and materials used in furnishing transcripts of census records or special statistical compilations from such records shall be deposited to the credit of the appropriation for collecting statistics.

*Proviso.* Restriction.

Use of receipts.

Allowance for traveling expenses, etc., of census employees.

SEC. 19. That the Director of the Census may authorize the expenditure of necessary sums for the actual and necessary traveling expenses of the officers and employees of the Census Office, including an allowance in lieu of subsistence not exceeding $6 per day during their necessary absence from the Census Office, or, instead of such an allowance, their actual subsistence expenses, not to exceed $7 per day: *Provided*, That employees of the bureau may be paid in lieu of all transportation expenses not to exceed 7 cents per mile for the use of their own automobiles or not to exceed 3 cents per mile for the use of their own motor cycles when used for necessary travel on official business.

*Proviso.* Allowance if using their own motor vehicles.

Sum authorized for expenses. Vol. 45, p. 1119. *Post*, pp. 100, 198.

SEC. 20. For the purpose of carrying out the provisions of this Act during the fifteenth decennial census period, there is authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $39,593,000.

Modified former Act continued. Vol. 32, p. 51. Fourteenth Census Act repealed. Vol. 40, p. 1291, repealed.

SEC. 21. That the Act establishing the permanent Census Office, approved March 6, 1902, and Acts amendatory thereof and supplemental thereto, except as are herein amended, shall remain in full force. That the Act entitled "An Act to provide for the fourteenth and subsequent decennial censuses," approved March 3, 1919, and all other laws and parts of laws inconsistent with the provisions of this Act are hereby repealed.

Apportionment of Representatives. President to transmit to Congress a statement of total population of each State ascertained by decennial census, and apportionment thereto under existing number thereof.

SEC. 22. (a) On the first day, or within one week thereafter, of the second regular session of the Seventy-first Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State, excluding Indians not taxed, as ascertained under the fifteenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives made in each of the following manners:

By method of last preceding apportionment.

(1) By apportioning the then existing number of Representatives among the several States according to the respective numbers of the several States as ascertained under such census, by the method used in the last preceding apportionment, no State to receive less than one Member;

By method of major fractions.

(2) By apportioning the then existing number of Representatives among the several States according to the respective numbers of the several States as ascertained under such census, by the method known as the method of major fractions, no State to receive less than one Member; and

By method of equal proportions.

(3) By apportioning the then existing number of Representatives among the several States according to the respective numbers of the several States as ascertained under such census, by the method known as the method of equal proportions, no State to receive less than one Member.

If no apportionment law be enacted each State to have its existing number.

(b) If the Congress to which the statement required by subdivision (a) of this section is transmitted, fails to enact a law appor-

tioning Representatives among the several States, then each State shall be entitled, in the second succeeding Congress and in each Congress thereafter until the taking effect of a reapportionment under this Act or subsequent statute, to the number of Representatives shown in the statement based upon the method used in the last preceding apportionment. It shall be the duty of the Clerk of the last House of Representatives forthwith to send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section. In case of a vacancy in the office of Clerk, or of his absence or inability to discharge this duty, then such duty shall devolve upon the officer who, under section 32 or 33 of the Revised Statutes, is charged with the preparation of the roll of Representatives-elect.

Certificate thereof to State executives by the Clerk of the House.

R. S., secs. 32, 33, p. 6. U. S. C., p. 4.

(c) This section shall have no force and effect in respect of the apportionment to be made under any decennial census unless the statement required by subdivision (a) of this section in respect of such census is transmitted to the Congress within the time prescribed in subdivision (a).

Section not effective unless statement transmitted in prescribed time.
*Ante*, p. 26.

Approved, June 18, 1929.

---

June 18, 1929.
[S. 1452.]
[Public, No. 14.]

