No. 23-35606

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

WILLIAM CHRISTOPHER SCHROEDER,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Eastern District of Washington

_____

**BRIEF FOR APPELLEE**

_____

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

VANESSA R. WALDREF
  *United States Attorney*

MICHAEL S. RAAB
MAXWELL A. BALDI
  *Attorneys, Appellate Staff
  Civil Division, Room 7513
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 532-0211*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF JURISDICTION ............................................................................. 1

STATEMENT OF THE ISSUE .................................................................................... 1

PERTINENT CONSTITUTIONAL PROVISIONS AND STATUTES.................... 1

STATEMENT OF THE CASE ..................................................................................... 1

      A.     Constitutional and Historical Background .................................................. 1

      B.     Prior Proceedings ........................................................................................ 3

SUMMARY OF ARGUMENT .................................................................................... 4

STANDARD OF REVIEW........................................................................................... 6

ARGUMENT ................................................................................................................ 6

The District Court Lacked Jurisdiction. ...................................................................... 6

      A.     The number of seats in the House of Representatives presents a
              nonjusticiable political question................................................................. 8

      B.     Schroeder lacks standing to pursue his claims.......................................... 12

      C.     Schroeder has failed to raise a substantial federal question. .................... 16

CONCLUSION ........................................................................................................... 17

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Baker v. Carr*,
  369 U.S. 186 (1962) ..................................................................................... 8

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ...................................................................... 14

*Clemons v. Department of Commerce*,
  562 U.S. 1105 (2010) ............................................................................... 6, 7

*Clemons v. U.S. Dep't of Commerce*,
  710 F. Supp. 2d. 570 (N.D. Miss. 2010) ...................................................... 7

*Collins v. City of Harker Heights*,
  503 U.S. 115 (1992) ............................................................................... 12-13

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) .................................................................................... 13

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ............................................................................ 2, 5, 14

*Galaza v. Mayorkas*,
  61 F.4th 669 (9th Cir. 2023) ......................................................................... 6

*Gilligan v. Morgan*,
  413 U.S. 1 (1973) ....................................................................................... 10

*Gravel v. United States*,
  408 U.S. 606 (1972) .................................................................................... 13

*Hewitt v. Helms*,
  482 U.S. 755 (1987) .................................................................................... 14

*Hicks v. Miranda*,
  422 U.S. 332 (1975) ...................................................................................... 7

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) .................................................................................... 15

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) .................................................................... 12

*Lance v. Coffman*,
    549 U.S. 437 (2007) ............................................................... 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................... 12

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1866) ............................................... 13

*Newdow v. U.S. Congress*,
    328 F.3d 466 (9th Cir. 2003), *rev'd on other grounds sub nom.*
    *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) .......................... 13

*Prigg v. Pennsylvania*,
    41 U.S. (16 Pet.) 539 (1842) .................................................... 2

*Republic of the Marshall Islands v. United States*,
    865 F.3d 1187 (9th Cir. 2017) ................................................. 6

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ............................................................... 10

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) .................................................. 7, 8, 10, 11

*Shapiro v. McManus*,
    577 U.S. 39 (2015) ................................................................ 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................... 12

*U.S. Dep't of Commerce v. Montana*,
    503 U.S. 442 (1992) ....................................... 1, 5, 11, 16, 17

*Vieth v. Jubelirer*,
    541 U.S. 267 (2004) ............................................................... 8

*Wesberry v. Sanders*,
    376 U.S. 1 (1964) .................................................................. 16

*Wisconsin v. City of New York*,
    517 U.S. 1 (1996) ............................................................. 11, 16

**U.S. Constitution:**

Art. I, § 2, cl. 3 ................................................................................... 1

Art. I, § 6, cl. 1 ................................................................................. 13

Amend. XIV, § 2 ................................................................................. 1

**Statutes:**

Act of Aug. 8, 1911, 37 Stat. 13:
    ch. 5, § 1, 37 Stat. at 13-14 .......................................................... 2
    ch. 5, § 2, 37 Stat. at 14 ................................................................ 2