**CHAP. 29.**—An Act To authorize the State of West Virginia to acquire a bridge over the Kanawha River at Cabin Creek in said State and to acquire the right to construct a bridge over said river at Saint Albans in said State.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the State of West Virginia, by its State bridge commission, be, and is hereby, authorized to acquire, maintain, and operate the bridge being erected over the Kanawha River at Cabin Creek and the approaches thereto in said State, and that said bridge shall be deemed a lawful structure if constructed in accordance with the plans and location approved by the Chief of Engineers and the Secretary of War under dates of April 20, 1928, and April 23, 1928, respectively, and in accordance with an Act approved May 1, 1928, authorizing the construction of said bridge by the Cabin Creek Kanawha Bridge Company, its successors and assigns.

Kanawha River.
West Virginia may acquire bridge over, at Cabin Creek.

Vol. 45, p. 475.

SEC. 2. The State of West Virginia, by its State bridge commission, is authorized to acquire the right to construct, maintain, and operate a bridge over the Kanawha River at Saint Albans in said State and the approaches thereto under an Act approved May 1, 1928, authorizing the Saint Albans Nitro Bridge Company, its successors and assigns, to construct, maintain, and operate said bridge, and said bridge shall be a lawful structure if constructed in accordance with the plans and location approved by the Chief of Engineers and the Secretary of War under dates of May 14, 1928, and May 19, 1928, respectively, and in accordance with the last-mentioned Act.

Kanawha River.
West Virginia may bridge, at Saint Albans.
Vol. 45, p. 473.

SEC. 3. Both of said bridges shall be subject to the conditions and limitations of the Act entitled "An Act to regulate the construction of bridges over navigable waters," approved March 23, 1906, other than those requiring the approval of plans, specifications, and location by the Chief of Engineers and the Secretary of War before the commencement of construction.

Construction.
Vol. 34, p. 84.

SEC. 4. The times for commencing and completing the construction of the said bridge at or near Saint Albans are hereby extended one and three years, respectively, from the date of approval hereof.

Times for commencing and completing.

SEC. 5. If tolls are charged for the use of said bridges, the rates of toll shall be so adjusted as to provide a fund sufficient to pay the reasonable cost of maintaining, repairing, and operating the bridges under economical management and to provide a sinking fund suffi-

Rates of toll applied to operation, sinking fund, etc.

subsequent thereto, and shall be published in one or more of the daily newspapers published in the District of Columbia and in such other manner as the Commissioners may deem best to acquaint the public with the same; and no penalty prescribed for the violation of any of such regulations shall be enforced until five days after such publication. Any person violating any of such regulations shall be liable for each such offense to a fine of not to exceed $100 in the police court of said District, and in default of payment thereof to imprisonment in the workhouse of said District for not longer than sixty days.

Penalties.

Approved, April 22, 1940.

[CHAPTER 152]

AN ACT

April 25, 1940
[S. 2505]
[Public, No. 481]

To amend an Act to provide for the fifteenth and subsequent decennial censuses and to provide for apportionment of Representatives in Congress, approved June 18, 1929, so as to change the date of subsequent apportionments.

Fifteenth, etc., censuses.
Apportionment of Representatives in Congress.
46 Stat. 26.
2 U. S. C. § 2a.
Time for filing statement modified.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That an Act to provide for the fifteenth and subsequent decennial censuses and to provide for apportionment of Representatives in Congress, approved June 18, 1929, is hereby amended in the first sentence of section 22 (a) by striking out the words "second regular session of the Seventy-first Congress" and substituting the following words: "first regular session of the Seventy-seventh Congress", and by striking out "fifteenth" and inserting "sixteenth".

46 Stat. 26.
2 U. S. C. § 2a (b).
Number of Representatives if no new apportionment law enacted.

SEC. 2. The first sentence of section 22 (b) of such Act is amended to read as follows: "If the Congress to which the statement required by subdivision (a) of this section is transmitted has not, within sixty calendar days after such statement is transmitted, enacted a law apportioning Representatives among the several States, then each State shall be entitled, in the next Congress and in each Congress thereafter until the taking effect of a reapportionment under this Act or subsequent statute, to the number of Representatives shown in the statement based upon the method used in the last preceding apportionment.".

Approved, April 25, 1940.