Act of June 18, 1929, ch. 28, § 22, 46 Stat. 21, 26–27 ..................... 2

Act of Nov. 15, 1941, ch. 470, § 1, 55 Stat. 761, 761–62 ................. 2

Act of July 7, 1958, Pub. L. No. 85-508, § 9, 72 Stat. 339, 345 ........ 3

Act of Mar. 18, 1959, Pub. L. No. 86-3, § 8, 73 Stat. 4, 8 ................ 3

2 U.S.C. § 2a ...................................................................................... 2

2 U.S.C. § 2a(a) ................................................................................. 3

2 U.S.C. § 2a(b) ................................................................................. 3

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1

28 U.S.C. § 1343(a)(4) ...................................................................... 1

28 U.S.C. § 1346(a)(2) ...................................................................... 1

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ................................................................. 1

**Legislative Material:**

*Increasing the Membership of the House of Representatives and Redistricting Congressional Districts:  Hearings Before Subcomm. No. 3 of the H. Comm. on the Judiciary*, 87th Cong. (1961) ................................................................. 10

**Other Authorities:**

Zechariah Chafee, Jr., *Congressional Reapportionment*, 42 Harv. L. Rev. 1015 (1929) ........................................................................ 2

2 Joseph Story, *Commentaries on the Constitution of the United States* (1833) ................... 9, 10

*The Federalist No. 55* (James Madison) (George W. Carey & James McClellan eds., 2001) ...................................................................... 9

*The Federalist No. 58* (James Madison) (George W. Carey & James McClellan eds., 2001) ...................................................................... 9

13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed., April 2023 update) ............................................................. 14

## STATEMENT OF JURISDICTION

Plaintiff William Schroeder invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1346(a)(2). ER-19. On September 11, 2023, the district court granted the United States' motion to dismiss and entered final judgment against Schroeder. ER-5, 16. On September 17, 2023, Schroeder filed a timely notice of appeal. ER-118; *see* Fed. R. App. P. 4(a)(1)(B).

This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly dismissed this action challenging the size of the House of Representatives.

## PERTINENT CONSTITUTIONAL PROVISIONS AND STATUTES

Pertinent constitutional provisions and statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.   Constitutional and Historical Background

The Constitution requires apportionment of representation in the House of Representatives by population. U.S. Const. art. I, § 2, cl. 3; *id.* amend. XIV, § 2. There are three constitutional limits on Congress's apportionment of representatives: "The number of Representatives shall not exceed one for every 30,000 persons; each State shall have at least one Representative; and district boundaries may not cross state lines." *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 447–48 (1992).

The Constitution does not specify that Congress itself shall make the apportionment, but Congress's power to do so "has always been acted upon as irresistibly flowing from the duty positively enjoined by the Constitution." *Prigg v. Pennsylvania*, 41 U.S. (16 Pet.) 539, 619 (1842). Similarly, because the Constitution does not prescribe the total number of Representatives to be allocated among the States, Congress has also set the size of the House of Representatives.

Following every census from 1790 to 1910, Congress reconsidered the number of Representatives after each census and enacted new apportionment legislation. *See generally* Zechariah Chafee, Jr., *Congressional Reapportionment*, 42 Harv. L. Rev. 1015 (1929). In 1911, Congress set the size of the House at 435 members.[1] Act of Aug. 8, 1911, ch. 5, § 1, 37 Stat. 13, 13–14.

In 1929, after a period of legislative deadlock over the proper size of the House, Congress enacted a predecessor to 2 U.S.C. § 2a adopting 435 seats as a permanent limit.[2] Act of June 18, 1929, ch. 28, § 22, 46 Stat. 21, 26–27. That provision provides for a "virtually self-executing" reapportionment process following each decennial census. *Franklin v. Massachusetts*, 505 U.S. 788, 792 (1992). The statute directs that, within the first week of a new Congress that follows a census, the

---

[1] The Act initially created 433 seats but authorized additional seats upon the admission as States of Arizona and New Mexico. Act of Aug. 8, 1911, ch. 5, § 2, 37 Stat. at 14.