[CHAPTER 153]

AN ACT

April 25, 1940
[S. 2599]
[Public, No. 482]

To amend the Naval Reserve Act of 1938 (Public, Numbered 732, 52 Stat. 1175).

Naval Reserve Act of 1938, amendment.
52 Stat. 1179.
34 U. S. C., Supp. V, § 854e.
Transfer from Fleet Reserve to retired list, Regular Navy; payment of allowances.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 206 of the Naval Reserve Act of June 25, 1938, is hereby amended by striking out the last two provisions and substituting therefor the following: "*Provided further*, That in the computation of service requisite for transfer of enlisted men of the Fleet Reserve to the retired list of the Regular Navy and for payment of allowances to which enlisted men on the retired list of the Regular Navy are entitled, service in the Army, Navy, Marine Corps, Coast Guard, Naval Reserve Force, Fleet Naval Reserve, Fleet Reserve, Marine Corps Reserve Force, and the Marine Corps Reserve, and on the retired list of the Regular Navy shall be included: *And provided further*, That such service as may heretofore have been authorized by law to be counted as double time shall be credited as double time in this computation.".

Service included.

Double-time credit.

Approved, April 25, 1940.

liquidation (pursuant to section 3 or section 4 of this Act) of any other property so accepted, and the proceeds of insurance on any such gift property not used for its restoration, shall be deposited in the Treasury of the United States and are hereby appropriated and shall be held in trust by the Secretary of the Treasury for the benefit of Saint Elizabeths Hospital, and he may invest and reinvest such funds in interest-bearing obligations of the United States or in obligations guaranteed as to both principal and interest by the United States. The income from such investments shall be available for expenditure in the improvement, maintenance, or operation of Saint Elizabeths Hospital, subject to the same examination and audit as provided for appropriations made for Saint Elizabeths Hospital by Congress.

Intangible personal property, other than money.

SEC. 3. The evidences of any unconditional gift of intangible personal property, other than money, accepted pursuant to the authority granted in section 1 of this Act shall be deposited with the Secretary of the Treasury and he, in his discretion, may hold them or may liquidate them whenever in his judgment the purposes of the gifts will be served thereby. The income from any such property held by the Secretary of the Treasury shall be available for expenditure as is provided in section 2 of this Act.

Real property and tangible personal property.

SEC. 4. The Federal Security Administrator shall hold any real property or any tangible personal property accepted unconditionally pursuant to the authority granted in section 1 of this Act and he shall permit such property to be used for the improvement, maintenance, or operation of Saint Elizabeths Hospital or he may lease or hire such property, and may insure such property, and deposit the income thereof with the Secretary of the Treasury to be available for expenditure as provided in section 2 of this Act: *Provided*, That the income from any such real property or tangible personal property shall be available for expenditure in the discretion of the Federal Security Administrator for the maintenance, preservation, or repair and insurance of such property and that any proceeds from insurance may be used to restore the property insured. Any such property when not required for the improvement or operation of the Saint Elizabeths Hospital may be liquidated by the Federal Security Administrator whenever in his judgment the purposes of the gifts will be served thereby.

*Proviso.* Use of income.

Approved, November 7, 1941.

---

[CHAPTER 470]

AN ACT

To provide for apportioning Representatives in Congress among the several States by the equal proportions method.

November 15, 1941 [H. R. 2665] [Public Law 291]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 22 of the Act entitled "An Act to provide for the fifteenth and subsequent decennial censuses and to provide for apportionment of Representatives in Congress", approved June 18, 1929, as amended, is amended to read as follows:

Apportionment of Representatives in Congress. 46 Stat. 26. 2 U. S. C. § 2a.

"SEC. 22. (a) On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State, excluding Indians not taxed, as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled

Statement of number of persons in each State, etc.

under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions, no State to receive less than one Member.

Number of Representatives to which each State entitled.

"(b) Each State shall be entitled, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, to the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member. It shall be the duty of the Clerk of the House of Representatives, within fifteen calendar days after the receipt of such statement, to send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section. In case of a vacancy in the office of Clerk, or of his absence or inability to discharge this duty, then such duty shall devolve upon the Sergeant at Arms of the House of Representatives; and in case of vacancies in the offices of both the Clerk and the Sergeant at Arms, or the absence or inability of both to act, such duty shall devolve upon the Doorkeeper of the House of Representatives.