[2] In 1941, Congress adjusted the formula for apportioning seats between states. Act of Nov. 15, 1941, ch. 470, § 1, 55 Stat. 761, 761–62.

President "shall transmit to the Congress a statement showing the whole number of persons in each State" and "the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions, no State to receive less than one Member." 2 U.S.C. § 2a(a). Each State is entitled to that number of Representatives unless and until Congress alters the size of the House. *Id.* § 2a(b). As no such legislation has been passed since 1911, the size of the House has remained fixed at 435 members.[3]

### B.   Prior Proceedings

1.   Plaintiff William Schroeder sued the United States in the District Court for the Eastern District of Washington. ER-18–77. He alleged that Congress's decision to fix the size of the House of Representatives at 435 members violates the constitutional principle of one person, one vote. ER-75. He sought a declaration that the size of the House of Representatives is unconstitutional and an order directing Congress "to either create a ratio of member-per-unit-of-population applicable equally to each and every of the several States[] or a sufficient overall whole number of

---

[3] The size of the House temporarily increased to 437 from 1959 to 1963 to account for the admission as States of Alaska and Hawaii. *See* Act of July 7, 1958, Pub. L. No. 85-508, § 9, 72 Stat. 339, 345 (Alaska); Act of Mar. 18, 1959, Pub. L. No. 86-3, § 8, 73 Stat. 4, 8 (Hawaii).

districts to be apportioned to provide roughly equal district sizes among the States, as well as within each State," ER-76.[4]

2. The United States moved to dismiss the complaint, arguing that Schroeder raised a nonjusticiable political question, lacked standing, and failed to state a claim. ER-6, 15–16.

The district court granted the motion, holding that Schroeder lacked standing. ER-15–16. It agreed that Schroeder had failed to show how his asserted injury could be redressed. ER-15. The district court explained that Schroeder did not respond to the argument that the court lacked a "judicially discoverable and manageable standard" to administer a remedy and that any remedy would not "provide him personally with equal voter representation." ER-14–15. It also held that Schroeder had raised "only a generally available alleged grievance" and had failed to show how "he individually has suffered a specific and concrete harm." ER-11. The district court did not address the political-question doctrine or merits arguments. ER-15–16.

3. Schroeder timely appealed. ER-118.

## SUMMARY OF ARGUMENT

In fixing the size of the House at 435 Representatives, Congress balanced the need to have enough members to be broadly representative against the need to have a

---

[4] Schroeder does not explain what he means by "ratio of member per-unit-of-population applicable equally to each and every of the several States" or how that standard differs from equally sized districts across states.

4

functional legislature. That number, together with the method of equal proportions for apportioning those Representatives among the several States, which the Supreme Court upheld in *U.S. Department of Commerce v. Montana*, 503 U.S. 442 (1992), is "consistent with the constitutional language and the constitutional goal of equal representation." *Franklin v. Massachusetts*, 505 U.S. 788, 804 (1992).

The district court correctly held that it lacked jurisdiction to upend Congress's carefully struck balance. That conclusion can be upheld on any of three independent grounds: (A) that the case presents a political question not suitable to judicial resolution, (B) that Schroeder lacks standing, and (C) that Schroeder has failed to raise a substantial federal question.

A. The size of the House presents a political question because there are no judicially manageable standards to govern it, because the question is constitutionally committed to the political branches, and because a court would not demonstrate appropriate respect for a coordinate branch of government if it reorganized the House by injunction. Beyond a minimum (one seat per State) and a maximum (one seat per 30,000 inhabitants), the Constitution provides no guidance at all on the size of the House. A court, therefore, has no standard to determine whether Congress has acted appropriately.

B. Schroeder also lacks standing to sue. As explained below, Schroeder's asserted injury is not redressable, and he has failed to allege a sufficiently particularized injury to satisfy Article III.

C.  Finally, Schroeder's claims fail to raise a substantial federal question.  As explained below, Supreme Court precedent plainly forecloses his argument.  Congress has wide latitude to apportion the House, and Schroeder has come nowhere close to demonstrating that Congress acted unlawfully in capping the size of the House at 435 Representatives.