Certificate.

Manner of election until State redistricted.

"(c) Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: (1) If there is no change in the number of Representatives, they shall be elected from the districts then prescribed by the law of such State, and if any of them are elected from the State at large they shall continue to be so elected; (2) if there is an increase in the number of Representatives, such additional Representative or Representatives shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; (3) if there is a decrease in the number of Representatives but the number of districts in such State is equal to such decreased number of Representatives, they shall be elected from the districts then prescribed by the law of such State; (4) if there is a decrease in the number of Representatives but the number of districts in such State is less than such number of Representatives, the number of Representatives by which such number of districts is exceeded shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; or (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large."

Number of Representatives in 78th Congress.

SEC. 2. (a) Each State shall be entitled, in the Seventy-eighth and in each Congress thereafter until the taking effect of a reapportionment under a subsequent statute or such section 22, as amended by this Act, to the number of Representatives shown in the statement transmitted to the Congress on January 8, 1941, based upon the method known as the method of equal proportions, no State to receive less than one Member.

New certificate.

(b) If before the enactment of this Act a certificate has been sent to the executive of any State under the provisions of such section 22, as in force before the enactment of this Act, the Clerk of the House of Representatives shall, within fifteen calendar days after the date of enactment of this Act, send a new certificate to such executive stating the number of Representatives to which such State is entitled under this section.

Approved, November 15, 1941.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
920 WEST RIVERSIDE AVENUE
P.O. BOX 1493
SPOKANE, WASHINGTON 99210
www.waed.uscourts.gov

SEAN F. MCAVOY
CLERK OF COURT

RENEA GROGAN
CHIEF DEPUTY CLERK

(509) 458-3400
FAX (509) 458-3420

September 18, 2023

William C Schroeder
KSB Litigation PS
510 W Riverside Avenue
Suite 300
Spokane, WA 99201

**RE:** Schroeder v. United States of America
2:22-cv-00172-MKD

Dear Mr. Schroeder:

Enclosed is a filed copy of the Notice of Appeal and docket entries.

Very truly yours,

**UNITED STATES DISTRICT COURT**

Office of the Clerk
Appeal Deputy Clerk

Enclosures

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 18, 2023

SEAN F. McAVOY, CLERK

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF** EASTERN WASHINGTON

**Form 1. Notice of Appeal from a Judgment or Order of a United States District Court**

U.S. District Court case number: 2:22-cv-00172-MKD

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 07/18/2022

Date of judgment or order you are appealing: 09/11/2023

Docket entry number of judgment or order you are appealing: 10

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes ○ No ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

William C. Schroeder

Is this a cross-appeal? ○ Yes ◉ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case? ○ Yes ◉ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City: State: Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** /s William C. Schroeder **Date** Sep 17, 2023

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

William C. Schroeder

Name(s) of counsel (if any):

William C. Schroeder
KSB Litigation, P.S.

Address: 510 West Riverside Ave., Ste 300, Spokane, WA, 99201

Telephone number(s): 509-624-8988

Email(s): wcs@ksblit.legal

Is counsel registered for Electronic Filing in the 9th Circuit? ◉ Yes ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

United States of America

Name(s) of counsel (if any):

Brian M. Boynton
Lesley Farby
Brian C. Rosen-Shaud

Address: 1100 L St NW, Rm 12022, Washington, D.C., 20530

Telephone number(s): 202 305 7667

Email(s): brian.c.rosen-shaud.usdoj.gov

*To list additional parties and/or counsel, use next page.*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Eastern District of Washington**
**U.S. District Court (Spokane)**
**CIVIL DOCKET FOR CASE #: 2:22-cv-00172-MKD**

Schroeder v. United States of America
Assigned to: Judge Mary K. Dimke
Demand: $0
Cause: 28:2201 Declaratory Judgement