## STANDARD OF REVIEW

This Court reviews de novo the dismissal of a complaint.  *Galaza v. Mayorkas*, 61 F.4th 669, 671 (9th Cir. 2023) (per curiam).

## ARGUMENT

### THE DISTRICT COURT LACKED JURISDICTION.

The district court lacked jurisdiction over this suit for three independent reasons:  the case presents a nonjusticiable political question, Schroeder lacks standing, and Schroeder fails to raise a substantial federal question.  "Whether examined under [any of those] rubric[s] . . .  the analysis stems from the same separation-of-powers principle—[this question] is not committed to the judicial branch."  *Republic of the Marshall Islands v. United States*, 865 F.3d 1187, 1192 (9th Cir. 2017).

The Supreme Court confirmed that the size of the House is not subject to challenge in *Clemons v. Department of Commerce*, 562 U.S. 1105 (2010) (*Clemons II*).  In that case, voters from several States sued federal officials arguing that "the Constitution requires an increase in the number in order to reduce the disparity in

population among the districts in different States." *Clemons v. U.S. Dep't of Commerce*, 710 F. Supp. 2d. 570, 571 (N.D. Miss. 2010) (*Clemons I*). The lower court rejected the argument that the case presented a nonjusticiable political question but ruled for the government on the merits. *Id.* at 575, 590. After the plaintiffs appealed to the Supreme Court, the government moved to dismiss the appeal for want of a substantial question or to summarily affirm the judgment. Gov't Mot. to Dismiss or Affirm, *Clemons II*, 562 U.S. 1105 (No. 10-291). The Supreme Court vacated the judgment of the district court and remanded "with instructions to dismiss the complaint for lack of jurisdiction." *Clemons II,* 562 U.S. at 1105. While the Supreme Court did not specify the precise jurisdictional flaw in *Clemons II*, those plaintiffs raised a challenge similar to Schroeder's, and a similar disposition is therefore warranted here.

Schroeder asserts (ER-68–69) that *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), somehow overruled *Clemons II*. But *Rucho*—a case which did not cite *Clemons II* and which held that political gerrymanders present nonjusticiable political questions— did not silently hold that the size of the House of Representatives is a justiciable question. This Court cannot so lightly disregard the Supreme Court's decision in *Clemons II*. *See Hicks v. Miranda*, 422 U.S. 332, 344–45 (1975) (lower courts are bound by the Supreme Court's summary dispositions). This Court should affirm.

### A. The number of seats in the House of Representatives presents a nonjusticiable political question.

Schroeder asked the district court to overturn the Congressional compromise of a multifaceted problem that has no precise solution and, in so doing, to restructure an entire branch of the federal government at its most fundamental level. Courts lack the power to do so.

When a "question is entrusted to one of the political branches or involves no judicially enforceable rights," it constitutes a nonjusticiable political question. *Rucho*, 139 S. Ct. at 2494 (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality op.)). The political-question doctrine flows from the separation of powers. *Baker v. Carr*, 369 U.S. 186, 217 (1962). It recognizes that some issues are "outside the courts' competence and therefore beyond the courts' jurisdiction." *Rucho*, 139 S. Ct. at 2494. The doctrine comes into play when a question displays one or more of the following characteristics:

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217. Here, there are no judicially manageable standards for determining the proper size of the House of Representatives, the Constitution

commits the issue to the political branches, and a court could not resolve the question without disrespecting Congress.

The number of seats in the House is a political question, not because it motivates partisan debate, but because, as James Madison recognized, "no political problem is less susceptible of a precise solution[] than that which relates to the number most convenient for a representative legislature." *The Federalist No. 55*, at 287 (James Madison) (George W. Carey & James McClellan eds., 2001); *accord* 2 Joseph Story, *Commentaries on the Constitution of the United States* § 650, at 119 (1833) ("But the question itself, what is the proper and convenient number to compose a representative legislature, is as little susceptible of a precise solution, as any, which can be stated in the whole circle of politics."). The reason for that intractable debate, Madison understood, was that "our political calculations" cannot be based on "arithmetical principles." *The Federalist No. 55*, *supra*, at 288.