Date Filed: 07/18/2022
Date Terminated: 09/11/2023
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**William C Schroeder**
*an individual*

represented by **William C Schroeder**
KSB Litigation PS
510 W Riverside Avenue
Suite 300
Spokane, WA 99201
509-624-8988
Email: wcs@ksblit.legal
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America**

represented by **Brian C Rosen-Shaud**
DOJ-Civ
Ben Franklin Station
P.O. Box 868
Washington, DC 20044
202-305-7667
Email: brian.c.rosen-shaud@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/18/2022 | 1 | COMPLAINT against ~~William C Schroeder~~ United States of America ( Filing fee $ 402; Receipt # AWAEDC-4078898) Filed by William C Schroeder. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit)(Schroeder, William) Modified on 7/19/2022: to correct name of defendant party in docket text (LTR, Case Administrator). (Entered: 07/18/2022) |
| 07/19/2022 | | Notice of Judge Assignment. Judge Mary K. Dimke assigned to case. (LTR, Case Administrator) (Entered: 07/19/2022) |
| 07/19/2022 | 2 | Summons Issued as to United States of America. (Attachments: # 1 Summons U.S. Attorney)(LTR, Case Administrator) (Entered: 07/19/2022) |
| 07/19/2022 | 3 | **FILED IN ERROR - document not mailed to USDOJ, as USA is the named defendant in this action** - ~~Constitutional Challenge Certification. A copy of this certification has been mailed to the United States Attorney General. NO JUDGMENT HOLDING STATUTE UNCONSTITUTIONAL MAY ENTER UNTIL AFTER ATTORNEY GENERAL INTERVENES OR 60 DAY DEADLINE FOR INTERVENTION LAPSES. Follow Up on 9/19/2022~~ - deadline STRICKEN. (LTR, Case Administrator) Modified on 7/19/2022 (CV, Case Administrator). (Entered: 07/19/2022) |
| 07/21/2022 | 4 | PROOF OF SERVICE by William C Schroeder re United States of America. (Schroeder, William) (Entered: 07/21/2022) |
| 07/22/2022 | 5 | PROOF OF SERVICE by William C Schroeder re United States of America. (Attachments: # 1 Exhibit)(Schroeder, William) (Entered: 07/22/2022) |
| 09/19/2022 | 6 | MOTION to Dismiss by All Defendants. Motion Hearing set for **11/9/2022** Without Oral Argument before Judge Mary K. Dimke. (Attachments: # 1 Text of Proposed Order)(Rosen-Shaud, Brian) (Entered: 09/19/2022) |
| 10/07/2022 | 7 | MEMORANDUM in Opposition re 6 MOTION to Dismiss filed by William C Schroeder. (Schroeder, William) (Entered: 10/07/2022) |
| 10/21/2022 | 8 | REPLY MEMORANDUM re 6 MOTION to Dismiss filed by United States of America. (Rosen-Shaud, Brian) (Entered: 10/21/2022) |

| | | |
|---|---|---|
| 09/11/2023 | 9 | ORDER GRANTING 6 DEFENDANT'S MOTION TO DISMISS. Plaintiff's Complaint, ECF No. 1 , is DISMISSED without prejudice. This file is CLOSED. Signed by Judge Mary K. Dimke. (WMK, Case Administrator) (Entered: 09/11/2023) |
| 09/11/2023 | 10 | JUDGMENT OF DISMISSAL. (WMK, Case Administrator) (Entered: 09/11/2023) |
| 09/17/2023 | 11 | LODGED NOTICE OF APPEAL from District Court decision as to 10 Clerk's Judgment by William C Schroeder. Filing fee $ 505, receipt number AWAEDC-4375630. (Schroeder, William) (Entered: 09/17/2023) |
| 09/18/2023 | 12 | NOTICE OF APPEAL from District Court decision as to 10 Clerk's Judgment filed 9/11/2023 by William C Schroeder. Appeal Fee $505; Status PAID; Receipt No. AWAEDC-4375630. cc: Court Reporter: n/a. (LTR, Case Administrator) (Entered: 09/18/2023) |