> Sixty or seventy men may be more properly trusted with a given degree of power, than six or seven. But it does not follow, that six or seven hundred would be proportionably a better depository. And if we carry on the supposition to six or seven thousand, the whole reasoning ought to be reversed.

*Id.*; *accord The Federalist No. 58*, at 304 (James Madison) (George W. Carey & James McClellan eds., 2001). The size of a legislature "is, and for ever must be, in every nation, a mixed question of sound policy and discretion, with reference to its size, its population, its institutions, its local and physical condition, and all the other

circumstances affecting its own interests and convenience." 2 Story, *supra*, § 652, at 120.

It is for Congress to decide whether the House has too few members to be broadly representative or too many members to function effectively. *See* 2 Story, *supra*, § 651, at 119–20 (describing considerations for size of legislature). That question has no definite answer and requires Congress to balance a large number of competing considerations. *See, e.g., Increasing the Membership of the House of Representatives and Redistricting Congressional Districts: Hearings Before Subcomm. No. 3 of the H. Comm. on the Judiciary*, 87th Cong. (1961). Such a "highly subjective" policy determination is not appropriate for judicial resolution. *See Gilligan v. Morgan*, 413 U.S. 1, 14 (1973). Indeed, the Supreme Court has explained that "the *size* of [State] legislative bodies is of course a matter within the discretion of each individual State." *Reynolds v. Sims*, 377 U.S. 533, 581 n.63 (1964) (emphasis added).

Beyond minimum and maximum limits, the Constitution does not provide any standard for determining the size of the House, much less a "limited and precise standard that is judicially discernible and manageable." *Rucho*, 139 S. Ct. at 2502. Schroeder's argument that the principle of population equality among districts provides a judicially manageable standard fails because that principle applies only to districts within a state, not to districts in different States. "[T]he need to allocate a fixed number of indivisible Representatives among 50 States of varying populations makes it virtually impossible to have the same size district in any pair of States, let

alone in all 50."[5]  *U.S. Dep't of Commerce v. Montana*, 503 U.S. 442, 463 (1992).  For that

reason, the one-person, one-vote standard applicable to intrastate redistricting cases

does not apply to interstate apportionment.  *See id.*; *Wisconsin v. City of New York*,

517 U.S. 1, 16–17 (1996).  The question is what degree of variation between district

sizes in different States should be permitted.  "The polestar of equal representation

does not provide sufficient guidance to allow [a court] to discern a single

constitutionally permissible course."  *Montana*, 503 U.S. at 463.  And without

"constitutional or statutory provisions or common law confining and guiding the

exercise of judicial discretion," a court cannot decide how much variation is too

much.  *See Rucho*, 139 S. Ct. at 2505–06.  Instead, that decision is committed to

Congress's discretion.

　　　A judicial order adopting Schroeder's proposal to make no Congressional

district smaller than the population of the least populous state would require

redrawing every Congressional district in the country (save Wyoming's at-large seat)

and reshaping radically the way the House functions.  Congress is free to so transform

itself.  But such a transformation cannot properly be directed by the judiciary.

---

[5] Schroeder argues that "[e]qual apportionment" is possible.  ER-61.  But his own proposed House of 573 members would result in variable district sizes because of the need to round fractional seats up or down.  *See* Appellant's Br. 34–36 (final column of numbers, representing distribution of seats in a 573-member body, consists almost entirely of non-integers).

**B.      Schroeder lacks standing to pursue his claims.**

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Schroeder fails to meet the first and third prongs of that "irreducible constitutional" test.  *Id.* (quoting *Lujan*, 504 U.S. at 560).

**1.      If Schroeder has been injured, his injury is not redressable.**

"To establish Article III redressability, . . . plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020).  Schroeder seeks two forms of relief:  an injunction directed to Congress and a declaration that § 2a is unconstitutional.  ER-76.  The district court lacks the power to order Congress to amend a law, and a declaratory judgment is similarly inappropriate.

i. Schroeder seeks an injunction directing Congress to enact legislation to dramatically expand the size of the House.  ER-76.  A court, however, may not pick winners and losers among "'competing social, political, and economic forces,'"— those decisions "must be made by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" *Juliana*, 947 F.3d at 1172 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128–29

(1992)). Yet that is what Schroeder asks this Court to do. The same boundless policy choices that call the political-question doctrine into play, *see supra* Part I.A, prevent the district court from entering a proper injunction.

Nor could an injunction compel members of Congress to vote for a piece of legislation as Schroeder seeks. The Speech or Debate Clause cloaks members of Congress with absolute immunity when they "act[] within the sphere of legitimate legislative activity." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975); *see* U.S. Const. art. I, § 6, cl. 1. That immunity covers prospective relief as well as retrospective. *See Eastland*, 421 U.S. at 502–03. And the votes members of Congress take fall within the core of the Speech or Debate Clause's protections. *See Gravel v. United States*, 408 U.S. 606, 624 (1972). Therefore, a court cannot issue an injunction to require members of Congress to vote to enact a law. *See Newdow v. U.S. Congress*, 328 F.3d 466, 484 (9th Cir. 2003), *rev'd on other grounds sub nom. Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004); *see also Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 500 (1866) ("The Congress is the legislative department of the government; the President is the executive department. Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance.").

ii. Schroeder's request for declaratory relief is similarly unavailing. Just as an injunction compelling Congress to enact new legislation fixing the size of the House is improper, a declaratory judgment to accomplish that result is improper too.

A declaratory judgment redresses a plaintiff's injury only if it resolves "some dispute which affects the behavior of the defendant towards the plaintiff." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (emphasis omitted) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (emphasis omitted). That is, the judgment must change the legal relationship between plaintiff and defendant. *See* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3529 n.17 (3d ed., April 2023 update) (collecting cases). A declaratory judgment here would not affect the United States' relationship with Schroeder at all because it could not compel Congress to enact new legislation.

Plaintiffs' reliance on *Franklin v. Massachusetts* is misplaced. The Supreme Court in *Franklin* presumed that the President and subordinate Executive Branch officials would "abide by an authoritative interpretation of the census statute and constitutional provision," 505 U.S. at 803, but here there are no officials on whom a declaratory judgment could properly operate.

### 2. Schroeder has not alleged an individualized injury.

Although the complaint is not entirely clear, Schroeder appears to allege an injury based on his inadequate representation in the House. *See* ER-74–76. He asserts that Montana is overrepresented in the House and implies that his home state of Washington is underrepresented. *See* ER-69–74.

Schroeder's asserted injury is not particularized to him. "A litigant 'raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws[] and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). Here, whatever interest Schroeder may have in the size of Washington's congressional delegation is not sufficiently particularized to support federal jurisdiction.

To the extent Schroeder attempts to offer a vote-dilution theory, he has forfeited that claim by failing to allege facts in his complaint to support it. And, in any event, Schroeder has not alleged that Washington would have materially more representation in his proposed 573-member House. Washington's 10 seats currently comprise 2.299% of the House. Schroeder proposes that Washington should have 13.36 seats in a 573-member body. Appellant's Br. 35. If Washington had 13 members, it would be less proportionately represented (2.269%); if Washington had 14 members, it would have a greater proportion of the House (2.443%), but Schroeder's theory of equal representation would collapse. Because Schroeder has not shown that § 2a deprives him of representation, he has not demonstrated an injury-in-fact.

### C. Schroeder has failed to raise a substantial federal question.

A plaintiff may not invoke federal-question jurisdiction if his claim is "wholly insubstantial and frivolous." *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (collecting cases) (quotation marks omitted). Because Schroeder's complaint failed to present a colorable claim, it failed to invoke the jurisdiction of the district court.

Controlling Supreme Court precedent forecloses Schroeder's claim. As the Supreme Court held in *Montana*, "[t]he constitutional guarantee of a minimum of one Representative for each State inexorably compels a significant departure from the ideal" of equal representation between States. 503 U.S. at 463. Rather, "[t]he need to allocate a fixed number of indivisible Representatives among 50 States of varying populations makes it virtually impossible to have the same size district in any pair of States, let alone in all 50." *Id.* In recognition that practical reality, the Supreme Court affords Congress wide deference in its "good-faith choice of a method of apportionment of Representatives among the several States." *Id.* at 464; *see also Wisconsin*, 517 U.S. at 15. Schroeder has come nowhere close to showing that Congress acted unlawfully in setting the size of the House.

In *Montana* and *Wisconsin*, the Supreme Court held that the one-person, one-vote standard articulated in *Wesberry v. Sanders*, 376 U.S. 1 (1964) is not applicable to interstate redistricting. *Wisconsin*, 517 U.S. at 14–15, 17 (citing *Montana*, 503 U.S. at 447–48, 463–64). Because "the Constitution makes it impossible to achieve population equality among interstate districts," *Wisconsin*, 517 U.S. at 17, the system

Congress adopted to create rough proportionality between States passes constitutional muster, *Montana*, 503 U.S. at 465–66. Those holdings foreclose Schroeder's merits arguments. And Schroeder has not advanced an argument that the Supreme Court should overrule those holdings. Thus, his claims are wholly without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

VANESSA R. WALDREF
*United States Attorney*

MICHAEL S. RAAB

 /s/ Maxwell A. Baldi
MAXWELL A. BALDI
*Attorneys, Appellate Staff*
*Civil Division, Room 7513*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-0211*
*maxwell.baldi@usdoj.gov*

December 2023

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellee states that they know of no related case pending in this Court.

/s/ Maxwell A. Baldi
MAXWELL A. BALDI

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,971  words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ *Maxwell A. Baldi*
MAXWELL A. BALDI

**ADDENDUM**

## TABLE OF CONTENTS

U.S. Const., Art. I., § 2, cl. 3...................................................................... A1

U.S. Const., amend. XIV, § 2...................................................................... A1

2 U.S.C. § 2a ............................................................................................... A1

**U.S. Const., Art. I., § 2, cl. 3**

Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to chuse three, Massachusetts eight, Rhode Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

**U.S. Const., amend. XIV, § 2**

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**2 U.S.C. § 2a**

**§ 2a. Reapportionment of Representatives; time and manner; existing decennial census figures as basis; statement by President; duty of clerk**

(a) On the first day, or within one week thereafter, of the first regular session of the Eighty-second Congress and of each fifth Congress thereafter, the President shall transmit to the Congress a statement showing the whole number of persons in each State, excluding Indians not taxed, as ascertained under the seventeenth and each subsequent decennial census of the population, and the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives by the method known as the method of equal proportions, no State to receive less than one Member.

(b) Each State shall be entitled, in the Eighty-third Congress and in each Congress thereafter until the taking effect of a reapportionment under this section or subsequent statute, to the number of Representatives shown in the statement required by subsection (a) of this section, no State to receive less than one Member. It shall be the duty of the Clerk of the House of Representatives, within fifteen calendar days after the receipt of such statement, to send to the executive of each State a certificate of the number of Representatives to which such State is entitled under this section. In case of a vacancy in the office of Clerk, or of his absence or inability to discharge this duty, then such duty shall devolve upon the Sergeant at Arms of the House of Representatives.

(c) Until a State is redistricted in the manner provided by the law thereof after any apportionment, the Representatives to which such State is entitled under such apportionment shall be elected in the following manner: (1) If there is no change in the number of Representatives, they shall be elected from the districts then prescribed by the law of such State, and if any of them are elected from the State at large they shall continue to be so elected; (2) if there is an increase in the number of Representatives, such additional Representative or Representatives shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; (3) if there is a decrease in the number of Representatives but the number of districts in such State is equal to such decreased number of Representatives, they shall be elected from the districts then prescribed by the law of such State; (4) if there is a decrease in the number of Representatives but the number of districts in such State is less than such number of Representatives, the number of Representatives by which such number of districts is exceeded shall be elected from the State at large and the other Representatives from the districts then prescribed by the law of such State; or (5) if there is a decrease in the number of Representatives and the number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large.